**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

META PLATFORMS, INC.,

                    Plaintiff,

        v.

THE FEDERAL TRADE COMMISSION,

– and –

LINA M. KHAN, REBECCA KELLY
SLAUGHTER, and ALVARO BEDOYA,
in their official capacities as Commissioners
of the Federal Trade Commission,

                    Defendants.

Case No. _____

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................4

A.   The History of the FTC Proceeding and Related Litigation ...................................5

B.   Meta's Compliance with the 2020 Order and Cooperation with the Commission .............6

C.   Defendants Issue the OTSC ................................................................................7

D.   Meta Moves this Court to Enforce the
     Stipulated Order in *United States v. Facebook* ...................................................9

ARGUMENT ...................................................................................................10

I.   This Court Has Subject Matter Jurisdiction over Meta's Claims .........................10

II.  Meta Is Entitled to a Preliminary Injunction............................................................11

     A.   Meta Has a Substantial Likelihood of Success on the Merits...................11

     B.   Meta Will Be Irreparably Harmed if Forced to Respond to the
          OTSC and Otherwise Be Subjected to the FTC Proceeding.....................23

     C.   The Balance of the Equities, Including
          the Public Interest, Favors an Injunction ...............................................24

CONCLUSION..................................................................................................26

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

*Alpine Sec. Corp. v. FINRA*,
  2023 WL 4703307 (D.C. Cir. July 5, 2023) .............................................................. 2

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) ...................................................................... *passim*

*Axon Enter., Inc. v. FTC*,
  986 F.3d 1173 (9th Cir. 2021) *rev'd*, 598 U.S. 175 (2023) ................................... 13

*Basic Research, LLC v. FTC*,
  807 F. Supp. 2 1078 (D. Utah 2011) ...................................................... 21

*Caperton v. A.T. Massey Coal Co.*,
  556 U.S. 868 (2009) ............................................................................ 12

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ...................................................................... 15

*Crowell v. Benson*,
  285 U.S. 22 (1932) ............................................................................ 18

*Dimick v. Schiedt*,
  293 U.S. 474 (1935) .......................................................................... 22

*Executive Benefits Ins. Agency v. Arkison*,
  573 U.S. 25 (2014) ............................................................................ 20

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010) .......................................................................... 15

*FTC v. Cement Inst.*,
  33 U.S. 683 (1948) ...................................................................... 14, 17

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) ...................................................................... 20

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ...................................................................... 16, 17

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ............................................. 17, 20, 22, 23

*In re Justices of Sup. Ct. of Puerto Rico*,
  695 F.2d 17 (1st Cir. 1982) .............................................................. 13

*Kirwa v. U.S. Dep't of Def.*,
  285 F. Supp. 3d 21 (D.D.C. 2017) ........................................................ 24

*Kuretski v. Comm'r*,
  755 F.3d 929 (D.C. Cir. 2014) ............................................................. 20

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ................................................................ 25

*Luokung Tech. Corp. v. Dep't of Def.*,
  538 F. Supp. 3d 174 (D.D.C. 2021) ...................................................... 25

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ........................................................................... 24

*\*In re Murchison*,
  349 U.S. 133 (1955) ..................................................................... 12, 14

*N. Mariana Islands v. U.S.*,
  686 F. Supp. 2d 7 (D.D.C. 2009) ......................................................... 25

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) ....................................................................... 20, 21

*NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*,
  927 F.3d 1 (1st Cir. 2019) ................................................................... 23

*NBC v. United States*,
  319 U.S. 190 (1943) ........................................................................... 19

*New York Central Securities Corp. v. United States*,
  287 U.S. 12 (1932) ............................................................................ 19

*Noel Pane v. Town of Greenburgh*,
  2012 WL 12886971 (S.D.N.Y. Mar. 21, 2012) ....................................... 24

*Occupy Columbia v. Haley*,
  2013 WL 12380290 (D.S.C. Mar. 18, 2023) ........................................... 24

*Oceanic Steam Nav. Co. v. Stranahan*,
  214 U.S. 320 (1909) ........................................................................... 17

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  138 S. Ct. 1365 (2018) ................................................................... 17, 20

*Owens v. Republic of Sudan*,
  531 F.3d 884 (D.C. Cir. 2008) .......................................................... 19, 20

*Propert v. District of Columbia*,
  948 F.2d 1327 (D.C. Cir. 1991) ............................................................. 12

*Reid v. Covert*
  354 U.S. 1 (1957) ................................................................................ 22

*Segar v. Mukasey*,
  508 F.3d 16 (D.C. Cir. 2007) ............................................................... 21

*Seila Law LLC v. CFPB*
  140 S. Ct. 2183 (2020) .......................................................... 14, 15, 16, 17

*Stern v. Marshall*,
  564 U.S. 462 (2011) ............................................................................ 20

*Tull v. United States*,
  481 U.S. 412 (1987) ....................................................................... 22, 23

*United States v. ITT Cont. Baking Co.*,
  420 U.S. 223 (1975) ............................................................................ 21

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ........................................................................ 18, 19

*Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*,
  86 F.3d 1188 (D.C. Cir. 1996) ............................................................. 14

*Williams v. Pennsylvania*,
  579 U.S. 1 (2016) ......................................................................... 12, 14

*Withrow v. Larkin*,
  421 U.S. 35 (1975) ............................................................................ 14

*Wrenn v. District of Columbia*,
  864 F.3d 650 (D.C. Cir. 2017) ............................................................. 11

*In re Zdravkovich*,
  634 F.3d 574 (D.C. Cir. 2011) ............................................................. 14

Constitution, Statutes & Rules

U.S. Const. art. II § 1, cl. 1. .............................................................. 14

15 U.S.C. § 41 ............................................................................... 15, 17

15 U.S.C. § 45(a) ............................................................................... 5

15 U.S.C. § 45(b) ....................................................................... *passim*

15 U.S.C. § 53(b) ................................................................................................. 15, 18

16 CFR § 3.72(b) ..................................................................................................... 8

<u>Other Authorities</u>

Brief for the Commission, *AMG Cap. Mgmt., LLC v. FTC*,
 No 19-508, 2020 WL 7093938 (U.S.) ..................................................................... 18

1 William Blackstone, *Commentaries on the Laws of England 1765-1769* ............................... 21

Plaintiff Meta Platforms, Inc. ("Meta"), formerly Facebook, Inc., respectfully submits this memorandum of points and authorities in support of its motion (the "Motion") for a preliminary injunction prohibiting Defendant Federal Trade Commission (the "FTC" or "Commission") and the individual Defendants Lina M. Khan, Rebecca Kelly Slaughter, and Alvaro Bedoya (the "Commissioners") from taking further action in the FTC administrative proceeding *In the Matter of Facebook, Inc.*, FTC File No. C-4365 (the "FTC Proceeding" or "Proceeding") pending resolution of the constitutional challenges asserted by Meta in this action.[1]

Meta also requests that, to the extent briefing and determination of the Motion extend beyond December 11, 2023, this Court administratively enjoin the FTC Proceeding at least until the Motion is decided.  Preliminary relief is necessary because Defendants have imposed a deadline of December 11, 2023 for Meta to respond to an administrative order to show cause (the "OTSC") reopening the structurally unconstitutional FTC Proceeding.  (*See* Ex. A (Declaration of James P. Rouhandeh) (hereinafter, "Rouhandeh Decl.") ¶¶ 12–13.)

