**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

META PLATFORMS, INC.,

                  Plaintiff,

       v.

FEDERAL TRADE COMMISSION, *et al.*,

              Defendants.

Case No. 1:23-cv-03562-RDM

Judge Randolph D. Moss

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY**
**INJUNCTION AND DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.      Statutory and regulatory background ..................................................................... 2

II.     Factual background and procedural history............................................................. 4

        A.      FTC's 2012 Administrative Order ............................................................... 4

        B.      The district court's 2020 Stipulated Order and the FTC's 2020 Administrative
                Order ........................................................................................................... 5

        C.      FTC's 2023 Order to Show Cause and ensuing district court proceedings ................. 7

LEGAL STANDARDS........................................................................................................ 8

ARGUMENT ...................................................................................................................... 9

I.      Meta has not alleged any plausible constitutional claims and is unlikely to succeed on
        the merits. ............................................................................................................ 10

        A.      Meta's Article II removal claim fails. ........................................................ 10

                i.      *Humphrey's Executor* binds this Court. ........................................ 10

                ii.     Meta is not entitled to relief without a showing of prejudicial harm.............. 13

        B.      The Commission's adjudication of public rights is consistent with Article III. ......... 15

        C.      The Seventh Amendment does not apply where, as here, only injunctive relief
                is sought. ................................................................................................... 17

        D.      The FTC's authority to choose between administrative and judicial remedies
                does not implicate or violate the nondelegation doctrine............................................ 19

        E.      Meta's due process claim fails. ................................................................. 23

        F.      Meta has waived and is judicially estopped from raising challenges to the
                Federal Trade Commission's structure and modification authority............................ 28

II.     Meta fails to establish irreparable harm. ............................................................. 30

III.    The balance of the equities and public interest factors weigh against an injunction............... 32

IV.     Meta is not entitled to relief on claims outside of the Complaint............................................. 33

CONCLUSION..................................................................................................................... 33

# TABLE OF AUTHORITIES

## CASES

*Abhe & Svoboda, Inc. v. Chao*,
  508 F.3d 1052 (D.C. Cir. 2007) ............................................................9

*Alpine Sec. Corp. v. FINRA*,
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023)......................32

*AMG Cap. Mgmt., LLC v. FTC*,
  593 U.S. 67 (2021)................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................9

*\*Atlas Roofing Co. v. Occupational Safety & Health Review Commission*,
  430 U.S. 442 (1977) ................................................................ 16, 17, 19

*Axon Enter., Inc. v. FTC*,
  986 F.3d 1173 (9th Cir. 2021) ..............................................................26

*\*Axon Enterprises, Inc. v. FTC*,
  598 U.S. 175 (2023) ............................................................ 2, 24, 30, 31

*Ayele v. Dist. of Columbia*,
  No. CV 23-1785 (ABJ), 2023 WL 8354883 (D.D.C. Dec. 1, 2023) .......31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................9

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016)..................................................................................11

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ...............................................................9

*Buckley v. Valeo*,
  424 U.S. 1 (1976), *superseded by statute on other grounds as recognized in*
  *McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003)....................19

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023) ..........15

*\*CFPB v. Law Offices of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023), *petition for cert. filed on other grounds*,
  No. 22-1233 (U.S. June 23, 2023) ........................................................14

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) ........................................................................................ 18, 21

*\*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023) and *cert. denied*,
143 S. Ct. 981 (2023) ...................................................................................... 14, 15

*\*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ............................................................................. 11, 13, 14

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) ................................................................................................17

*Crowell v. Benson*,
285 U.S. 22 (1932) .......................................................................................... 15, 17

*D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*,
405 U.S. 174 (1972) ...............................................................................................29

*De Beers Consol. Mines v. United States*,
325 U.S. 212 (1945) ...............................................................................................33

*Elmo Co. v. FTC*,
389 F.2d 550 (D.C. Cir. 1967) ......................................................................... 3, 22

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
561 U.S. 477 (2010) ........................................................................................ 11, 30

*FTC v. Cantkier*,
767 F. Supp. 2d 147 (D.D.C. 2011) ......................................................................16

*FTC v. Cement Inst.*,
333 U.S. 683 (1948) ........................................................................................ 24, 25

*FTC v. Cinderella Career & Finishing Sch., Inc.*,
404 F.2d 1308 (D.C. Cir. 1968) ............................................................................23

*FTC v. Freecom Commc'ns, Inc.*,
401 F.3d 1192 (10th Cir. 2005) ..................................................................... 15, 16

*FTC v. Kochava Inc.*,
---F. Supp. 3d ---, 2023 WL 3249809 (D. Idaho May 4, 2023)..............................10

*FTC v. Neora LLC*,
No. 3:20-cv-01979-M, 2022 WL 3213540 (N.D. Tex. Aug. 8, 2022)..............15, 16

*FTC v. Precision Patient Outcomes, Inc.*,
No. 22-CV-07307-VC, 2023 WL 3242835 (N.D. Cal. May 3, 2023) .....................10

*FTC v. Roomster Corp.*,
    654 F. Supp. 3d 244 (S.D.N.Y. 2023) ................................................................10

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980) ................................................................................................31

*FTC v. Zaappaaz, LLC*,
    No. 4:20-cv-2717, 2023 WL 5020618 (S.D. Tex. June 9, 2023) ...........................21

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ..................................................................................................17

*Gundy v. United States*,
    139 S. Ct. 2116 (2019) ...........................................................................................21

*Hall v. Kane*,
    No. C 05-4426 MMC (PR), 2008 WL 5391196 (N.D. Cal. Dec. 23, 2008) ...........26

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ...............................................................................................20

*Hohn v. United States*,
    524 U.S. 236 (1998) ...............................................................................................11

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
    426 U.S. 482 (1976) ...............................................................................................25

*\*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ........................................................................................10, 12

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) ...............................................................................11

*In re al-Nashiri*,
    791 F.3d 71 (D.C. Cir. 2015) .................................................................................31

*In re IBM Corp.*,
    618 F.2d 923 (2nd Cir. 1980) ................................................................................27

*In re Murchison*,
    349 U.S. 133 (1955) ...............................................................................................27

*In re R.R. Donnelley & Sons Co.*,
    120 F.T.C. 36 (1995) ..............................................................................................27

*In re Tex. Gen. Petroleum Corp.*,
    52 F.3d 1330 (5th Cir. 1995) .................................................................................17

*In re Zdravkovich*,
 634 F.3d 574 (D.C. Cir. 2011) ............................................................23

*James R. v. Kijakazi*,
 No. CV 22-05030 (GC), 2023 WL 6389097 (D.N.J. Sept. 30, 2023) ....................................26

*Jarkesy v. SEC*,
 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023) ....................................20

*\*Kim v. FINRA*,
 No. 1:23-CV-02420 (ACR), 2023 WL 6538544 (D.D.C. Oct. 6, 2023) ..................... 30, 31, 32

*\*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
 No. CIV-22-232-RAW, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ................................30

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*,
 No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023) ..................................................24

*McIntosh v. Dep't of Def.*,
 53 F.4th 630 (Fed. Cir. 2022) .............................................................13

*McWane, Inc. v. FTC*,
 783 F.3d 814 (11th Cir. 2015) .............................................................27

*Mich. Gambling Opposition v. Kempthorne*,
 525 F.3d 23 (D.C. Cir. 2008) ..............................................................21

*Mirv Holdings, LLC v. GSA*,
 454 F. Supp. 3d 33 (D.D.C. 2020) .........................................................9

*Mistretta v. United States*,
 488 U.S. 361 (1989) ..........................................................................19

*Mohr v. FTC*,
 272 F.2d 401 (9th Cir. 1959) ..............................................................22

*Morgan Drexen, Inc. v. CFPB*,
 785 F.3d 684 (D.C. Cir. 2015) .............................................................30

*Morrison v. Olson*,
 487 U.S. 654 (1988) ..........................................................................10

*Munaf v. Geren*,
 553 U.S. 674 (2008) .....................................................................8, 31

*N.Y. Cent. Sec. Corp. v. United States*,
 287 U.S. 12 (1932) ...........................................................................22

*Nat'l Broad. Co. v. United States*,
   319 U.S. 190 (1943) ........................................................................22

*Nat'l Ecological Found. v. Alexander*,
   496 F.3d 466 (6th Cir. 2007) ...........................................................29

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ...................................................................29, 30

*Nken v. Holder*,
   556 U.S. 418 (2009) ..........................................................................9

*Nunes v. WP Co.*,
   513 F. Supp. 3d 1 (D.D.C. 2020) .......................................................9

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018) .....................................................................15

*Parsons v. Bedford, Breedlove & Robeson*,
   28 U.S. (3 Pet.) 433 (1830) ..............................................................18