## INTRODUCTION[2]

In this action, Meta challenges the structure of the Commission and the FTC Proceeding as violating Articles I, II, and III of the U.S. Constitution, the Fifth Amendment's Due Process Clause, and the Seventh Amendment's right to a jury trial.  Meta seeks a permanent injunction

---

[1] For documents filed in the FTC Proceeding, and related court documents, *see In the Matter of Facebook, Inc.*, Federal Trade Commission (July 13, 2023), www.ftc.gov/legal-library/browse/cases-proceedings/092-3184-182-3109-c-4365-facebook-inc-matter.

[2] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

against the FTC Proceeding to avoid being subjected to "an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

The OTSC issued by the FTC purports to reopen the previously closed administrative Proceeding to abrogate the parties' 2019 settlement and replace the parties' consent order with a proposed new order imposing dramatic and unprecedented new restrictions on Meta's business. The OTSC places the burden on *Meta* to submit an answer explaining why the proposed new order is unnecessary, at which point the FTC will determine whether to make the new order "final or modify it in any way."[3] If forced to respond to the OTSC and otherwise participate in the FTC Proceeding, Meta would suffer immediate and irreparable harm in the form of "the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process." *Axon Enter.*, 598 U.S. at 192. Meta's constitutional rights not to be subjected to the unconstitutional FTC Proceeding will be lost if Meta "cannot assert those rights until the proceedings are over." *Id.*

In this Motion, Meta seeks to enjoin the FTC Proceeding preliminarily pending resolution of Meta's constitutional challenges. "By granting [Meta]'s request, the Court [would] preserve the status quo." *Alpine Secs. Corp. v. FINRA*, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (Walker, J., concurring). This Motion amply satisfies all of the requirements for enjoining the FTC Proceeding pending resolution of Meta's constitutional challenges to the structure of the Commission.

---

[3] For the redacted public version of the OTSC, *see In the Matter of Facebook, Inc.*, Order to Show Cause Why the Commission Should Not Modify the Order and Enter the Proposed New Order (May 3, 2023), *available at* www.ftc.gov/system/files/ftc_gov/pdf/C4365-Commission-Order-to-Show-Cause-%28Redacted-Public%29.pdf.

*First*, Meta is likely to succeed on its constitutional challenges.  Under governing precedent, including Supreme Court decisions over the past decade, the FTC's structure violates the U.S. Constitution in at least five independent respects.  In general, and in the FTC Proceeding against Meta, the Commission's (1) dual role as prosecutor and judge in administrative adjudications violates the Due Process Clause of the Fifth Amendment; (2) exercise of executive authority violates Article II because the Commissioners are not freely removable by the President; (3) exercise of unfettered legislative authority to assign disputes to administrative adjudication violates Article I; (4) adjudication of private rights violates Article III; and (5) adjudication of issues that at common law were to be decided by a jury deprives Meta of its right to a jury trial under the Seventh Amendment.

While Meta is challenging the Commission's structure in general, and not the Commission's specific actions in the FTC Proceeding against Meta, the Proceeding nonetheless is an especially egregious example of some of the harmful manifestations of the structural constitutional violations.  For example, the risk of bias inherent in the Commission's dual role as prosecutor and judge already has materialized in the Proceeding.  In the OTSC reopening the Proceeding, the Commission formally found that its proposed rewrite of the consent order is "needed."  (OTSC at 12.)  The Commission made this legal finding on the explicit basis of a "full record supporting the Commission's findings," consisting of a 1,164-paragraph "Preliminary Finding of Facts."  (*Id.* at 1, n.1, 12.)[4]  There appears to be no case in the history of the agency in which the Commission has made "preliminary" findings of fact—much less a "full

---

[4] For the Commission's "Preliminary Finding of Facts in Support of the Order to Show Cause," *see In the Matter of Facebook, Inc.*, Preliminary Finding of Fact in Support of the Order to Show Cause, Federal Trade Commission (May 3, 2023), *available at* www.ftc.gov/system/files/ftc_gov/pdf/c4365facebookpreliminaryfofpublic.pdf.

record" consisting of such findings—in "support" of any administrative action.  The Commission now proposes to adjudicate its own prejudged factual and legal findings in its Proceeding against Meta.

**Second**, Meta will suffer irreparable harm if it is subjected to the FTC Proceeding before the structurally unconstitutional Commission.  As the Supreme Court held in *Axon*, being subjected to unconstitutional agency authority imposes a "here-and-now" injury that "is impossible to remedy once the proceeding is over."  598 U.S. at 191.  The Supreme Court expressly analogized the right not to be subject to a structurally unconstitutional agency proceeding to "established immunity doctrines" under which "certain rights 'not to stand trial' or face other legal processes … are effectively lost if review is deferred until after trial."  *Id.* at 192.  Courts have confirmed that the threatened loss of these immunities constitutes irreparable harm.

**Third**, the balance of equities, including the public interest, strongly favors an injunction.  There is a strong public interest in the lawful exercise of governmental authority by administrative agencies, and there is no public interest in the perpetuation of unlawful agency action.  Further, the Commission's long delay in reopening the FTC Proceeding through the OTSC demonstrates that the Commission will suffer no harm from staying the Proceeding until Meta's structural constitutional challenges are resolved.

## BACKGROUND

In addition to this action to enjoin the FTC Proceeding on constitutional grounds, Meta has moved in a separate action to enjoin the Proceeding.[5]  As explained below, Meta brings this separate constitutional challenge because in the other action the Court—per the Honorable

---

[5] *See United States. v. Facebook, Inc.*, 19-cv-02184-TJK (D.D.C. July 24, 2019) (Dkt. No. 38).