*Prayed v. U.S. Dep't of Lab.*,
   No. 4:17-CV-00023-TMB, 2019 WL 13184717 (D. Alaska July 31, 2019),
   *aff'd*, 840 F. App'x 996 (9th Cir. 2021) ...........................................12

*Pro Football, Inc. v. Harjo*,
   565 F.3d 880 (D.C. Cir. 2009) .........................................................30

*Professional Air Traffic Controllers Org. v. Fed. Labor Relations Auth.*,
   685 F.2d 547 (D.C. Cir. 1982) .........................................................23

*Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*,
   No. CV 19-3629 (RC), 2021 WL 1198047 (D.D.C. Mar. 30, 2021) ......12

*Rodriguez v. Dep't of Veterans Affs.*,
   8 F.4th 1290 (Fed. Cir. 2021) ..........................................................13

*Scottsdale Cap. Advisors Corp. v. FINRA*,
   ---F. Supp. 3d---, 2023 WL 3864557 (D.D.C. June 7, 2023) ..............32

*SEC v. Romeril*,
   15 F.4th 166 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2836 (2022) .........29

*Seila Law LLC v. CFPB*,
   140 S. Ct. 2183 (2020) ...............................................................11, 12

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ...........................................................8

*Simpson v. Office of Thrift Supervision*,
  29 F.3d 1418 (9th Cir. 1994) ...................................................................................16

*Singh v. Garland*,
  20 F.4th 1049 (5th Cir. 2021) ..................................................................................26

*So. Pac. Commc'n Co. v AT&T Co.*,
  740 F.2d 980 (D.C. Cir. 1984)..................................................................................27

*Springer v. Gov't of Philippine Islands*,
  277 U.S. 189 (1928) ..................................................................................................19

*Steele v. United States*,
  No. 1:14-CV-1523 (RCL), 2020 WL 7123100 (D.D.C. Dec. 4, 2020) ...................33

*Stern v. Marshall*,
  564 U.S. 462 (2011) ..................................................................................................15

*Stewart v. Nat'l Educ. Ass'n*,
  471 F.3d 169 (D.C. Cir. 2006)....................................................................................9

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985) ..................................................................................................17

*Ticor Title Ins. Co. v. FTC*,
  814 F.2d 731 (D.C. Cir. 1987)..................................................................................11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ..............................................................................................20

*\*United States v. Batchelder*,
  442 U.S. 114 (1979) ..................................................................................................20

*United States v. Diggins*,
  36 F.4th 302 (1st Cir. 2022)......................................................................................22

*United States v. Facebook*,
  No. CV 19-2184 (TJK), 2023 WL 8190858 (D.D.C. Nov. 27, 2023) .......................8

*United States v. Parks*,
  698 F.3d 1 (1st Cir. 2012), *cert. denied*, 143 S. Ct. 383 (2022) .............................23

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ..................................................................................................22

*Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*,
  86 F.3d 1188 (D.C. Cir. 1996)..................................................................................28

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016).................................................................................27, 28

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................8

*\*Withrow v. Larkin*,
    421 U.S. 35 (1975)....................................................................23, 24, 28

**STATUTES**

15 U.S.C. § 41.............................................................................................10

15 U.S.C. § 45.......................................................................................*passim*

An Act To create a Federal Trade Commission, to define its powers and duties, and
    for other purposes,
    ch. 311, 38 Stat. 717 (1914) (codified as amended at 15 U.S.C. § 41)...................13

**RULES**

Fed. R. Civ. P. 12.......................................................................................24

**REGULATIONS**

16 C.F.R. § 2.51..........................................................................................3

16 C.F.R. § 3.42..........................................................................................3

16 C.F.R. §§ 3.51-.54..................................................................................3

16 C.F.R. § 3.72.....................................................................................3, 32

**UNITED STATES CONSTITUTION**

U.S. Const. art. I, § 1...............................................................................19

**OTHER AUTHORITIES**

FTC, Commissioners,
    https://www.ftc.gov/about-ftc/commissioners-staff/commissioners .......................13

FTC, Commissioners, Chairwomen and Chairmen of the Federal Trade Commission
    (Mar. 2023),
    https://perma.cc/Y6GV-XPA2.........................................................................12

John Gramlich, *Only 2% of federal criminal defendants went to trial in 2018, and
    most who did were found guilty*, Pew Research Center (June 11, 2019),
    https://perma.cc/KM6Q-ZYDB ..........................................................................2

Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp*, 12 J. Comp. L. & Econ. 623 (2016), https://perma.cc/3JK9-4B7Y .............................................................................27

The White House, *President Biden Announces Key Nominees* (Feb. 13, 2023), https://perma.cc/5VBV-4E4H .........................................................................12

The White House, *President Biden Announces Nominees to Bipartisan Boards and Commissions* (July 3, 2023), https://perma.cc/N445-V4EY .........................................................................12

## INTRODUCTION

In the Federal Trade Commission Act, Congress directed the Federal Trade Commission (FTC) to protect consumers from unfair or deceptive practices and provided the agency with enforcement tools to accomplish that mission—through federal court proceedings and its own administrative process. Consistent with that statutory mandate, the FTC has pursued both administrative and judicial remedies against Meta (formerly known as Facebook) to protect consumers' privacy, resulting in Meta consenting to the FTC issuing administrative orders in 2012 and again in 2020. In 2023, the FTC found good cause to believe that Meta failed to establish and implement an effective privacy program as required under the 2020 order and also violated the 2012 order; accordingly, the Commission initiated an administrative proceeding to determine whether modifications to the 2020 order would be appropriate. To secure settlements for itself in 2012 and 2020, Meta expressly admitted that the FTC had the authority to issue and modify administrative orders. But Meta now asserts that the FTC's administrative proceedings are unconstitutional and seeks an injunction against the FTC's reopening of the 2020 order, advancing constitutional claims it never raised before.

None of those claims are legally viable, much less support Meta's request for the extraordinary remedy of a preliminary injunction. Meta's challenge to the FTC Commissioners' removal protections and its due process claim are squarely precluded by Supreme Court and D.C. Circuit precedent, which this Court cannot overrule. Meta's Article III and Seventh Amendment claims fail because the FTC proceeding at issue involves public rights, which the Supreme Court has held Congress may assign to an agency to adjudicate without a jury. Moreover, the only relief at issue is injunctive (and thus equitable) in nature, so Meta would not have a right to a jury trial even if the proceeding were in court. Meta's nondelegation claim is meritless because the

1

nondelegation doctrine is concerned with the delegation of legislative power, but the FTC's decision to proceed administratively versus in court is an exercise of executive, not legislative, power. Even if the nondelegation doctrine did apply, the FTC Act easily passes the intelligible principle test, as Congress gave the FTC direction on what it wanted the FTC to do—prevent unfair and deceptive practices, and modify orders when changed circumstances or the public interest requires—and how to do it. In addition, Meta has waived all of these claims and is judicially estopped from raising them, based on its past conduct before the Commission and in court.

Finally, Meta has not established irreparable harm. Merely citing *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), is not enough. *Axon* was a subject matter jurisdiction case, not a preliminary injunction case. Reading *Axon* to essentially nullify the irreparable harm element for a preliminary injunction would go against the principle that preliminary injunctions are the exception, not the rule, and would be enormously disruptive to agency proceedings across the government. Nor has Meta shown that any harm to the company outweighs the harm of preventing the FTC from carrying out its Congressionally given duty to protect consumers, or the harm to consumers whose privacy interests may be affected by Meta's alleged misconduct. Accordingly, the Court should deny Meta's motion for preliminary injunction and dismiss its claims for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I.       Statutory and regulatory background

The FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce" and empowers and directs the FTC to prevent those unlawful acts and practices. 15 U.S.C. § 45(a). Congress gave the FTC several tools to carry out this directive. As relevant here, where the Commission believes a corporation has been using an unfair or deceptive act or practice and that a proceeding by the Commission would be in the public interest, it may serve an

2

administrative complaint on the corporation stating its allegations. *Id.* § 45(b). The corporation

has the right to appear at a hearing and to "show cause" why the Commission should not order

the corporation to cease and desist its unfair or deceptive conduct. *Id.* Hearings may be held

before Administrative Law Judges (ALJs), who issue recommended decisions reviewable by the

Commission, or before the Commission itself (or one or more Commissioners). 16 C.F.R.

§§ 3.42, 3.51-.54. The Commission's administrative cease-and-desist orders are then reviewable

by the courts of appeals. 15 U.S.C. § 45(c).