Timothy J. Kelly—did not reach Meta's structural constitutional claims and explained that Meta

should file a separate action.  Accordingly, Meta brings this action.

A.      <u>**The History of the FTC Proceeding and Related Litigation**</u>

On April 29, 2011, Meta agreed with the FTC to settle certain administrative allegations

that it had engaged in unfair and deceptive acts or practices in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a).  The settlement was memorialized in an administrative consent

order (the "2012 FTC Order") issued by the FTC on July 27, 2012.[6]

In 2018, the FTC began investigating whether Meta had violated the 2012 FTC Order and

Section 5(a).  Meta subsequently negotiated with the FTC, and with the United States

Department of Justice ("DOJ"), to resolve that investigation.  After the parties reached a

settlement, the United States, on behalf of the Commission, filed a complaint against Meta in this

Court seeking civil penalties and injunctive relief for the alleged violations.  *See Facebook*, 19-

cv-02184-TJK (Dkt. No. 1).  The United States concurrently filed a consent motion (the

"Consent Motion") requesting entry of a stipulated order (the "Stipulated Order") memorializing

the parties' settlement.  *Id.* (Dkt. No. 2).

In an opinion dated April 23, 2020, this Court (per Judge Kelly) granted the Consent

Motion and entered the Stipulated Order.  *Id.* (Dkt. No. 34).  The Stipulated Order granted

injunctive relief principally pursuant to the 2020 Order incorporated as "Attachment A" to the

Stipulated Order, and ordered Meta to pay $5 billion in civil penalties.  *Id.* (Dkt. No. 35).  The

Court also ordered Meta to consent to the reopening of the FTC Proceeding, including by

---

[6] For the 2012 FTC Order, *see In the Matter of Facebook, Inc.*, Decision and Order, Federal Trade Commission (July 27, 2012), *available at* www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf.

waiving certain procedural rights, so that the Commission could supersede the 2012 FTC Order by entering the agreed 2020 Order.  *Id.*

Per the Stipulated Order, the FTC entered the 2020 Order in the FTC Proceeding against Meta on April 27, 2020.[7]

## B.   <u>Meta's Compliance with the 2020 Order and Cooperation with the Commission</u>

Meta promptly began implementing its obligations under the 2020 Order, including by instituting compliance programs and retaining an assessor (the "Assessor") to conduct an initial assessment of Meta's programs and, for 20 years, biennial assessments.  (2020 Order at 13; Rouhandeh Decl. ¶ 2.)

Meta invested billions of dollars in designing and implementing the compliance programs required by the 2020 Order, and in facilitating the Assessor's oversight.  (Rouhandeh Decl. ¶ 3.) Meta is confident that these efforts were more than sufficient to meet the requirements of the 2020 Order.

The Assessor submitted its first assessment of Meta's programs (the "First Assessment") to the FTC and DOJ on July 1, 2021.  (*Id.* ¶ 4.)  This assessment—which covered the initial six-month period during which Meta started its compliance program—reflected Meta's good faith efforts, its well-designed programs, and its substantial compliance with the 2020 Order.  The Assessor concluded: "We believe the overall scope of the program … is logical and appropriately comprehensive.  As a result, the key foundational elements necessary for an effective program are now in place, although their maturity and completeness vary."[8]  As the

---

[7] For the 2020 Order, *see In the Matter of Facebook, Inc.*, Order Modifying Prior Decision and Order, Federal Trade Commission (Apr. 27, 2020), *available at* www.ftc.gov/system/files/documents/cases/c4365facebookmodifyingorder.pdf.

[8] For the redacted public version of the Assessor's first assessment, *see* Facebook Assessment Report Executive Summary—Redacted for Release (June 21, 2021), *available at*

2020 Order contemplated and required, the Assessor identified a number of "gaps and weaknesses" for Meta to address, as it has.  (First Assessment at 1.)

Between August 2021 and May 2022, Meta cooperatively responded to numerous requests from the FTC relating to the Assessor's findings.  (Rouhandeh Decl. ¶ 5.)  Meta's responses included multiple depositions, hundreds of pages of narrative responses, and nearly 30,000 pages of underlying source material relating to its extensive efforts to design and implement the programs required by the 2020 Order.  (*Id.*)

After completing its responses in May 2022, Meta did not hear further from the FTC concerning its compliance with the 2020 Order for nearly a year.  (*Id.*)  Despite Meta's record of cooperation, on March 13, 2023, the FTC sent letters to Meta stating that the FTC was considering initiating a "proceeding" against Meta.  (*Id.* ¶ 6.)  The FTC apparently provided this notice only to inform Meta that information that Meta had provided to the FTC in the FTC Proceeding may be disclosed in the new proceeding.

## C.    **Defendants Issue the OTSC**

Prior to issuing the OTSC, the Commission eschewed its established practice of affording companies the opportunity to engage with senior FTC staff and Commissioners prior to the initiation of any proceeding.  After Meta received the FTC letters about a potential new proceeding, Meta reached out to the FTC multiple times to request an opportunity to discuss the FTC's concerns and to ask the FTC to follow its typical process and allow for further engagement between Meta and its senior staff and Commissioners prior to initiating any proceeding.  (*Id.* ¶¶ 6-8.)

---

www.ftc.gov/system/files/documents/foia_requests/facebook_assessment_report-executive_summary-redacted_for_release.pdf.

The FTC, however, rebuffed Meta's requests.  It would not meet with Meta and it refused to provide Meta with any information regarding the type of "proceeding" it was planning to initiate.  For example, in response to a letter to the Associate Director of the FTC's Division of Enforcement reiterating Meta's request for "the same opportunity the Commission routinely provides to companies to engage with senior staff and Commissioners prior to initiating any proceeding," Commission staff attorneys responded: "At the present time, we have no further information to share with you."  (*Id.* ¶ 9.)

Despite Meta's diligent efforts to comply with the 2020 Order, Defendants issued the OTSC on May 3, 2023.  The OTSC directs Meta to show cause why the Commission should not "modify" the 2020 Order through entry of a proposed new order (the "Proposed Order").[9]  In the OTSC, the Commission proposes to impose novel and more severe restrictions on Meta's business, and—in the face of formal determinations by the Commission that new restrictions are "require[d]" and "needed"—has placed the burden on *Meta* to prove why such restrictions are *not* necessary.  (OTSC at 1.)[10]

Through the Proposed Order, the FTC seeks to substantially rewrite the 2020 Order to impose expansive and unprecedented new injunctive obligations and prohibitions on Meta.  A comparison between the Proposed Order and the 2020 Order shows more than 800 changes to what was a 23-page document, including:

---

[9] For the redacted public version of the Proposed Order, *see In the Matter of Facebook, Inc.*, Proposed Decision and Order, Federal Trade Commission (May 3, 2023), *available at* www.ftc.gov/system/files/ftc_gov/pdf/c4365facebookproposedmodifieddecisionandorder.pdf.