   Congress understood that changes to a final Commission order might become

necessary—for example, because the order might turn out to be insufficient to protect the public

or no longer needed. Accordingly, Congress provided that the Commission may "reopen and

alter, modify, or set aside, in whole or in part, any" administrative order whenever it is of the

"opinion" that "conditions of fact or of law have so changed as to require such action or if the

public interest shall so require." *Id.* § 45(b); *see Elmo Co. v. FTC*, 389 F.2d 550, 552 (D.C. Cir.

1967) (affirming Commission order modified pursuant to this provision). The Commission can

also reopen an order at the corporation's request. *See* 15 U.S.C. § 45(b); 16 C.F.R. § 2.51(b).

   Before modifying an administrative order, the Commission must provide "notice and

opportunity for hearing," 15 U.S.C. § 45(b), via "an order to show cause, stating the changes it

proposes to make in the decision and the reasons they are deemed necessary," 16 C.F.R.

§ 3.72(b)(1). The defendant may file an answer. *Id.* "When the pleadings raise substantial factual

issues, the Commission will direct such hearings as it deems appropriate, including hearings for

the receipt of evidence by it or by an Administrative Law Judge." *Id.* § 3.72(b)(2). If a show

cause order is unopposed, or if the pleadings "do not raise issues of fact to be resolved, the

Commission, in its discretion, may decide the matter on the order to show cause and answer." *Id.*

3

As with the original cease-and-desist order, judicial review of the Commission's modification order is vested in the federal courts of appeals. *See* 15 U.S.C. § 45(b), (c).

The Commission cannot recover civil penalties through administrative proceedings. If the Commission has reason to believe a corporation has violated a cease-and-desist order, it may seek civil penalties by referring a complaint to the Department of Justice to file in federal district court. *Id.* § 45(*l*).

## II.      Factual background and procedural history

### A.      FTC's 2012 Administrative Order

In 2011, the Commission issued an administrative complaint against Meta (then Facebook), alleging multiple violations of the FTC Act, 15 U.S.C. § 45(a). *See* Ex. A (2011 Complaint). Among other things, that complaint alleged that Meta misleadingly promised users they could restrict the sharing of their non-public information to limited audiences, when in fact such limitations did not prevent Meta from sharing the users' information with third-party developers. *Id.* at 3-4. The complaint further alleged that Meta deceptively changed its website, making certain information public that users previously may have designated private, without warning those users or first obtaining their approval. *Id.* at 4-5. In addition, the complaint alleged that Meta continued to provide access to photos and videos after users deactivated or deleted their accounts, despite Meta's false or misleading claims that such content would become inaccessible. *Id.* at 9-10.

Meta agreed to settle this administrative complaint with an administrative cease-and-desist order issued by the Commission. *See* Ex. C (2012 Administrative Order). The 2012 Administrative Order barred Meta from misrepresenting the privacy or security of consumers' information and also required it to obtain users' affirmative, express consent before sharing their information with third parties in a manner that would materially exceed their privacy settings. *Id.*

4

at 3. Moreover, Meta was required to prevent anyone from accessing a user's information more than 30 days after the user deleted their account. *Id.* at 5. Finally, Meta was ordered to establish and maintain a comprehensive privacy program and obtain independent third-party assessments of that program. *Id.* Meta never argued that the Commission or its order was unconstitutional. To the contrary, it agreed to proceed administratively, "admit[ted] all the jurisdictional facts," and "waive[d] . . . all rights to seek judicial review or otherwise to challenge or contest the validity of the order." Ex. B (2011 Agreement Containing Consent Order).

### B.   The district court's 2020 Stipulated Order and the FTC's 2020 Administrative Order

In 2019, based on its belief that Meta had violated various provisions of the 2012 Administrative Order, the Commission referred to the Department of Justice a complaint seeking civil penalties and injunctive relief under section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*). The complaint filed by the United States in district court alleged that Meta (1) misrepresented the extent to which users could control the privacy of their data and the steps required to implement those controls; (2) misrepresented the information Meta made accessible to third parties; and (3) failed to establish, implement, and maintain a privacy program reasonably designed to address privacy risks. *See* Ex. D (2019 Complaint). Specifically, the complaint alleged that Meta maintained deceptive settings and made public statements suggesting that it restricted the sharing of users' information, when in fact third-party developers still could access and collect their data. *Id.* at 2. Meta also allegedly failed to adequately address the privacy risks posed by third-party developers and misrepresented users' ability to control the use of facial recognition technology. *Id.*

The matter was eventually resolved in 2020. The terms of that settlement were set forth in the Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief, entered by

Judge Kelly of this Court on April 23, 2020. *See* Ex. E (2020 Stipulated Order). In the Stipulated Order, Meta agreed to pay a $5 billion civil penalty. *Id.* at 3. Meta also consented to the Commission reopening the administrative proceeding, modifying the 2012 Administrative Order, and replacing it with a new administrative order, the content of which was included as "Attachment A" to the Stipulated Order, although the Stipulated Order did not order the Commission to do anything. *See id.* at 4. Again, during the settlement overseen by Judge Kelly, Meta never contended that the Commission or its order was unconstitutional. Instead, Meta "admit[ted] the facts necessary to establish jurisdiction" and "waive[d] all rights to appeal or otherwise challenge or contest the validity of [the] Stipulated Order." *Id.* at 2.

After the Court issued the Stipulated Order, the Commission reopened the administrative proceedings against Meta and determined it was in the "public interest" to modify the 2012 Administrative Order to reflect the contents of Attachment A to the Stipulated Order. *See* Ex. F (Order Modifying Prior Decision and Order) ("2020 Administrative Order"). In doing so, the Commission noted that Meta had "consented to modifying the 2012 [Administrative Order] as set forth." *Id.* at 1. Consistent with the terms of the Stipulated Order, Meta did not object to the Commission reopening its administrative proceedings or issuing the modified administrative order.

The 2020 Administrative Order: (1) expanded the privacy program and assessment provisions, mandating that Meta conduct a "privacy review" of every new or modified product, service, or practice before implementation and document its risk mitigation determinations; (2) required Meta to exercise more rigorous oversight over third-party apps; (3) required Meta to implement greater data security protections for certain user information; (4) imposed new restrictions on Meta's use of facial recognition technology and telephone numbers obtained to

enable a security feature; and (5) required Meta to report incidents involving the data compromise of 500 or more users and document its efforts to address them. Ex. F at 5-16. As required by the 2020 Administrative Order, Meta retained an independent assessor to review the mandated privacy program.

### C. FTC's 2023 Order to Show Cause and ensuing district court proceedings

On July 1, 2021, the independent assessor provided an initial report for the period running from October 25, 2020, to April 22, 2021. Ex. G. Based in large part on the gaps and weaknesses identified by the assessor, FTC staff concluded that there were deficiencies presenting substantial risks to the public. On May 3, 2023, the Commission issued an order to show cause ("OTSC") why it should not modify the 2020 Administrative Order to include additional safeguards. Ex. H-J (2023 Order to Show Cause and attachments). In that order, the Commission explained it had good cause to believe that Meta: (1) failed to implement an effective privacy program as required by the 2020 Administrative Order; (2) misrepresented the extent to which third-party developers received non-public information; and (3) misrepresented privacy protections in connection with its messaging and video calling application specifically intended for users under the age of 13. Ex. H at 11-12. The OTSC set a 30-day deadline for Meta to respond. *Id.* at 13.

Instead of answering the allegations, on May 31, 2023, Meta filed a motion with Judge Kelly in the 2019 district court case seeking to halt the Commission's proceedings. Meta contended that the Court had exclusive jurisdiction to enforce or modify the 2020 Stipulated Order and that Attachment A (which was entered by the Commission as an administrative order after the Court issued the stipulated order) was part of the 2020 Stipulated Order. And for the first time, Meta also raised numerous constitutional challenges to the proposed modifications, to the modification procedures, and to the FTC's authority generally. Judge Kelly denied Meta's

motion, finding that, while the "Stipulated Order directed [Meta] to pay $5 billion in civil money penalties and 'consent to' the FTC's reopening of its administrative proceedings and modification of its 2012 administrative order with Attachment A . . . , the Court did not order [Meta] to comply with the terms of Attachment A, nor order the FTC to do anything." *United States v. Facebook*, No. CV 19-2184 (TJK), 2023 WL 8190858, at *4 (D.D.C. Nov. 27, 2023) (citation omitted). Thus, the Court did not have jurisdiction over Attachment A or the 2020 Administrative Order, nor over modifications the Commission may make to that order. *Id.* at *6. The Court also lacked "jurisdiction over Defendant's claim that the FTC lacks the authority to reopen its proceedings and modify the 2020 administrative order." *Id.* at *7.