[10] The OTSC purports to reopen the FTC Proceeding under Section 5(b) of the FTC Act, and Rule 3.72(b) of the FTC's Rules of Practice.  (OTSC at 1.)  Section 5(b), which has no application to consent orders, does not authorize the Commission to reopen the Proceeding.  And Rule 3.72(b) is merely a procedural rule that sets forth the process for reopening when Section 5(b) does apply.

- a requirement that at least one member of the Independent Privacy Committee of Meta's Board of Directors hold, or have held within the last five years, a position at a nonprofit where that person worked to advance civil liberties, privacy, consumer or data security-related goals (Proposed Order, Definition M);

- a prohibition on the introduction of "any new or modified products, services, or features," unless the most recent assessment by the Assessor showed that Meta met certain privacy goals set forth in its Privacy Program and that there were no identifiable "material gaps or weaknesses" in the Privacy Program (Proposed Order, Part X); and

- expanding the breadth of the Privacy Program to cover all of Meta's affiliates and subsidiaries and to include not only procedures to mitigate risks to the "privacy, confidentiality, security, and integrity" of user information, but to risks concerning user's "physical harm, emotional distress or mental health harm, economic harm, reputational harm, relationship harm, discrimination, or harm to an individual's autonomy (e.g., impairing an individual's ability to make his or her own informed decisions, such as thought coercion, manipulation, thwarted expectations, or failure to inform the individual of material facts)" (Proposed Order, Definition T, Part VIII).

**D.**    **Meta Moves this Court to Enforce the Stipulated Order in *United States v. Facebook***

On May 31, 2023, Meta filed a motion (the "Motion to Enforce") in the *United States v. Facebook* action before Judge Kelly.  In its Motion to Enforce, Meta advanced two principal reasons that the Stipulated Order bars the Commission from unilaterally modifying the 2020 Order.  First, Meta relied on the Court's retention of exclusive jurisdiction over enforcement and modification of the Stipulated Order—including the 2020 Order incorporated into the Stipulated Order as Attachment A.  Second, Meta invoked the *res judicata* effect of the Stipulated Order, which reduced to judgment the parties' settlement of the claims against Meta.  In the alternative, Meta interposed four of the structural constitutional objections to the FTC Proceeding that are asserted in this Action.

On November 27, 2023, Judge Kelly denied Meta's motion.  Judge Kelly held that the Court lacks jurisdiction to entertain Meta's claims in the *United States v. Facebook* action because the 2020 Order was not part of the Court's Stipulated Order entered in that action.  *See United States v. Facebook, Inc.*, 2023 WL 8190858, at *1 (D.D.C. Nov. 27, 2023).  His decision

did not address Meta's structural constitutional challenges to the FTC Proceeding, *see generally id.*, but he had explained at oral argument that if he determines that he lacks jurisdiction over the 2020 Order "what has to happen is Meta has to go and file another lawsuit and, maybe, it will be assigned to me, but, maybe, it will be assigned to one of my colleagues, and … whoever it's assigned to would go through the issue of whether there's *Axon* jurisdiction at this point."  (*See* Rouhandeh Decl. Ex. 1 (Oral Argument Transcript) at 47; *see also id.* at 30 (explaining that if the Court does not have jurisdiction over the 2020 Order "through this suit," then "a possible outcome is that [Meta] just ha[s] to go file a new case down the hall and you're going to get an Article III judge—a district judge, not a circuit judge, to evaluate whether that judge has *Axon* jurisdiction and whether you can get an injunction through that method.").)

On November 28, 2023, Meta filed a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit in the *United States v. Facebook* action.

## ARGUMENT

### I.    This Court Has Subject Matter Jurisdiction over Meta's Claims

Under the Supreme Court's recent decision in *Axon*, this Court has subject matter jurisdiction over Meta's constitutional challenges to the FTC Proceeding, which are grounded in the unconstitutional structure of the Commission.  *See* 598 U.S. at 195.  As the *Axon* Court explained, district courts have subject matter jurisdiction over constitutional claims, and "[t]he ordinary statutory review scheme does not preclude a district court from entertaining" constitutional challenges to the structure of administrative agencies, including the FTC.  *Id.* at 180.

Further, subjecting Meta to "unconstitutional agency authority" imposes a "here-and-now injury" on Meta that "is impossible to remedy once the [administrative] proceeding is over."  *Id.* at 190; *see also id.* at 191 (invoking "the 'here-and-now' injury of subjection to an

unconstitutionally structured decisionmaking process"). Thus, unless the reopened FTC
Proceeding is enjoined, Meta "will lose [its] rights not to undergo the complained-of agency
proceedings." *Id.*

## II.  Meta Is Entitled to a Preliminary Injunction

The FTC Proceeding should be preliminarily enjoined to avoid the immediate and
irreparable harm that will ensue if Meta is required to respond to the OTSC before this Court has
had a chance to decide Meta's constitutional challenges.[11] This request is reviewed under the
traditional test for injunctive relief under which Meta, as the movant, has the burden to show that
(1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence
of preliminary relief," and (3) "that the balance of equities, including the public interest, tips in
[its] favor." *Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017). Each of these
factors weighs in favor of a preliminary injunction here.

### A.  <u>Meta Has a Substantial Likelihood of Success on the Merits</u>

In this action, Meta asserts five structural constitutional challenges to the FTC
Proceeding. As shown below, the law and the facts overwhelmingly support Meta's position
such that Meta is substantially likely to succeed on each claim.

#### 1.  <u>Meta Likely Will Succeed on Its Claim that the FTC
Proceeding Violates the Fifth Amendment's Due Process Clause</u>

It is axiomatic that "[n]o man is allowed to be a judge in his own cause." *Caperton v.
A.T. Massey Coal Co.*, 556 U.S. 868, 880 (2009). Due process requires "at a minimum, that the
affected [person] must have a meaningful opportunity to present his case before a neutral

---

[11] The United States, on behalf of the Commission, and Meta previously briefed most of
these issues on Meta's Motion to Enforce before Judge Kelly. *See United States v. Facebook*,
19-cv-02184-TJK (Dkt. Nos. 38-1 (moving brief), 49 (opposition), 53 (reply)).

decisionmaker." *Propert v. District of Columbia*, 948 F.2d 1327, 1333 (D.C. Cir. 1991).  Even

an "unacceptable risk of actual bias" violates due process.  *Williams v. Pennsylvania*, 579 U.S. 1,

14 (2016).