Meta has appealed Judge Kelly's decision to the D.C. Circuit. *United States v. Facebook*, No. 23-5280 (D.C. Cir. filed Nov. 29, 2023). Meta also filed a new complaint and preliminary injunction motion in this Court, raising a subset of the same issues it had tried to raise in its motion before Judge Kelly. Compl., Dkt. 1; Mot. for Prelim. Inj., Dkt. 4. Specifically, Meta alleges that the FTC's modification proceedings violate Articles I, II, and III and the Fifth and Seventh Amendments of the Constitution.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). The movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The third and fourth factors of the preliminary injunction analysis—harm to others and the public

interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must construe the complaint in the plaintiff's favor and treat well-pleaded factual allegations as true, but need not credit conclusory statements, legal conclusions cast as factual allegations, or inferences drawn by the plaintiff that are not supported by the facts alleged. *Nunes v. WP Co.*, 513 F. Supp. 3d 1, 5 (D.D.C. 2020); *Mirv Holdings, LLC v. GSA*, 454 F. Supp. 3d 33, 41 (D.D.C. 2020). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)).

## ARGUMENT

Meta's myriad challenges to the FTC's authority are without merit. Further, Meta has not established irreparable harm, or that any such harm outweighs the harm the requested injunction would impose on the government and the public. Thus, this Court should deny Meta's motion for preliminary injunction and dismiss the Complaint.

I.      **Meta has not alleged any plausible constitutional claims and is unlikely to succeed on the merits.**

   A.      **Meta's Article II removal claim fails.**

      i.      *Humphrey's Executor* **binds this Court.**

Meta's challenge to the FTC Act's restrictions on the President's removal power over FTC commissioners "is clearly foreclosed by Supreme Court precedent." *FTC v. Precision Patient Outcomes, Inc.*, No. 22-CV-07307-VC, 2023 WL 3242835, at *1 (N.D. Cal. May 3, 2023). This Court should join numerous other courts in rejecting this challenge. *E.g.*, *id.*; *FTC v. Kochava Inc.*, ---F. Supp. 3d ---, 2023 WL 3249809, at *12 (D. Idaho May 4, 2023); *FTC v. Roomster Corp.*, 654 F. Supp. 3d 244, 260 (S.D.N.Y. 2023).

The Supreme Court upheld the Commissioners' removal restrictions in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Then, as now, the President could remove FTC commissioners for only "inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. The Court "found it 'plain' that the Constitution did not give the President 'illimitable power of removal' over the officers of independent agencies," and held that the "'coercive influence' of the removal power would 'threaten the independence of the commission.'" *Morrison v. Olson*, 487 U.S. 654, 687-88 (1988) (quoting *Humphrey's Executor*, 295 U.S. at 630) (alterations omitted). Since the Court's 1935 *Humphrey's Executor* decision, "removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission, . . . , the Interstate Commerce Commission, . . . , and the Consumer Product Safety Commission[.]" *Morrison*, 487 U.S. at 724-25 (Scalia, J., dissenting).

Meta invites this Court to overrule *Humphrey's Executor* on the grounds that the Commission's executive enforcement powers have expanded since 1935. Dkt. 1 at 3-4 (Compl. ¶ 5); Dkt. 4-1 at 21-22. But the Supreme Court's decision in *Humphrey's Executor* "remain[s]

binding precedent until [the Supreme Court] see[s] fit to reconsider [it], regardless of whether subsequent cases have raised doubts about [its] continuing vitality." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (quoting *Hohn v. United States*, 524 U.S. 236, 252-53 (1998)); *see In re Aiken Cnty.*, 645 F.3d 428, 446 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("*Humphrey's Executor* is an entrenched Supreme Court precedent, protected by stare decisis."); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 741 (D.C. Cir. 1987) (applying *Humphrey's Executor* even though it was "at least arguable that the Supreme Court might be persuaded to alter its current position").

Moreover, in recent cases addressing the President's removal power, the Supreme Court has repeatedly declined to overrule *Humphrey's Executor*. In *Seila Law LLC v. CFPB*, for instance, the Court decided to leave *Humphrey's Executor* in place, even after acknowledging that some of that decision's reasoning—that the Commission exercised quasi-legislative or quasi-judicial power and not executive power—"has not withstood the test of time." 140 S. Ct. 2183, 2198 n.2 (2020); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021) (noting that in *Seila Law*, "[w]e did 'not revisit our prior decisions allowing certain limitations on the President's removal power'") (quoting *Seila Law*, 140 S. Ct. at 2192). The Court also implicitly reaffirmed *Humphrey's Executor* in discussing the remedy in *Seila Law*. Although the Court ultimately chose to remedy the CFPB Director's unconstitutional removal protections by severing them from the statute and making the Director removable at will by the President, the Court noted that Congress was not foreclosed "from pursuing alternative responses to the problem—for example, converting the CFPB into a multimember agency," *Seila Law*, 140 S. Ct. at 2211: in other words, into an agency more like the FTC. And in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 496 (2010), the Court invalidated "novel" and "rigorous" removal restrictions for certain inferior officers who could be removed by only the SEC commissioners, but noted that the constitutional

11

defect could be remedied by making the inferior officers removable at will by the commissioners while leaving the SEC commissioners removable for inefficiency, neglect of duty or malfeasance in office—the same protection applicable to FTC commissioners.

Meta also suggests that *Humphrey's Executor* is undermined by the fact that the current Commissioners have served for five or fewer years and the three current Commissioners are from one political party. *See* Dkt. 1 at 14-15 (Compl. ¶ 49); Dkt. 4-1 at 22-23.[1] This argument should be rejected for several reasons. First, the happenstance of which seats are filled or vacant at any particular time or the exact tenure of whichever Commissioners happen to be in office at the moment is irrelevant to the constitutional analysis. Congress specifically designed the Commission so that Commissioners would serve staggered, seven-year terms, which "enabled the agency to accumulate technical expertise and avoid a 'complete change' in leadership 'at any one time.'" *Seila Law*, 140 S. Ct. at 2199 (quoting *Humphrey's Executor*, 295 U.S. at 624). Congress sensibly and unremarkably predicted that there would be times when seats would be vacant, since events

---

[1] The current Commissioners are Democrats Rebecca Slaughter, Lina Khan, and Alvaro Bedoya, who took office on May 2, 2018, June 15, 2021, and May 16, 2022, respectively. The two other seats became vacant on October 14, 2022, and March 31, 2023, when Republican Commissioners Noah Phillips and Christine Wilson stepped down, respectively. *See* FTC, Commissioners, Chairwomen and Chairmen of the Federal Trade Commission (Mar. 2023), https://perma.cc/Y6GV-XPA2. The President made two Republican nominations to the Commission in July 2023; those nominees are awaiting Senate confirmation. *See* The White House, *President Biden Announces Nominees to Bipartisan Boards and Commissions* (July 3, 2023), https://perma.cc/N445-V4EY. Commissioner Slaughter is also awaiting confirmation to a second term. *See* The White House, *President Biden Announces Key Nominees* (Feb. 13, 2023), https://perma.cc/5VBV-4E4H. Courts may take judicial notice of "publicly available materials and information, such as . . . information available on government websites." *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, No. CV 19-3629 (RC), 2021 WL 1198047, at *2 (D.D.C. Mar. 30, 2021) (taking judicial notice of Senate confirmation of Department of Interior official); *Prayed v. U.S. Dep't of Lab.*, No. 4:17-CV-00023-TMB, 2019 WL 13184717, at *1 (D. Alaska July 31, 2019) (taking judicial notice that the Secretary of Labor had resigned and had not yet been replaced), *aff'd*, 840 F. App'x 996 (9th Cir. 2021).

such as deaths, illnesses, and resignations can occur anytime, and it takes time for the President to nominate and the Senate to confirm new Commissioners. Congress authorized the Commission to keep operating even during those times. *See* An Act To create a Federal Trade Commission, to define its powers and duties, and for other purposes, ch. 311, § 1, 38 Stat. 717 (1914) (codified as amended at 15 U.S.C. § 41). This has been a feature of the FTC Act since it was enacted in 1914, and nothing in *Humphrey's Executor* suggests that the case turned on the contrary, unrealistic expectation that every seat would always be filled at every moment. *Cf. McIntosh v. Dep't of Def.*, 53 F.4th 630, 641 (Fed. Cir. 2022) (rejecting constitutional challenge based on a multimember board's lack of a quorum because that "is a temporary circumstance, not a structural defect") (quoting *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1309 (Fed. Cir. 2021)). Second, Meta's characterization of the current Commission as "lack[ing] tenure" and "relatively inexperienced" is incorrect. Dkt. 4-1 at 22-23. Commissioner Slaughter has served for over 5 years, Chair Khan for 2.5 years, and Commissioner Bedoya for 1.5 years. And all have significant experience with competition and consumer protection beyond their service as Commissioners.[2] Thus Meta's argument is unavailing.