The Supreme Court has squarely held that due process prohibits review by judges who

previously decided to prosecute a case.  *See id.* at 9 ("The due process guarantee that 'no man

can be a judge in his own case' would have little substance if it did not disqualify a former

prosecutor from sitting in judgment of a prosecution in which he or she had made a critical

decision."); *In re Murchison*, 349 U.S. 133, 137 (1955) ("Fair trials are too important a part of

our free society to let prosecuting judges be trial judges of the charges they prefer.").

The Commission's dual role as both prosecutor and judge in administrative proceedings

violates due process.  Under the Federal Trade Commission Act (the "FTC Act"), the

Commission (as prosecutor) initiates or reopens an administrative enforcement proceeding by

voting to initiate it and (as judge) decides the matter, including through factual findings and legal

determinations.  This not only presents an "unacceptable *risk* of actual bias," *Williams*, 579 U.S.

at 14, but in fact has resulted in a long history of systematically biased adjudication by the

Commission.  As the United States Court of Appeals for the Ninth Circuit observed "the FTC

does not appear to dispute … that [it] has not lost a single [administrative] case in the past

quarter-century."  *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd on other

grounds*, 598 U.S. 175 (2023).

The manifestation of the risk of bias inherent in the Commission's unconstitutional dual

role as prosecutor and judge is especially egregious in the FTC Proceeding against Meta.  As

prosecutor, the Commission formally found in the OTSC that it "has good cause to believe" that

Meta violated the requirements of the 2020 Order.  As judge, the Commission found in the

OTSC that "changed conditions *demonstrat*[*e*] that additional modifications to the Order are *needed* to clarify and strengthen its requirements."  (OTSC at 12.)  Those findings rest on the 1,164 paragraphs of "preliminary" findings of fact that the Commission already has made, which the OTSC refers to as "[t]he full record supporting the Commission's findings."  (OTSC at 1, n.1.)  We are aware of no precedent for the Commission making "preliminary" findings of fact—much less a "full record" consisting of such findings—in "support" of any administrative action it has ever taken.  Indeed, these factual findings appear to be "preliminary" only in the narrow sense that they were made *in advance of* Defendants' reopening of the Proceeding against Meta.

In any event, alleging facts is a prosecutorial function, whereas "finding facts" (which the Commission has done here) is an adjudicative function.  *In re Justices of Sup. Ct. of Puerto Rico*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.).  Thus, the OTSC represents an impermissible simultaneous exercise of prosecutorial and adjudicative roles, through which the Commission has prejudged the matter against Meta factually and legally before affording Meta any opportunity to be heard.  The prejudgment evidenced in the OTSC is corroborated by earlier indications that the Commission did not approach its decision to reopen the FTC Proceeding with an open mind, including the FTC's unusual refusal to afford Meta the opportunity to engage with senior staff and Commissioners prior to reopening the FTC Proceeding.  If Meta opposes entry by the Commission of the "proposed" order, the Commission will adjudicate the matter, and render a "final" decision on the matters that it already has prejudged.

Under these circumstances, the Commission's prejudgment goes far beyond the prejudgment at issue in the leading precedents.  For example, the Commission's factual findings and legal determinations in the OTSC represent much greater prejudgment than the "initial charge or determination of probable cause" in *Withrow v. Larkin*, 421 U.S. 35, 58 (1975), and *In*

*re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011).  The OTSC also entails much more specific and detailed prejudgment than that the Supreme Court upheld in *FTC v. Cement Institute*—in which the Commission had reported to Congress and the President that a pricing practice that the FTC had studied generally violated the Sherman Act, and subsequently issued an administrative complaint challenging specific instances of that pricing practice.  *See* 33 U.S. 683, 702 (1948). Indeed, the OTSC embodies considerably more prejudgment than the Supreme Court held to be unconstitutional in *William*s or *Murchison*.  *See Williams*, 579 U.S. at 14 (state supreme court justice hearing death sentence appeal had, as prosecutor, authorized subordinates to seek death penalty in same case); *Murchison*, 349 U.S. at 137 (judge *accused* witnesses testifying before him of contempt as "one-man grand jury" and subsequently convicted them).  Where, as here, "evidence casts doubt on the partiality of the [agency], the combination of prosecutorial and adjudicatory functions in a single person" violates due process.  *Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1195 (D.C. Cir. 1996).

### 2.  Meta Likely Will Succeed on Its Claim that the Commission's Exercise of Executive Authority Violates Article II

Under Article II of the Constitution, "the executive Power—all of it—is vested in a President."  *Seila Law LLC v. C.F.P.B.*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const., art. II § 1, cl. 1). The Constitution permits the President to delegate executive power subject to the President's "unrestricted" removal power.  *Seila Law*, 140 S. Ct. at 2198.

The FTC Act grants the Commission robust enforcement powers, including the power to investigate potential violations, exercise prosecutorial discretion, and initiate administrative and judicial enforcement proceedings.  *See*, *e.g.*, 15 U.S.C. §§ 45(b), 53(b).  The Commission's prosecutorial powers, including those that the Commission is exercising against Meta in the FTC Proceeding, are executive powers.  *See, e.g.*, *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 485

(2010); *Seila Law*, 140 S. Ct. at 2204.  In *Free Enterprise Fund*, the Supreme Court held that

Article II was violated by protecting against removal the five-member PCAOB "empowered to

take significant enforcement actions," including "initiat[ing] formal investigations and

disciplinary proceedings" and engaging in the "daily exercise of prosecutorial discretion."  561

U.S. 477, 485, 504 (2010).  In *Seila Law*, the Supreme Court reached the same conclusion as to

the CFPB director, who "set enforcement priorities, initiate[d] prosecutions, and determine[d]

what penalties to impose on private parties," yet was "insulat[ed] from removal" by the

President.  140 S. Ct. at 2204; *see also Collins v. Yellen*, 141 S. Ct. 1761, 1772 (2021) (holding

that Article II was violated by insulating from removal an agency director with "broad

investigative and enforcement authority").  These are the types of prosecutorial powers that the

Commission is exercising against Meta in the OTSC.