### ii.   Meta is not entitled to relief without a showing of prejudicial harm.

Even if the Commissioners' removal protections were unconstitutional, which they are not, Meta still could not obtain the injunctive relief it seeks because those removal protections have no effect on the administrative proceedings from which Meta seeks relief. Meta has not suggested that the Commissioners were not properly nominated for and appointed to their positions. Thus, according to the Supreme Court, "there is no basis for concluding that [the Commissioners] lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788. Nor has Meta

---

[2] Their biographies are available on the FTC's website. *See* FTC, Commissioners, https://www.ftc.gov/about-ftc/commissioners-staff/commissioners.

adequately alleged or shown that the challenged removal provision "cause[d] harm" by prejudicing the President's control over the Commissioners in a way that harms Meta. *Id.* at 1789. Meta has not shown, for instance, that the President has sought to remove the current Commissioners or that he disagrees with the Commission's proposal to modify the 2020 Administrative Order. *See id.* Meta's failure to make such a showing is dispositive, as the party alleging a removal violation is entitled to relief "only when the President's inability to fire an agency head *affected the complained-of decision.*" *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (rejecting removal claim where plaintiff failed to establish "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor") (citing *Collins*, 141 S. Ct. at 1801), *cert. granted,* 143 S. Ct. 978 (2023), and *cert. denied*, 143 S. Ct. 981 (2023).

A showing of harm is required regardless of whether the challenger tries to characterize the relief it seeks as voiding past agency actions or preventing ongoing or future actions. For example, in *CFPB v. Law Offices of Crystal Moroney, P.C.*, the CFPB sought to enforce a civil investigative demand ("CID") for production of documents as part of an ongoing investigation into whether Ms. Moroney's law office was violating debt collection laws. 63 F.4th 174, 178, 185 (2d Cir. 2023), *petition for cert. filed on other grounds*, No. 22-1233 (U.S. June 23, 2023). Moroney tried to distinguish *Collins* on the ground that the relief she sought was prospective (protection from having to produce documents) and not retrospective (voiding the issued CID). The Second Circuit rejected this argument because "the Supreme Court's reasoning that an officer's actions are valid so long as she was validly appointed applies with equal force regardless of the relief sought by the party challenging the officer's actions." *Id.* at 180–81. The Fifth and Sixth Circuits

have rejected similar arguments for similar reasons. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th at 631-32; *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023). Thus, regardless of how Meta frames the relief it seeks, it still must show harm under *Collins*, which it has failed to do. Accordingly, its Article II claim fails.

> **B.      The Commission's adjudication of public rights is consistent with Article III.**

Meta asserts that the claims raised in the Commission's OTSC must be litigated in an Article III court. Dkt. 1 at 16-17, 19-20 (Compl. ¶¶ 54-59, 80-84); Dkt. 4-1 at 26-28. That is incorrect. Article III vests the "judicial Power" in the federal courts. U.S. Const. art. III, § 1. "Congress cannot confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372-73 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). To determine whether an adjudication involves an exercise of judicial power, the Supreme Court has distinguished between "public rights" and "private rights" and has "given Congress significant latitude to assign adjudication of public rights to entities other than Article III courts." *Id.* at 1373 (citation omitted). Public rights are those "arising between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Stern*, 564 U.S. at 489 (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)).

The administrative proceedings at issue here involve public rights. The proceedings are between the government and Meta, a party "subject to its authority." *Id*. They are connected to the government's regulation of unfair and deceptive business practices that harm consumers. *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005) (explaining that the FTC's action "was not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public"); *FTC v.*

*Neora LLC*, No. 3:20-cv-01979-M, 2022 WL 3213540, at * 3 (N.D. Tex. Aug. 8, 2022) (explaining that, in seeking injunctive relief, "the FTC is operating in a sovereign capacity for the protection and furtherance of public rights and interests, namely to protect the public from . . . 'unfair or deceptive acts or practices,' as authorized by the FTC Act."); *cf. Simpson v. Office of Thrift Supervision*, 29 F.3d 1418, 1423 (9th Cir. 1994) (holding that, in instituting cease-and-desist proceedings, the Office of Thrift Supervision "served a public purpose of the sort Congress envisioned in providing for administrative adjudication"). Similar to the Occupational Safety and Health (OSH) Act at issue in *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977), the FTC Act aims to "prevent" unfair and deceptive acts and practices even before they actually harm consumers. 15 U.S.C. § 45(a)(2); *see Atlas Roofing*, 430 U.S. at 445. To achieve that goal, the FTC created new statutory duties and remedies that did not exist at common law. For example, "[t]o prove a deceptive act or practice in violation of Section 5(a) of the FTC Act, [15 U.S.C. § 45(a)], the FTC must show: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3), the representation, omission, or practice is material." *FTC v. Cantkier*, 767 F. Supp. 2d 147, 151 (D.D.C. 2011). "Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation." *Freecom Commc'ns*, 401 F.3d at 1203 n.7. "Otherwise, the law would preclude the FTC from taking preemptive action against those responsible for deceptive acts or practices, contrary to § 5's prophylactic purpose." *Id.* at 1203 (citation omitted). The FTC Act entrusted to an expert agency, the Commission, the task of investigating and adjudicating these violations. The Supreme Court upheld agency adjudication of similar OSH Act violations, and this Court should do the same here with the FTC Act. *See Atlas Roofing*, 430 U.S. at 445, 450.

Meta asserts that this matter involves private rights because it implicates Meta's property rights. Dkt. 1 at 16, 20 (Compl. ¶¶ 55-59, 82-83); Dkt. 4-1 at 27-28. But the mere possibility that a case might affect a private party's property rights does not mean that it must be adjudicated by an Article III court or by a jury. "Many matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 583 (1985). Adopting Meta's position would require this Court to overturn decades of Supreme Court precedent upholding agency adjudication of cases determining liabilities of companies and individuals that necessarily implicated their private property rights. *Atlas Roofing*, for example, involved agency adjudication of OSHA citations against companies that were required to pay monetary penalties and to change their business practices to abate safety hazards. 430 U.S. at 447-48; *see also, e.g.*, *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853 (1986) (allowing CFTC to adjudicate debit balance claims between commodity futures brokers and customers, which involved "private rights" "assumed to be at the 'core' of matters normally reserved to Article III courts"); *Crowell*, 285 U.S. at 51-53 (replacing injured longshore workers' traditional negligence cause of action against employers with an administrative workers' compensation system requiring employers to pay compensation to injured workers). Thus, Meta cannot succeed on its Article III claim.

### C.    The Seventh Amendment does not apply where, as here, only injunctive relief is sought.

"[I]f Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989); *In re Tex. Gen. Petroleum Corp.*, 52 F.3d 1330, 1336 (5th Cir. 1995) ("Whether an Article III court

is necessary involves the same inquiry as whether a litigant has a Seventh Amendment right to a jury trial."). Thus, if the Court agrees with Defendants that Meta's Article III claim fails under the public rights doctrine, then Meta's Seventh Amendment claim fails as well.

Even if the public rights doctrine were not dispositive, Meta's Seventh Amendment arguments would still fail. Meta asserts that it has a right to a jury trial because the FTC's statutory scheme "provides for the potential future imposition of civil penalties," citing 15 U.S.C. § 45(l). Dkt. 1 at 4, 17, 20 (Compl. ¶¶ 8, 61, 87); Dkt. 4-1 at 28. But the modification proceeding does not involve civil penalties, only prospective changes in Meta's conduct, which is injunctive in nature, and "[i]t is settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) (citing *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433 (1830)). Under § 45(l), *if* after hearing from Meta the Commission decides to modify the 2020 Order, *if* Meta one day were to violate the modified order, *if* the Commission referred the matter to the Department of Justice, and *if* the Department of Justice filed a complaint in district court, *then* civil penalties could potentially be recovered from Meta. Meta cites no authority for the proposition that jury trial rights can attach based on speculation about remedies that might or might not be sought in a future proceeding in a different forum, based on future violations that may or may not happen.

Meta's breach of contract theory fails for similar reasons. *See* Dkt. 1 at 16 (Compl. ¶ 56); Dkt. 4-1 at 29. As a threshold matter, Meta's analogy is inapt because the Commission is not bringing a breach of contract claim; it is proposing to modify its 2020 order pursuant to its authority under the FTC Act. *See* 15 U.S.C. § 45(b). Meta (then Facebook) consented to entry of the 2020 order, but the Commission's statutory modification authority does not depend on whether a Commission order resulted from a fully litigated case or a consent agreement. Nor is the

18

Commission's modification authority limited to situations when the previous administrative order (consent order or not) was violated. Thus, the modification proceedings fundamentally do not arise from a breach of an agreement like breach of contract claims do. Moreover, even if the modification proceedings could be analogized to a breach of contract claim, the potential relief involved would be more akin to specific performance—which is equitable, *see Atlas Roofing*, 430 U.S. at 459—than to legal remedies like damages.