While the Constitution permits the delegation of executive authority, the delegates must

be subject to the President's "unrestricted" removal power.  *Seila*, 140 S. Ct. at 2198.  Here,

however, the Commissioners are *not* removable at will by the President.  Instead, they can be

removed only for "inefficiency, neglect of duty, or malfeasance."  15 U.S.C. § 41.

The Commissioners are not protected from scrutiny by the decision in *Humphrey's

Executor v. United States*, 295 U.S. 602 (1935), that upheld the FTC Act's removal restriction as

applied to the different Commission that existed 88 years ago.  In *Seila Law*, the Supreme Court

explained that in *Humphrey's Executor*, "the Court viewed the FTC (as it existed in 1935) as

exercising 'no part of the executive power.'" *Seila Law*, 140 S. Ct. at 2198 (quoting *Humphrey's

Ex'r*, 295 U.S. at 628); *see also Humphrey's Ex'r*, 295 U.S. at 624 ("[The Commission's] duties

are neither political nor executive, but predominantly quasi-judicial and quasi-legislative."); *id.*

at 625 ("[I]t was essential that the commission should not be open to the suspicion of partisan direction.").

The obsolete reasoning that "the FTC (as it existed in 1935) … exercis[ed] no part of the executive power" rested on characteristics that the current Commission lacks:

> The Court [in *Humphrey's Executor*] identified several organizational features that helped explain its characterization of the FTC as non-executive. Composed of five members—no more than three from the same political party—the Board was designed to be "nonpartisan" and to "act with entire impartiality." The FTC's duties were "neither political nor executive," but instead called for "the trained judgment of a body of experts" "informed by experience." And the Commissioners' staggered, seven-year terms enabled the agency to accumulate technical expertise and avoid a "complete change" in leadership "at any one time."

*Seila Law*, 140 S. Ct. at 2198–99. In contrast, the Commission's executive powers have greatly expanded since 1935—including by the addition of the language in Section 5(b) of the FTC Act that the Commission (erroneously) invokes as the source of its authority to modify the 2020 Order, and the grant in Section 13(b) of the power to prosecute enforcement actions in federal court.

In further contrast with the agency characteristics on which *Humphrey's Executor* relied, the current Commission has only three members, all from the same political party; and the Commissioners lack the tenure that is supposed to be the source of their expertise, *see Seila Law*, 140 S. Ct. at 2198–99; *Cement Inst.*, 333 U.S. at 702; *Humphrey's Ex'r*, 295 U.S. at 624. It is of no moment that two new Commissioners likely will be sworn in soon. Although the unbalanced, relatively inexperienced Commission that issued the OTSC likely was not envisioned by Congress, it is entirely consistent with the FTC Act and thus a feature of the unconstitutional agency structure that Meta is challenging. *See* 15 U.S.C. § 41 ("A vacancy in the Commission shall not impair the right of the remaining Commissioners to exercise all the powers of the Commission."). That same statutory structure also has failed to deliver the benefits of the

staggered seven-year terms assumed in *Humphrey's Executor*—accumulated expertise without abrupt membership changes—as illustrated by a Commission with two brand-new members, only one member who took office before June 2021, and all members appointed by the same President.  We are aware of no case that has upheld the constitutionality of the modern-day Commission.

### 3. Meta Likely Will Succeed on Its Claim that the Commission's Unfettered Authority to Assign Disputes to Administrative Adjudication Violates Article I

The power to decide whether a matter will be adjudicated administratively is "peculiarly within the authority of the legislative department."  *Jarkesy v. SEC*, 34 F.4th 446, 461 (5th Cir. 2022) (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909)); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018) (reasoning that the authority "to assign adjudication of public rights to entities other than Article III courts" is possessed by Congress).[12]  Indeed, the assignment of disputes to Article I tribunals (including agencies) rather than Article III courts "is completely within congressional control." *Crowell v. Benson*, 285 U.S. 22, 50 (1932).  To the extent that Congress "may delegate that power to executive officers," *id.*, "Congress must lay down by legislative act an *intelligible principle* to which the person or body authorized to act is directed to conform."  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

---

[12] As shown below, Article III bars Congress from assigning *private* rights, as opposed to *public* rights, to administrative adjudication.  *See infra* Point II.A.4.  Thus, any rights assigned to administrative adjudication must be public rights, and Meta's argument under Article I necessarily assumes, solely for purposes of this argument, that the rights adjudicated by the Commission are public rights.

In the case of the FTC, Congress has not laid down any such intelligible principle.[13]

Indeed, the Commission has admitted as much.  For example, in a recent brief to the Supreme

Court, the Commission explained:

> Congress has provided two different avenues for the Commission to enforce the
> [FTC] Act: an administrative one in which the Commission acts as an
> adjudicative body, and a judicial one in which the Commission sues in federal
> district court and acts as a litigant.  *The Commission has discretion to decide
> which* route is appropriate for any given matter.

Brief for the Commission, *AMG Cap. Mgmt., LLC v. FTC*, No 19-508, 2020 WL 7093938

(U.S.), at *3-4.

For the requisite "intelligible principle," the United States previously invoked, on behalf

of the Commission, the phrase "the interest of the public" found in the FTC Act's provisions

authorizing agency adjudication (Section 5(b)) and Article III adjudication (Section 13(b)).  *See*

*United States v. Facebook*, No. 1:19-cv-02184-TJK (Dkt. No. 49) at 39 (citing 15 U.S.C.

§§ 45(b), 53(b)).  In this case, the specific statutory language on which the Commission relies to

reopen the Proceeding against Meta authorizes reopening "whenever in the opinion of the

Commission conditions of fact or of law have so changed as to require such action *or* if the

public interest shall so require."  (OTSC at 1 (quoting 15 U.S.C. § 45(b)).)  This language fails to

supply an intelligible principle for two independent reasons.

First, the Commission can avoid the "public interest" criterion simply by invoking

changed conditions in Section 5(b).  Under its express terms, changed conditions *and* the "public

interest" are alternative grounds for reopening.  Thus, the "public interest" is not "an intelligible

---

[13] In an exception, Congress has deprived the Commission of any authority to enforce its own orders administratively.  Thus, to the extent that the Commission purports to enforce the 2020 Order through the Proceeding against Meta, the Commission lacks statutory authority to do so.  Meta is not raising this issue in this action, however.  Instead, in the event that the FTC Proceeding is not enjoined, Meta will raise this objection there.

principle to which the [Commission] *is directed to conform*." *Whitman*, 531 U.S. at 472.  Nor is Congress's standardless delegation to the Commission rescued by the OTSC's reliance on *both* changed circumstances and the "public interest."  (OTSC at 1.)  An agency cannot "cure an unconstitutionally standardless delegation of power by declining to exercise some of that power."  *Whitman*, 531 U.S. at 473.