> **D.     The FTC's authority to choose between administrative and judicial remedies does not implicate or violate the nondelegation doctrine.**

Meta's nondelegation claim fails because, when the FTC decides in an individual case whether to proceed administratively or in court, it exercises executive power, not legislative power. Thus, that choice does not implicate the nondelegation doctrine. In the alternative, even if the decision was an exercise of legislative power, it was guided by intelligible principles in the FTC Act.

Article I of the Constitution vests the federal government's legislative powers in Congress, and Congress may not delegate those powers to an executive agency absent an intelligible principle to guide the exercise of discretion. U.S. Const. art. I, § 1; *see, e.g., Mistretta v. United States*, 488 U.S. 361, 372 (1989). However, in authorizing the FTC to choose between administrative and judicial enforcement mechanisms, Congress did not unconstitutionally delegate its legislative powers. "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them." *Buckley v. Valeo*, 424 U.S. 1, 139 (1976) (quoting *Springer v. Gov't of Philippine Islands*, 277 U.S. 189, 202 (1928)), *superseded by statute on other grounds as recognized in McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003). It has long been established that "enforcement power," which includes the "discretionary power to seek judicial relief" by filing a lawsuit, is an exercise of executive authority. *Id.* at 138. Further, "an agency's

19

decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

The Commission does not "make law" when it chooses between administrative and judicial remedies, any more than an Executive Branch agency makes law by choosing to bring a criminal prosecution rather than a civil suit, or by choosing whether to pursue civil penalties or equitable relief. These types of decisions about what violations to assert, what penalties to seek, and in what forum to proceed are quintessentially executive actions that are the very definition of enforcing the laws. *See United States v. Batchelder*, 442 U.S. 114, 125-26 (1979) (finding no violation of nondelegation doctrine in authorizing prosecutor to choose among statutes that impose different penalties for essentially the same conduct); *cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) ("[T]he choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch.").

The Fifth Circuit decision on which Meta relies, *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), is neither binding nor persuasive. *Jarkesy* conflated (1) Congress's legislative power to determine the range of enforcement mechanisms that should be available to the agency in particular *categories* of cases with (2) the executive power to choose among permissible enforcement mechanisms in individual cases. Thus, the decision is inconsistent with Supreme Court precedent. *Jarkesy* is also distinguishable because the Fifth Circuit's determination that the SEC was exercising legislative power relied heavily on the fact that the Congress gave the SEC "the ability to determine which subjects of its enforcement actions are entitled to Article III proceedings *with a jury trial*, and which are not." *See id.* at 461 (emphasis added). That is not at issue here. The Commission's OTSC involves only potential changes in

20

administrative order provisions governing Meta's conduct: a remedy similar to injunctive relief. Even if the Commission had sought that relief in court, Meta would have no right to a jury trial. *See City of Monterey*, 526 U.S. at 719.

Further, even if the choice between administrative and judicial enforcement were a legislative act (and it is not), the Commission's authority still passes constitutional muster because Congress limited the Commission's discretion to make that choice with a sufficiently intelligible principle. The "intelligible principle" standard is not a demanding one. *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality opinion). "[A] delegation is permissible if Congress has made clear to the delegee 'the general policy' he must pursue and the 'boundaries of his authority.'" *Id.* (cleaned up). "The Supreme Court has underscored that the general policy and boundaries of a delegation need not be tested in isolation," as "the statutory language may derive content from the purpose of the Act, its factual background and the statutory context." *Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 30 (D.C. Cir. 2008) (cleaned up).

In the FTC Act, Congress has set out both a general policy and the boundaries of the Commission's authority. As relevant here, the FTC Act outlaws "unfair or deceptive acts or practices in or affecting commerce" and directs the Commission to "prevent" persons and entities from engaging in them. 15 U.S.C. § 45(a)(1)-(2). An "unfair" act or practice "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers." *Id.* § 45(n). Although "deceptive" is not specifically defined in the statute, deceptive is a well-enough understood term that courts have recognized it does not need more definition to provide an intelligible principle. *See FTC v. Zaappaaz, LLC*, No. 4:20-cv-2717, 2023 WL 5020618, at *8 (S.D. Tex. June 9, 2023) (rejecting argument that Congress failed to provide intelligible principle when it failed to define

"deceptive," "given that the word deceptive has been defined in many contexts and does not need further definition"). Congress also identified in the FTC Act the mechanisms that the Commission is allowed to use and the specific circumstances under which the Commission may use each of them. *See generally AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 72-73, 76-77 (2021).

As to the Commission process involved here, the Commission can modify its previous orders only if, "in the opinion of the Commission[,] conditions of fact or of law have so changed as to require such action or if the public interest shall so require." 15 U.S.C. § 45(b). The change in conditions prong prevents the Commission from modifying orders where nothing has changed since the original order, or if there are changes, but, for example, they are not of the degree or nature that would "require" an order to be modified so that it continues to protect consumers from unfair or deceptive acts. As for the public interest prong, the "public interest" is similarly informed by the statute's purpose of protecting consumers from unfair or deceptive practices, and limits the Commission's ability to act outside of those parameters. *See Mohr v. FTC*, 272 F.2d 401, 405-06 (9th Cir. 1959) (recognizing "public interest in terminating deceptive practices" and upholding the Commission's modification of a prior administrative order where experience under the prior order showed modification was necessary to "stop the deception"); *see also Elmo*, 389 F.2d at 552 (citing *Mohr* approvingly). The Supreme Court has repeatedly "found an 'intelligible principle' in various statutes authorizing regulation in the 'public interest.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citation omitted). The public interest is "not a concept without ascertainable criteria," *N.Y. Cent. Sec. Corp. v. United States*, 287 U.S. 12, 25 (1932), or "so indefinite as to confer an unlimited power," *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216 (1943); *see also id.* at 225-26 (rejecting nondelegation argument); *United States v. Diggins*, 36 F.4th 302, 319 n.19 (1st Cir. 2022) (holding that a criminal statute authorizing prosecutions in the "public interest"

"indisputably satisfies the lax 'intelligible principle' standard under our precedents and those of the Supreme Court") (quoting *United States v. Parks*, 698 F.3d 1, 7 (1st Cir. 2012)), *cert. denied*, 143 S. Ct. 383 (2022). Because Congress provided ample guidance to the Commission on how to enforce the FTC Act, Meta's nondelegation claim fails.

### E.    Meta's due process claim fails.

Meta asserts that the Commission plays a dual role as prosecutor and judge, in violation of due process. Dkt. 1 at 3, 12-13, 18 (Compl. ¶¶ 4, 39-45, 66-69); Dkt. 4-1 at 18. But that claim is foreclosed by Supreme Court precedent. "[T]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Withrow v. Larkin*, 421 U.S. 35, 58 (1975); *see also In re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011); *FTC v. Cinderella Career & Finishing Sch., Inc.*, 404 F.2d 1308, 1315 (D.C. Cir. 1968) (upholding combination of functions in FTC case). Meta has not shown or plausibly alleged that the Commission's combination of functions results in biased adjudication. "Courts have long recognized a 'presumption of honesty and integrity in those serving as adjudicators.'" *Professional Air Traffic Controllers Org. v. Fed. Labor Relations Auth.*, 685 F.2d 547, 573 (D.C. Cir. 1982) (quoting *Withrow*, 421 U.S. at 47). Arguments that agency adjudicators are biased thus involve a "difficult burden of persuasion to carry," as the plaintiff must overcome that presumption. *Withrow*, 421 U.S. at 47. To do so, Meta must make a "strong showing" that the Commission is not acting in good faith. *Pro. Air Traffic Controllers Org. v. Fed. Labor Rels. Auth.*, 685 F.2d at 573 (quoting *Withrow*, 421 U.S. at 47). The presumption is not overcome by the mere fact that an agency official has been involved in both investigation and adjudication of a matter, without "more evidence of bias or the risk of bias or prejudgment." *Withrow*, 421 U.S. at 53-54. The sort of bias or prejudice that might warrant a Fifth Amendment claim in an administrative proceeding could arise where the "adjudicator has a pecuniary interest in the outcome" or where "he has been the target of

personal abuse or criticism from the party before him." *Id.* at 47. However, where an agency official "approve[s] the filing of charges . . . instituting enforcement proceedings," it would not offend due process for that official "to participate in the ensuing hearings." *Id.* at 56; *see also FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948) (holding that FTC did not violate due process when it adjudicated a matter against a particular respondent after opining in reports and congressional testimony that the conduct at issue constituted an unfair practice).