Second, it is fundamental legal error to attribute an "intelligible principle" to an "isolated" statutory phrase like "in the public interest."  *Owens v. Republic of Sudan*, 531 F.3d 884, 889–90 (D.C. Cir. 2008).  In *Owens*, the D.C. Circuit analyzed a case where the Federal Communications Commission pointed to a similar "public interest" phrase as providing an intelligible principle—namely, *NBC v. United States*, 319 U.S. 190, 225–26 (1943), which itself cites to *New York Central Securities Corp. v. United States*, 287 U.S. 12, 25 (1932).  The D.C. Circuit concluded that reliance on the statutory phrase "in the public interest" was acceptable *in those cases* only because, looking beyond the isolated phrase, the underlying "statutory context" and "factual background" provided the "bounded discretion that the Constitution requires."  *Owens*, 531 F.3d at 890-91.  In other words, in identifying an "intelligible principle," the Court cannot "confine [itself] to the isolated phrase in question, but [must] utilize all the tools of statutory construction."  *Owens*, 531 F.3d at 889–90.  In this case, the "isolated" phrase "the public interest" in Section 5(b) is facially deficient, and the Commission has invoked nothing more.

As the Fifth Circuit in *Jarkesy* recognized, such unfettered authority violates the Constitution.  "If the intelligible principle standard means anything, it must mean that a total absence of guidance is impermissible under the Constitution."  *Jarkesy*, 34 F.4th at 462; *see also Gundy v. United States*, 139 S. Ct. 2116, 2123-24 (2019) (plurality) (grant by Congress of

"plenary" legislative authority goes beyond the "permissible bounds" of delegation).  As a result, the Commission's *choice* to issue the OTSC in the FTC Proceeding to implement its Proposed Order arises from an improper delegation of authority, and should be enjoined.  Because the law and the evidence support Meta's position, Meta is likely to succeed on its claim.

### 4.  Meta Likely Will Succeed on Its Claim that the Commission's Adjudication of Private Rights Violates Article III

The U.S. Constitution requires "the judicial power of the United States" to be vested in Article III courts.  *See Stern v. Marshall*, 564 U.S. 462, 469 (2011).  Pursuant to this fundamental limitation, "cases involving private rights … may not" be removed from Article III courts, *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014), whereas Congress has "significant latitude to assign adjudication of *public* rights to entities other than Article III courts," *Oil States Energy Servs.*, 138 S. Ct. at 1373.

While the Supreme Court "has not definitively explained the distinction between public and private rights," *id.*, private rights have been described as "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *Stern*, 564 U.S. at 484 (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment)); *accord Kuretski v. Comm'r*, 755 F.3d 929, 939 (D.C. Cir. 2014).  Private rights "encompass the three absolute rights, life, liberty, and property," which are "not dependent upon the will of the government."  *Axon.*, 598 U.S. at 198 (Thomas, J., concurring).  Under the pre-Founding common law, the right to property "consist[ed] in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land," and "to vindicate these rights when actually violated or attacked, the subjects of England [were] entitled, in the first place, to the regular administration and free

course of justice in the courts of law."  1 William Blackstone, *Commentaries on the Laws of England 1765-1769* at 138, 143.

Here, the gravamen of the Commission's OTSC is that Meta has violated the 2020 Order, which memorializes the parties' agreement in the form of a consent decree.  *See Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007) (consent decree is "essentially a contract"); *United States v. ITT Cont. Baking Co.*, 420 U.S. 223, 238 (1975) ("[A] consent decree or order is to be construed for enforcement purposes basically as a contract.").  That agreement was approved, and reduced to judgment, by an Article III court.  As with any other contract or agreement, Meta possesses contract rights under the 2020 Order, *see Basic Research, LLC v. FTC*, 807 F. Supp. 2d 1078, 1096 (D. Utah 2011) ("The fact that the FTC has now filed an enforcement action does not divest Basic Research of the right to enforce the FTC's obligations under the contract."), and the Commission's action, in essence, seeks to forcibly adjudicate those rights as an alleged breach of a contract outside an Article III court, *see N. Pipeline*, 458 U.S. at 90 (contract rights "are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789").

Further, the Commission's proposed remedy, as set forth in the Proposed Order, would restrict Meta's property rights and its right to develop new products and services.  Those restrictions plainly implicate Meta's private rights in its property, and thus require adjudication before an Article III court.  *See, e.g.*, *Axon*, 598 U.S. at 204 (Thomas, J., concurring) (Commission's attempt to require business "to transfer intellectual property" implicates "the core private right to property").

While the Commission may argue that it is enforcing "public rights" as set forth in the FTC Act, "Congress cannot convert any sort of action into a 'public right' simply by finding a

public purpose for it and codifying it in federal statutory law." *Jarkesy*, 34 F.4th at 456-57.

Similarly, the Supreme Court's decisions have "stressed that the government's involvement

alone does not convert a suit about private rights into one about public rights." *Id.* at 458.

### 5. Meta Likely Will Succeed on Its Claim that the FTC Proceeding Will Deprive Meta of Its Seventh Amendment Right to a Jury Trial

The Seventh Amendment requires that, "[i]n Suits at common law, where the value in

controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S.

Const. amend. VII.  This right to a trial by jury is considered a "fundamental" component of our

legal system, and "remains one of our most vital barriers to governmental arbitrariness." *Reid v.

Covert*¸ 354 U.S. 1, 9-10 (1957).  Indeed, because "[m]aintenance of the jury as a fact-finding

body is of such importance and occupies so firm a place in our history and jurisprudence … any

seeming curtailment of the right to a jury trial should be scrutinized *with the utmost care*."

*Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

In determining which suits are considered "Suits at common law," the Supreme Court has

interpreted the phrase to include all actions akin to those that were understood at the time of the

Seventh Amendment's adoption to be suits brought in the English law courts.  *See Tull v. United

States*, 481 U.S. 412, 417 (1987).  "In contrast, those actions that are analogous to 18th-century

cases tried in courts of equity or admiralty do not require a jury trial."  *Id.*

The FTC Proceeding will entail administrative adjudication of issues involving Meta's

property rights, including its contract rights under the 2020 Order.  And the FTC Proceeding is

governed by a statutory scheme that provides for the potential future imposition of civil

penalties.  *See* 15 U.S.C. § 45(l).  But the statutory and regulatory provisions governing the FTC

Proceeding afford Meta no right to a trial by jury.