Here, Meta accuses the Commission of prejudgment, pointing to various aspects of the OTSC document and the Commission's alleged refusal to meet informally with Meta before issuing the OTSC. Dkt. 1 at 2-3, 9, 12 (Compl. ¶¶ 2, 4, 31, 39-40); Dkt. 4-1 at 18-20. To the extent that Meta's due process claim is based on circumstances specific to Meta, the Court should dismiss it for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1). While the Supreme Court in *Axon* held that the district court had subject matter jurisdiction over the *Axon* plaintiff's combination-of-functions claim, that was based on the understanding that the claim was a "fundamental, even existential" one that "maintain[ed] in essence that the agenc[y], as currently structured, [was] unconstitutional in much of [its] work." 598 U.S. at 180. As-applied due process challenges like the one that Meta seems to be making are not covered by *Axon*. *See id.* at 193 (distinguishing claims that "object to the Commissions' power generally" from those that object to something "particular about how that power was wielded" and from "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision"). Such claims should be reviewed through the normal judicial review process provided in the FTC Act. *See Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) ("Nothing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency

proceeding . . . , especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review.").

In any event, Meta's arguments relating to the OTSC distort the nature and role of the document. The FTC Act permits the Commission to modify its prior orders only "after notice and opportunity for hearing." 15 U.S.C. § 45(b). In accordance with the statute, the OTSC gives notice to Meta about what the Commission is considering doing (modifying the 2020 Order), why (based on the Commission's preliminary understanding of the facts), and how (describing the proposed modifications). The OTSC also gives Meta the opportunity to be heard before the Commission takes action. Providing notice and an opportunity to be heard obviously does not violate due process. Indeed, it is what is required to satisfy due process in many circumstances. There is no evidence in the OTSC that the Commissioners' minds are "irrevocably closed" to whatever evidence or arguments Meta might present. *Cement Inst.*, 333 U.S. at 701. The "preliminary" factual findings are exactly that—preliminary—because the Commission is waiting to hear Meta's side of the story before it makes any final factual findings. That the factual discussion in the OTSC is lengthy is unremarkable in light of the detailed nature of the independent assessment and of the voluminous information that Facebook provided to the FTC in response to it. *See* Ex. G; Dkt. 1 at 8 (Compl. ¶ 28) ("Meta's responses [to the assessor's report] included multiple depositions, hundreds of pages of narrative responses, and nearly 30,000 pages of underlying source material."). Moreover, "[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976). To hold, as Meta would, that an agency shows prejudgment when its notice provides too much information would create a strange incentive for agencies to be more vague, which is counterproductive to due process principles. As

for Meta's complaint that it did not get to meet with the Commissioners or senior staff before the OTSC was issued, Dkt. 4-1 at 19, Meta points to no regulatory, statutory, or constitutional requirement that Commissioners or senior staff must meet informally with an entity before the Commission can initiate any proceeding against it. The statute requires "notice and opportunity for hearing," which the OTSC provided.

Meta also alleges systemic bias based on a sentence in the Ninth Circuit decision in *Axon* stating that "FTC does not appear to dispute . . . that [it] has not lost a single [administrative] case in the past quarter-century." Dkt. 1 at 13 (Compl. ¶¶ 43-45) (quoting *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021)); Dkt. 4-1 at 18. As a preliminary matter, the "narrow question presented" to the Ninth Circuit in *Axon* was "whether the district court has jurisdiction to hear Axon's constitutional challenge to the FTC's structure." 986 F.3d at 1176. The merits of Axon's claim, or lack thereof, was not before the court. Thus, the Ninth Circuit's dictum has no bearing on this case.

More importantly, an isolated assertion about an adjudicator's history of past rulings is not sufficient to allege a plausible due process claim or to make a sufficient showing to overcome the presumption of good faith. Courts have repeatedly rejected similar assertions against other agency adjudicators. *See, e.g.*, *Singh v. Garland*, 20 F.4th 1049, 1054-55 (5th Cir. 2021) ("An [immigration judge's] 'denial rate' is no more than a crude summation of the IJ's prior rulings. This raw statistic cannot of itself show bias in a particular case."); *James R. v. Kijakazi*, No. CV 22-05030 (GC), 2023 WL 6389097, at *5 (D.N.J. Sept. 30, 2023) (rejecting due process claim based on Social Security ALJ's "apparently high general rate of denying social security benefits" because "poor statistics in other cases are not sufficient for the Court to find bias"); *Hall v. Kane*, No. C 05-4426 MMC (PR), 2008 WL 5391196, at *4 (N.D. Cal. Dec. 23, 2008) ("[E]ven statistical

data as to the rate of denial in other prisoners' cases will not suffice to establish that the Board automatically denies parole, or that the Board otherwise improperly made its determination in petitioner's case, as parole may have been properly denied after the Board's individualized assessment of each of those cases."). Even in an individual case, the alleged "statistical one-sidedness" of an adjudicator's rulings "simply cannot be used to support an inference of judicial bias." *So. Pac. Commc'n Co. v AT&T Co.*, 740 F.2d 980, 995 (D.C. Cir. 1984); *In re IBM Corp.*, 618 F.2d 923, 930 (2nd Cir. 1980) (similar).

Further, Meta's claim of systemic bias overlooks that the Commission has dismissed administrative complaints or counts in those complaints. *See, e.g.*, *McWane, Inc. v. FTC*, 783 F.3d 814, 822-23 & n.7 (11th Cir. 2015); *In re R.R. Donnelley & Sons Co.*, 120 F.T.C. 36, 136 (1995). The most comprehensive analysis of the Commission's decisionmaking, prepared by former Commissioner Maureen Ohlhausen and published in a peer-reviewed economics journal, found no evidence of systemic bias. *See* Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp*, 12 J. Comp. L. & Econ. 623, 624, 651 (2016), https://perma.cc/3JK9-4B7Y. As a point of comparison, more than 90% of federal criminal cases are resolved with guilty pleas, and fewer than 1% of federal criminal defendants go to trial and are acquitted. John Gramlich, *Only 2% of federal criminal defendants went to trial in 2018, and most who did were found guilty*, Pew Research Center (June 11, 2019), https://perma.cc/KM6Q-ZYDB. That is not because federal judges are biased against criminal defendants, but because, among other factors, the government does not bring cases without strong evidence of illegality.

Finally, the cases relied on by *Meta* are distinguishable. Dkt. 4-1 at 18, 20. *Williams v. Pennsylvania*, 579 U.S. 1 (2016), and *In re Murchison*, 349 U.S. 133 (1955), involved criminal

proceedings, not civil administrative proceedings. As the D.C. Circuit has recognized, "due process requirements are more stringent" in criminal cases. "In non-criminal proceedings, [] an overlap of functions does not always violate due process." *Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1195 (D.C. Cir. 1996). The *Withrow* Court itself explained that *Murchison* "has not been understood to stand for the broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications." *Withrow*, 421 U.S. at 53. *Williams*, which came later, does not disturb the general principle recognized in *Withrow* that an agency can constitutionally perform both prosecutorial and adjudicative functions. Indeed, *Williams* cited *Withrow* without comment. *Williams*, 579, U.S. at 4, 9, 14. Accordingly, Meta's due process claim fails.

> **F.     Meta has waived and is judicially estopped from raising challenges to the Federal Trade Commission's structure and modification authority.**

Even if Meta were correct about any of the arguments above, it would not matter because it waived those arguments and is estopped from raising them. Over the past decade, Meta has repeatedly admitted that the FTC may lawfully enter and modify administrative orders, and has repeatedly taken actions inconsistent with the constitutional arguments Meta now asserts. First, when agreeing to the 2012 Administrative Order, Meta "admit[ted] all the jurisdictional facts" and "waive[d] . . . all rights to seek judicial review or otherwise to challenge or contest the validity of the order[.]" *See* Ex. B at 1. Meta made similar admissions in the Stipulated Order that was filed with Judge Kelly, as well as in the 2020 Administrative Order. *See* Ex. E at 2; Ex. F at 1-2. Moreover, Meta also admitted in the Stipulated Order that the complaint against it "state[d] a claim upon which relief may be granted" for civil penalties, which includes the fact that Meta allegedly violated an administrative order that the FTC had legally valid authority to enter. *See* Ex. E at 2.

Finally, Meta "consent[ed] to" the 2020 Administrative Order, *id.* at 4, which expressly recognized that the Commission may further modify the administrative order.