Therefore, the FTC Proceeding violates Meta's right to jury trial under the Seventh

Amendment.  *See*, *e.g.*, *Jarkesy*, 34 F.4th at 452 ("[T]he [Supreme] Court has specifically held

that … the Seventh Amendment jury-trial right applies to suits brought under a statute seeking

civil penalties.") (citing *Tull*, 481 U.S. at 418-24), *cert. granted*, 143 S. Ct. 2688 (2023), *and*

*cert. denied*, 143 S. Ct. 2690 (2023); *NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt.,*

*Inc.*, 927 F.3d 1, 8 (1st Cir. 2019) ("[B]y entering the declaratory judgment on the breach of

contract claim without a jury trial, the District Court violated [the defendant's] Seventh

Amendment rights.").

### B.  Meta Will Be Irreparably Harmed if Forced to Respond to the OTSC and Otherwise Be Subjected to the FTC Proceeding

Absent an injunction, Meta is required to respond to the OTSC by December 11, 2023.

The harm Meta alleges—being subjected to a proceeding before an administrative agency whose

structure violates due process under the Fifth Amendment of the U.S. Constitution, the Seventh

Amendment of the U.S. Constitution, and separation of powers principles under Articles I, II,

and III—is a "here-and-now" injury that "is impossible to remedy once the proceeding is over."

*Axon*, 598 U.S. at 192.  Put simply, Meta's claims "[are] about subjection to an illegitimate

proceeding, led by an illegitimate decisionmaker[, a]nd as to that grievance, the court of appeals

can do nothing … Judicial review of [Meta's] structural constitutional claims would come too

late to be meaningful."  *Id.* at 191; *see also Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 21, 42

n.22 (D.D.C. 2017).

Further, the Supreme Court's reasoning in *Axon* demonstrates that this "here-and-now"

injury, that "is impossible to remedy once the proceeding is over," constitutes irreparable harm

warranting an injunction.  *See* 598 U.S. at 192.  In *Axon*, the Supreme Court expressly

analogized the right not to be subject to a structurally unconstitutional agency proceeding to

"established immunity doctrines" under which "certain rights 'not to stand trial' or face other legal processes … are 'effectively lost' if review is deferred until after trial." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see Forsyth*, 472 U.S. at 526-27 (holding that the rejection of a qualified immunity defense is subject to interlocutory appeal).  Courts have held that the threatened loss of these immunities constitutes irreparable harm.  *See, e.g.*, *Occupy Columbia v. Haley*, 2013 WL 12380290, at *1, n.2 (D.S.C. Mar. 18, 2023) ("Should the Fourth Circuit find that Defendants are entitled to qualified immunity, Defendants will be irreparably harmed if they are subject to discovery while the appeal is pending."); *Noel Pane v. Town of Greenburgh*, 2012 WL 12886971, at *4 (S.D.N.Y. Mar. 21, 2012) (defendant "would be irreparably harmed by the failure to grant a stay [pending appeal] as he would lose any immunity from suit to which he might be entitled were he forced to go to trial at this juncture," and that this "factor weighs heavily in favor of granting a stay").

So too here.  Meta's harm in being subjected to an unconstitutional agency process is immediate and cannot be remedied by a court of appeals.

### C.  The Balance of the Equities, Including the Public Interest, Favors an Injunction

There is a "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."  *Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 195 (D.D.C. 2021); *see also N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("[P]ublic interest is served when administrative agencies comply with their obligations.").  By contrast, there is "generally no public interest in the perpetuation of unlawful agency action."  *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

There is no basis to conclude that the Commission will suffer any cognizable harm if this Court preliminarily enjoins the FTC Proceeding pending resolution of Meta's constitutional

challenges.  To the contrary, the Commission's long delay in bringing the OTSC points to the opposite conclusion.  The OTSC relies on coding errors that Meta disclosed to the Commission and remediated in July 2019 and June 2020—more than three years ago.  (*See* OTSC at 10-11.) And the Commission's assertions regarding the Assessor's First Assessment to the Commission under the 2020 Order are also stale.  That report was submitted to the Commission on July 1, 2021, and Meta responded to the FTC's subsequent requests for information between August 2021 and May 2022.  (Rouhandeh Decl. ¶ 2.)  The Commission waited almost a full year, until May 3, 2023, to file the OTSC.

Further, the actions of the United States, on behalf of the Commission, in response to Meta's motion in *United States v. Facebook* to enjoin the FTC Proceeding affirmatively demonstrate that time is *not* of the essence.  There, the government delayed resolution of Meta's motion by requesting, in response to Meta's request for expedited relief, an elongated briefing schedule.  Meta filed its Motion before Judge Kelly on May 31, 2023, and the government requested ten weeks to respond, necessitating a hearing in mid-October and an extension to November 30, 2023, of Meta's deadline for responding to the OSTC.  *See United States v. Facebook*, No. 19-cv-2184-TJK (Dkt. No. 46); Rouhandeh Decl. ¶ 10.

Finally, prior to the OTSC, the FTC Proceeding had been closed since 2020.  Delaying further action in the FTC Proceeding during consideration of Meta's constitutional challenges to the structure of the Commission will not cause harm, particularly as compared to the irreparable harm to Meta should the Proceeding move forward.  Thus, the public interest clearly favors a preliminary injunction that prevents the FTC from violating Meta's constitutional rights and proceeding with the unlawful FTC Proceeding.

## CONCLUSION

For these reasons, Meta respectfully requests that the Court grant its motion and issue a preliminary injunction staying the FTC Proceeding against Meta pending resolution of Meta's constitutional challenges to the structure of the FTC.

Dated November 29, 2023

Respectfully Submitted,

*/s/ James P. Rouhandeh*

James P. Rouhandeh (DDC Bar No. NY0390)
Michael Scheinkman (DDC Bar No. NY0381)
David B. Toscano (D.C. Bar No. 453126)
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York, 10017
Tel:    (212)    450-4000
Email: rouhandeh@davispolk.com

Paul J. Nathanson (DDC Bar No. 982269)
DAVIS POLK & WARDELL LLP
901 15th St., NW
Washington, DC 20005
TEL: (202) 962-7000
paul.nathanson@davispolk.com

*Attorneys for Plaintiff Meta Platforms, Inc.*