Despite repeatedly submitting to the Commission's jurisdiction, Meta now argues that the FTC's structure and modification procedures were unconstitutional all along. But Meta waived these challenges and is judicially estopped from changing its position now. As to waiver, a party to a consent decree can waive constitutional challenges in order to resolve an enforcement action. *See SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2836 (2022); *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 478 (6th Cir. 2007); *see also D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 183-87 (1972). Meta could have contended in 2012 or 2019 that the Commission was unconstitutionally structured and lacked authority to enter or modify the administrative order pertaining to Meta. Instead, Meta knowingly and voluntarily abandoned those challenges, admitting the Commission has jurisdiction to enter administrative orders. By repeatedly intentionally relinquishing these challenges, Meta waived its right to challenge the FTC's authority.

Meta is also judicially estopped from challenging the FTC's structure and authority to modify the 2020 Administrative Order. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [it] may not thereafter, simply because [its] interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up). Because Meta "succeeded in persuading" the Court in 2020 to enter the Stipulated Order, which included a provision in which Meta consented to the Commission entering a modified administrative order, Meta is judicially estopped from embracing a "clearly inconsistent" position by claiming that the administrative proceedings—and the agency itself— were unconstitutional in the first place. *See id.* at 750-51. This Court should reject Meta's attempt

to use "intentional self-contradiction" to gain "unfair advantage" in this litigation.[3] *Id.* at 751 (citation omitted).

## II.     Meta fails to establish irreparable harm.

The sole basis of Meta's alleged harm is a purported "here-and-now injury" from "being subjected to" the Commission's administrative proceeding. Dkt. 4-1 at 29. Mere incantation of "here-and-now injury" under *Axon* is insufficient to establish irreparable harm for purposes of obtaining a preliminary injunction. *Axon* held that federal district courts have jurisdiction to hear certain structural constitutional challenges to the conduct of an ongoing administrative proceeding. 598 U.S. at 191-92. *Axon* did not decide whether the mere allegation of structural injury is sufficient to warrant a preliminary injunction. *See Kim v. FINRA*, No. 1:23-CV-02420 (ACR), 2023 WL 6538544, at *13 n.19 (D.D.C. Oct. 6, 2023); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. CIV-22-232-RAW, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023);[4] *see also Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 694 (D.C. Cir. 2015) (holding that, in *Free Enterprise Fund*, 561 U.S. 477, "the Supreme Court resolved its jurisdiction to hear a constitutional challenge to a new federal agency but had no occasion to address a federal court's exercise of equitable discretion to deny injunctive or declaratory relief"). Reading *Axon* to require a preliminary injunction anytime a party challenges administrative proceedings on constitutional grounds not only would have disruptive consequences for agencies across the government, essentially subjecting administrative adjudications to a type of preclearance process in court before

---

[3] Even if waiver and judicial estoppel did not apply, laches would bar Meta's claims. After the FTC's 2011 administrative complaint, Meta waited *twelve years* to assert claims that the FTC and its administrative proceedings were unconstitutional. That undue delay prejudiced the FTC, which spent considerable resources during that period negotiating and evaluating compliance with the 2012 and 2020 Administrative Orders. *See Pro Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009).

[4] The irreparable harm issue is pending before the Tenth Circuit. *Leachco*, No. 22-7060 (10th Cir., argued Sept. 20, 2023).

they can commence, but also would transform preliminary injunction motions into the standard vehicles for litigating those types of constitutional claims. That would contravene the principle that a preliminary injunction is an "extraordinary and drastic remedy" and is the exception, not the rule. *Munaf*, 553 U.S. at 689-90 (citation omitted).

"[T]here is no per se rule that the violation of any constitutional right is inherently irreparable." *Ayele v. Dist. of Columbia*, No. CV 23-1785 (ABJ), 2023 WL 8354883, at *6 (D.D.C. Dec. 1, 2023). Rather, plaintiffs must also identify an "immediate or ongoing harm from the . . . alleged constitutional defects." *In re al-Nashiri*, 791 F.3d 71, 79-80 (D.C. Cir. 2015). "The expense and annoyance of litigation is part of the social burden of living under government" and so "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (citations omitted); *see also Axon*, 598 U.S. at 192 ("the expense and disruption of protracted adjudicatory proceedings on a claim do not justify immediate review") (citation omitted). In this vein, another judge in this district recently held that a challenger seeking a preliminary injunction based on *Axon*-type claims failed to establish irreparable harm where "[t]he requirements that Plaintiff file a bare-bones answer [in the underlying administrative proceedings], participate in a pre-hearing conference, and potentially produce additional documents could, of course, constitute some harm," but not the "degree of harm sufficient to justify preliminary injunctive relief." *Kim*, 2023 WL 6538544, at *14. *Kim* contrasted that type of litigation harm with the so-called "corporate death penalty" faced by a company in another FINRA matter, *Scottsdale Cap. Advisors Corp. v. FINRA*, in which FINRA was taking

expedited steps to expel the company from the securities industry because of its chronic recidivism. *Id.* (citation omitted).[5]

This case is more like *Kim* than *Alpine*/*Scottsdale*. Meta has not alleged that it would go out of business. How quickly the modification proceeding will go will depend on how Meta responds to the order to show cause. If "the pleadings raise substantial factual issues, the Commission will direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an Administrative Law Judge." 16 C.F.R. § 3.72(b)(2). Given the nature of the objections to the OTSC Meta has previewed so far, *see* Dkt. 1 at 9-10 (Compl. ¶ 33) (alleging that the order to show cause would make numerous changes to the 2020 order); Dkt. 4-1 at 19 (objecting to 1,164-paragraph preliminary findings of fact), it may take some time for the Commission or the ALJ to hear the issues. Like in *Kim*, this is not the kind of harm that constitutes irreparable injury.

### III.    The balance of the equities and public interest factors weigh against an injunction.

Even if Meta establishes a likelihood of success and irreparable injury, it must still show that the injury outweighs the harm an injunction would inflict on the government and the public. "[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims." *Kim*, 2023 WL 6538544, at *16. The Commission's show cause order reflects the expert agency's concerns that the 2020 Administrative Order is insufficient to protect the public from Meta's unfair and deceptive

---

[5] In that case, the district court held that irreparable harm was established based on *Axon*, but denied a preliminary injunction of the FINRA proceedings because the challenger was unlikely to succeed on the merits. *Scottsdale Cap. Advisors Corp. v. FINRA*, ---F. Supp. 3d---, 2023 WL 3864557, at *4 (D.D.C. June 7, 2023)). The challenger appealed and a 2-1 motions panel of the D.C. Circuit granted an injunction pending appeal, although only one judge explained his reasoning in a concurring opinion. *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *1-2, 4 (D.C. Cir. July 5, 2023) (Walker, J., concurring).

conduct. As the show cause order explained, the Commission has good cause to believe Meta's privacy practices are still putting consumers' privacy at risk. *See* Ex. F. Despite ongoing risks to the public from its conduct, Meta seeks to delay Commission proceedings while it litigates its collection of meritless claims. The Court should not allow Meta to do so.[6]

### IV.     Meta is not entitled to relief on claims outside of the Complaint.

At a minimum, the Court should deny Meta's request for an injunction broadly enjoining Defendants from pursuing "any other action against Plaintiff." Dkt. 4-3 at 2 (Pl.'s Proposed Order). Meta's Complaint addresses only the FTC's proposed modification of the 2020 administrative order in *In re: Facebook*, No. C-4365, concerning Meta's privacy practices, not any other FTC actions against Meta. Courts "cannot grant preliminary relief on claims not pleaded in the complaint." *Steele v. United States*, No. 1:14-CV-1523 (RCL), 2020 WL 7123100, at *7 (D.D.C. Dec. 4, 2020); *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (a preliminary injunction is inappropriate when it would provide relief that "in no circumstance" could be provided "in any final injunction that may be entered").

### CONCLUSION

For these reasons, the Court should deny Meta's motion for a preliminary injunction and grant Defendants' motion to dismiss.

---

[6] Meta argues that the government delayed bringing the OTSC and again delayed the proceedings before Judge Kelly by seeking an extension on the briefing schedule. Dkt. 4-1 at 31. However, given the complexity and volume of the information provided by the assessor and Meta, it is not surprising that it would take time for the Commission time to digest the information, to decide whether to issue an OTSC, and then to prepare the OTSC. It is similarly unsurprising that, given the numerous issues that Meta raised in its motion before Judge Kelly, including some constitutional issues that could potentially impact much of the FTC's work, that the Commission would extend Meta's deadline to give the government the time to respond, give the court time to thoughtfully decide the issue, and give Meta time to react to Judge Kelly's decision.

Dated: December 13, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Cynthia Liao*
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. N.W.
Washington, DC 20005
Tel: (202) 531-1325
Fax: (202) 616-8470
cynthia.f.liao@usdoj.gov

*Counsel for Defendants*