**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

META PLATFORMS, INC.,

                Plaintiff,

     v.

THE FEDERAL TRADE COMMISSION,

– and –

LINA M. KHAN, REBECCA KELLY
SLAUGHTER, and ALVARO BEDOYA,
in their official capacities as Commissioners
of the Federal Trade Commission,

Defendants.

Case No. 1:23-cv-3562

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION AND
<u>MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

LEGAL STANDARDS ......................................................................................... 3

ARGUMENT ....................................................................................................... 4

    I.    Meta Has Stated Claims on Which Relief Can Be Granted and Demonstrated a Likelihood of Success on the Merits of Each of Its Claims............................................. 4

        A.    Meta Has Stated a Claim Under the Fifth Amendment's Due Process Clause and Is Likely to Succeed on this Claim ........................................................................ 4

        B.    Meta Has Stated a Claim Under Article II of the U.S. Constitution and Is Likely to Succeed on this Claim........................................................................ 14

        C.    Meta Has Stated a Claim Under Article I of the U.S. Constitution and Is Likely to Succeed on this Claim........................................................................ 20

        D.    Meta Has Stated a Claim Under Article III of the U.S. Constitution and Is Likely to Succeed on this Claim........................................................................ 24

        E.    Meta Has Stated a Claim Under the Seventh Amendment to the U.S. Constitution and Is Likely to Succeed on this Claim ............................................ 26

        F.    Meta Has Not Waived Its Structural Constitutional Challenges ......................... 28

    II.    Meta Will Suffer Irreparable Harm Without a Preliminary Injunction ........................ 30

    III.    The Public Interest and Balance of the Equities Weigh in Meta's Favor ..................... 35

CONCLUSION.................................................................................................... 39

# TABLE OF AUTHORITIES

CASES                                                                                        PAGE(S)

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
   2020 WL 1361145 (D.D.C. Nov. 6, 2020) ................................................................ 28

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.,*
   141 S. Ct. 2485 (2021) ............................................................................................. 37

*Al Maqaleh v. Gates,*
   605 F.3d 84 (D.C. Cir. 2010) ................................................................................... 16

*\*In re Al-Nashiri,*
   921 F.3d 224 (D.C. Cir. 2019) ................................................................................. 34

*\*Alpine Sec. Corp. v. FINRA,*
   2023 WL 4703307 (D.C. Cir. July 5, 2023) ............................................... 20, 33, 37

*Armour & Co. v. Wantock,*
   323 U.S. 126 (1944) ................................................................................................ 15

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n,*
   430 U.S. 442 (1977) .......................................................................................... 24, 25

*Axon Enter., Inc. v. FTC,*
   986 F.3d 1173 (9th Cir. 2021) ............................................................................... 6, 8

*\*Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023) ......................................................................................... *passim*

*Bond v. United States,*
   564 U.S. 211 (2011) ................................................................................................ 35

*Buckley v. Valeo,*
   424 U.S. 1 (1976) .................................................................................................... 21

*Calcutt v. FDIC,*
   37 F.4th 293 (6th Cir. 2022) .................................................................................... 19

*Caperton v. A.T. Massey Coal Co.,*
   556 U.S. 868 (2009) .................................................................................................. 4

*CFPB v. L. Offs. Of Crystal Moroney, P.C.,*
   63 F.4th 174 (2d Cir. 2023) ..................................................................................... 19

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ................................................................................. 34

*Cinderella Career & Finishing Sch., Inc. v. FTC*,
    425 F.2d 583 (D.C. Cir. 1970) ............................................................... 13

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ........................................................... 19, 20

*Cobell v. Norton*,
    334 F.3d 1128 (D.C. Cir. 200) .............................................................. 34

*Cohens v. Va.*,
    19 U.S. 264 (1821) ............................................................................... 15

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ............................................................................. 29

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) .................................................................... 15, 19

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
    508 U.S. 602 (1993) ...................................................................... 13, 35

*Crowell v. Benson*,
    285 U.S. 22 (1932) ............................................................................... 21

*Darden v. U.S. Parole Comm'n*,
    61 F. Supp. 3d 68 (D.D.C. 2014) ............................................................ 7

*Davis v. District of Columbia*,
    158 F.3d 1342 (D.C. Cir. 1998) ............................................................ 34

*Den Ex Dem. Murray v. Hoboken Land & Imp. Co.*,
    59 U.S. (18 How.) 272 (1856) .............................................................. 25

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) ............................................................................. 35

*FTC v. Cinderella Career & Finishing Sch., Inc.*,
    404 F.2d 1308 (D.C. Cir. 1968) .............................................................. 5

*FTC v. Intuit, Inc.*,
    2022 WL 1601403 (N.D. Cal. Apr. 22, 2022) ........................................ 8

*FTC v. Kochava, Inc.*,
    2023 WL 3249809 (D. Idaho May 4, 2023) ........................................... 9

*FTC v. Meta Platforms Inc.*,
    654 F. Supp. 3d 892 (N.D. Cal. 2023) .................................................... 9

*FTC v. Microsoft Corp.*,

iv

2023 WL 4443412 (N.D. Cal. July 10, 2023) ...........................................................8

*FTC v. Standard Oil Co. of Ca.*,
    449 U.S. 232 (1980) ............................................................................. 12

*Full Spectrum Software, Inc v. Forte Automation Sys.*,
    858 F.3d 666 (1st Cir. 2017) ................................................................ 27

*Gibson v. Berryhill*,
    411 U.S. 564 (1973) ............................................................................. 34

*\*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013) ............................................ 33, 35, 36, 37

*Granfinanciera v. Nordberg*,
    492 U.S. 33 (1989) ......................................................................... 26, 27

*Hall v. Kane*,
    2008 WL 5391196 (N.D. Cal. Dec. 23, 2008) ........................................ 9

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................. 21

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
    426 U.S. 482 (1976) ............................................................................. 12

*\*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ...................................................................... *passim*

*Illumina, Inc. v. FTC*,
    2023 WL 8664628 (5th Cir. Dec. 15, 2023) ..................................... 5, 23

*James R. v. Kijakazi*,
    2023 WL 6389097 (D.N.J. Sept. 30, 2023) ......................................... 7, 9

*\*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023) .............. 21, 22, 24, 25, 26

*John Doe Co. v. CFPB*,
    849 F.3d 1129 (D.C. Cir. 2017) ........................................................... 36

*J.W. Hampton, Jr., & Co. v. United States*,
    276 U.S. 394 (1928) ............................................................................. 21

*In re Justices of Sup. Ct. of P.R.*,
    695 F.2d 17 (1st Cir. 1982) .................................................................. 12

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020) ....................................................... 33, 36

*Kim v. FINRA*,

2023 WL 6538544 (D.D.C. Oct. 6, 2023) ................................................................ 32

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ...................................................... 32

*League of Women Voters v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) ................................................................................... 36

*Llewelyn v. Oakland Cnty. Prosecutor's Off.,*
402 F. Supp. 1379 (E.D. Mich. 1975) ................................................................... 36

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB,*
2023 WL 7294839 (D.C. Cir. May 25, 2023) ....................................................... 10

*Lucia v. SEC,*
138 S. Ct. 2044 (2018) ........................................................................................... 36

*Marshall v. Jerrico, Inc.,*
446 U.S. 238 (1980) ................................................................................................. 5

*McGary v. Hessler-Radelet,*
156 F. Supp. 3d 28 (D.D.C. 2016) ........................................................................... 3

*McSurely v. McClellan,*
697 F.2d 309 (D.C. Cir. 1982) ............................................................................... 31

*McWane, Inc. v. FTC,*
783 F.3d 814 (11th Cir. 2015) ................................................................................. 9

*Minney v. U.S. Off. Of Pers. Mgmt.,*
130 F. Supp. 3d 225 (D.D.C. 2015) ....................................................................... 36

*Morrissey v. Brewer,*
408 U.S. 471 (1972) ................................................................................................. 7

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
458 U.S. 50 (1982) ................................................................................................. 24

*\*NACM-New Eng., Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.,*
927 F.3d 1 (1st Cir. 2019) ..................................................................................... 28

*Nat'l Broad. Co. v. United States,*
319 U.S. 190 (1943) ........................................................................................ 22, 23

*New Hampshire v. Maine,*
532 U.S. 742 (2001) ............................................................................................... 30

*N.Y. Cent. Sec. Corp. v. United States,*
287 U.S. 12 (1932) ................................................................................................. 23

*O'Bremski v. Maass,*

915 F.2d 418 (9th Cir. 1990) ................................................................. 7

*Oceanic Steam Nav. Co. v. Stranahan*,
214 U.S. 320 (1909) ........................................................................... 21

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018) ....................................................................... 21

*Owens v. Republic of the Sudan*,
531 F.3d 884 (D.C. Cir. 2008) ...................................................... 22, 23

*Pasley v. Freeman* (1789),
100 Eng. Rep. 450 ............................................................................ 25

*Priestley v. Fowler* (1837),
150 Eng. Rep. 1030, 1032 (CE) ........................................................ 25

*R.R. Donnelley & Sons Co. v. FTC*,
931 F.2d 430 (7th Cir. 1991) ............................................................ 10

*Ross v. Bernhard*,
396 U.S. 531 (1970) ........................................................................... 27

*Scottsdale Cap. Advisors Corp. v. FINRA*,
2023 WL 3864557 (D.D.C. June 7, 2023) ...................................... 3, 32

*\*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020) .............................................................. *passim*

*Shaw v. Austin*,
539 F. Supp. 3d 169 (D.D.C. 2021) .................................................. 34

*Shawnee Tribe v. Mnuchin*,
984 F.3d 94 (D.C. Cir. 2021) ............................................................ 36

*Singh v. Garland*,
20 F.4th 1049 (5th Cir. 2021) ............................................................. 9

*Space Exploration Techs., Corp. v. Bell*,
2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ..................................... 33

*Stern v. Marshall*,
564 U.S. 462 (2011) ..................................................................... 24, 35

*Stewart v. KHD Deutz of Am. Corp.*,
75 F.3d 1522 (11th Cir. 1996) .......................................................... 27

*UC Health v. NLRB*,
803 F.3d 669 (D.C. Cir. 2015) .......................................................... 15

*United Church of Med. Ctr. v. Med. Ctr. Comm'n*,

689 F.2d 693 (7th Cir. 1982) ...................................................................... 34

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) .............................................................................. 29

*United States v. Holyfield*,
   703 F.3d 1173 (10th Cir. 2013) ........................................................... 16

*United States v. J.B. Williams Co., Inc.*,
   498 F.2d 414 (2d Cir. 1974) ................................................................. 38

*Wang v. Holder*,
   569 F.3d 531 (5th Cir. 2009) ................................................................. 7

*Ward v. Vill. Of Monroeville*,
   409 U.S. 57 (1972) ........................................................................... 13, 34

*Whitacre v. Davey*,
   890 F.2d 1168 (D.C. Cir. 1989) ........................................................... 16

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) .................................................................. 21, 22, 23

*\*Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*,
   86 F.3d 1188 (D.C. Cir. 1996) ............................................................ 5, 6

*\*Williams v. Pennsylvania*,
   579 U.S. 1 (2016) ................................................................................. 4, 5

*\*Withrow v. Larkin*,
   421 U.S. 35 (1975) ........................................................................ *passim*

*Wrenn v. District of Columbia*,
   864 F.3d 650 (D.C. Cir. 2017) ............................................................. 32

*In re Zdravkovich*,
   634 F.3d 574 (D.C. Cir. 2011) ............................................................... 5

## STATUTES & RULES

15 U.S.C. § 45(a)(1)-(2) ........................................................................... 22

15 U.S.C. § 45(b) ...................................................................................... 22

15 U.S.C. § 45(n) ...................................................................................... 22

16 C.F.R. § 3.51(a)(1) .............................................................................. 39

16 C.F.R. § 3.72(b)(1) .............................................................................. 11

Fed. R. Evid. 201(b) ................................................................................... 4

Trans-Alaska Pipeline Authorization Act, Pub. L. 93–153, 87 Stat. 576 (1973) ..........................17

Wheeler-Lea Act of 1938, Pub. L. No. 75-447 52 Stat. 111 (1938) ............................................17

<u>U.S. Constitution</u>

Art. II, § 1, cl. 1 .............................................................................................. 19

U.S. Const. amend. VII .......................................................................................26

<u>Other Authorities</u>

81A C.J.S. *Specific Performance* § 1 (2004) ...................................................... 28

*About the FTC: History of the FTC*, Federal Trade Commission,
    available at https://www.ftc.gov/about-ftc ............................................. 15

*In re Altria Grp., Inc. & Juul Labs, Inc.*,
    2023 WL 4349336 (F.T.C. June 30, 2023) .............................................. 8

*FTC@100 Bibliography: 1969-1977*, Federal Trade Commission,
    available at https://web.archive.org/web/20231015025139/https://www.ftc.gov/reports/
    ftc100-bibliography/1969-1977 .............................................................. 14

*In re Intuit, Inc.*,
    No. 9408 (F.T.C. Sept. 8, 2023) .............................................................. 8

*Legal Library: Cases and Proceedings*, Federal Trade Commission,
    available at https://www.ftc.gov/legal-library/browse/cases-
    proceedings?sort_by=field_date&items_per_page=20&search=&field_competition_topics=A
    ll&field_consumer_protection_topics=All&field_federal_court=All&field_industry=All&fiel
    d_case_status=All&field_enforcement_type=All&search_matter_number=&search_civil_acti
    on_number=&start_date=2018-04-30&end_date=2018-05-01 .............................. 18

Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing
    the Law or Rubber Stamp?* (2016) .................................................. 6, 13

*In re McWane, Inc.*,
    2014 WL 556261 (F.T.C. Jan. 30, 2014) ................................................ 9

Noah Webster, *Webster's Condensed Dictionary* at 582 (1909) ................................ 26

*Report of the American Bar Association Section of Antitrust Law Special Committee to Study
the Role of the Federal Trade Commission*
    58 Antitrust L.J. 43 (1989–1990) ........................................................ 13

Richard A. Posner, *The Federal Trade Commission*,
    37 U. Chi. L. Rev. 47 (1969) .............................................................. 14

*In re R.R. Donnelly & Sons Co.*,
    120 F.T.C. 36 (1995) ........................................................................ 9

Statement of Chairman Joe Simons and Commissioners Noah Joshua Phillips and Christine S. Wilson Regarding the Matter of Facebook, Inc. (July 24, 2019),
    available at
    www.ftc.gov/system/files/documents/public_statements/1536946/092_3184_facebook_major
    ity_statement_7-24-19.pdf ................................................................................................. 18

Plaintiff Meta Platforms, Inc. ("Meta") respectfully submits this memorandum (1) in further support of its motion for a preliminary injunction prohibiting Defendants the Federal Trade Commission, Chair Lina M. Khan, and Commissioners Rebecca Kelly Slaughter and Alvaro Bedoya (together, the "Commission" or the "FTC") from taking further action in the FTC administrative proceeding captioned *In the Matter of Facebook, Inc.*, FTC File No. C-4365 (the "FTC Proceeding" or "Proceeding"), pending resolution of the constitutional challenges asserted by Meta in this action (the "PI Motion") and (2) in opposition to the Commission's motion to dismiss the complaint (the "Motion to Dismiss").[1]

## INTRODUCTION

It is imperative that a U.S. government agency charged with enforcing the law is structured to comport with the U.S. Constitution. As confirmed by its brief, the Commission is not. The Commission's dual role as prosecutor and judge—which the Commission understandably wants to talk about last—is flatly inconsistent with fundamental principles of due process. The Commission seeks shelter in Supreme Court precedent that tolerates—"without more"—an agency's dual investigatory and adjudicative role. But that same precedent requires courts to examine how those dual roles "actually work in practice" to determine whether there is "more." There is much "more" here: the conflict inherent in the Commission's dual role has materialized in the form of a long history of biased administrative adjudication resulting in an unbroken, decades-long string of home-turf victories which contrasts starkly with the Commission's struggling record in judicial actions before neutral adjudicators. Moreover, the

---

[1] Unless otherwise indicated, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

risk of unfairness has already manifested itself in the form of the Commission's prejudgment of the facts and law.

The undisputed public record is sufficient to establish Meta's likelihood of success on the merits.  The Commission's prejudgment of the facts and the law in the Proceeding against Meta is the latest manifestation of bias.  Based on 1,164 "preliminary" findings of fact, the Commission has made the formal legal determination—required by its regulations—that modification of the 2020 Order is "needed."  And it has challenged Meta to try to change its mind.  Due process requires more, much more.

The Commission also fails to respond to Meta's argument that applying the Supreme Court's 1935 decision in *Humphrey's Executor*—as elaborated in *Seila Law*—to the current Commission shows that the Commissioners' protection against removal violates Article II. Instead, the Commission devotes its argument solely to constructing and then attacking a strawman that Meta is asking the Court to "overrule" *Humphrey's Executor*.  The Commission's argument implies that *Humphrey's Executor* left Congress free to amend the FTC Act at will without ever allowing a lower court to question the constitutionality of the Commissioners' unaccountability to the President.  Taken to its logical extreme, that position would mean that Congress could convert the Commission from a five-member body to a single-director agency immune from the holding in *Seila Law*, and no district court could even consider the issue in light of the Supreme Court's ruling in *Humphrey's Executor*.  The Commission is forced to take that extreme position because, in fact, Congress has revised the Commission's executive authority so substantially since 1935 that *Humphrey's Executor* and *Seila Law*, applied to the currently constructed Commission, results in the Commissioners' removal protections violating Article II.

Likewise, the Commission musters little argument (and even less legal authority) with respect to the other preliminary injunction factors.  The Commission simply asserts that the "here-and-now injury" of being subject to unconstitutional agency authority recognized in *Axon* is neither an injury nor irreparable.  But the Supreme Court's explicit language and clear reasoning provide otherwise—which is why the weight of authority in the months since *Axon* (including decisions within this Circuit) are clear: "[U]nder the Supreme Court's explicit language, the nature of the constitutional claims here … suffice to show irreparable harm."[2]  And even setting aside *Axon*, controlling D.C. Circuit precedent dictates that being subject to biased adjudication is an elemental form of irreparable harm.

For these reasons, and the additional reasons set forth in Meta's moving brief and below, Meta respectfully requests that the Court grant its PI Motion and deny the Commission's Motion to Dismiss.

## **LEGAL STANDARDS**

The legal standard governing Meta's PI Motion is set forth in Meta's moving brief. (Mem. 17.)[3]

"A motion to dismiss for failure to state a claim under Rule 12(b)(6) . . . must accept the factual allegations of the complaint as true and may not rely on evidence or factual material beyond those allegations."  *McGary v. Hessler-Radelet*, 156 F. Supp. 3d 28, 32 (D.D.C. 2016)

---

[2] *Scottsdale Cap. Advisors Corp. v. FINRA*, 2023 WL 3864557, at *13 (D.D.C. June 7, 2023).

[3] "Mem." refers to the Memorandum of Points and Authorities in Support of Meta's PI Motion (Dkt. 4-1).  "Opp." refers to Defendants' Opposition to Plaintiff's PI Motion and Defendants' Motion to Dismiss (Dkt. 18).  "OTSC" refers to the FTC's Order to Show Cause (Dkt. 18-9). "PFOF" refers to the FTC's Preliminary Finding of Facts (Dkt. 18-11).

(Moss, J.).  "A defendant can therefore prevail on a 12(b)(6) motion only by demonstrating that the facts, as alleged in the complaint, do not warrant relief as a matter of law."  *Id.*

In its brief, the Commission relies on factual materials outside of Meta's complaint.  (*See, e.g.*, Opp. 37 (asserting that "the government does not bring cases without strong evidence of illegality")).  While some of the factual materials are cognizable on the motions before the Court, the Commission, with rare exception (Opp. 22 n.1), fails to explain, as the proponent of the materials, how each asserted fact is properly before the Court in opposition to Meta's PI Motion or in support of the Commission's Motion to Dismiss.

And other facts are not properly before the Court on either motion.  For example, the Commission cites an article by a former Commissioner in support of the assertion that there is no "systemic bias" in the Commission's administrative adjudication (Opp. 37), but that is *not* "a fact that is not subject to reasonable dispute."  Fed. R. Evid. 201(b).  Instead, the Commission's reliance on that fact-bound analysis shows that if examination of the public record leaves any doubt about the existence of systemic bias in the Commission's administrative adjudication, then discovery is required.

## **ARGUMENT**

I.      **Meta Has Stated Claims on Which Relief Can Be Granted and
        Demonstrated a Likelihood of Success on the Merits of Each of Its Claims**

   A.    **Meta Has Stated a Claim Under the Fifth Amendment's
         Due Process Clause and Is Likely to Succeed on this Claim**

The Commission does not and cannot dispute that it acts in a dual role as prosecutor and judge, including by making "critical decision[s]" in the prosecution of cases.  *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).  Instead, the Commission insists, in essence, that it "*is* allowed to be a judge in [its] own cause."  *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009).  The Commission invokes the Supreme Court's generalized reasoning from nearly 50

years ago, from a case involving the Wisconsin Medical Examining Board, that "[t]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation."  (Opp. 33 (quoting *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)).)[4]

But there is "more" here.  The Commission concedes that "more" includes "evidence of bias or the risk of bias or prejudgment."  (Opp. 33 (quoting *Withrow*, 421 U.S. at 53-54).)  *See also Williams*, 579 U.S. at 14 (holding that an "unacceptable risk of actual bias" violates due process).  And due process also demands, in both civil and criminal cases, not only the "reality of fairness" but also "the appearance" of fairness.  *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (Due Process "preserves both the appearance and reality of fairness … by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."); *see also Williams*, 579 U.S. at 15–16.

The D.C. Circuit has emphasized the centrality of the "without more" caveat to the Supreme Court's reasoning in *Withrow*.[5]  *See Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1195–96 (D.C. Cir. 1996).  In *Wildberger*, the D.C. Circuit echoed the Supreme Court's caution in *Withrow* that courts must "be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice."  *Id.* (quoting *Withrow*, 421 U.S. at 54).  On that basis, it reversed the district court for "unduly restrict[ing] its inquiry by requiring [the plaintiff] to show *actual* bias," and held, based on "the special facts and

---

[4] The Commission also cites *In re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011), and *FTC v. Cinderella Career & Finishing Sch., Inc.*, 404 F.2d 1308, 1315 (D.C. Cir. 1968), which are consistent with *Withrow*.

[5] The Fifth Circuit's recent decision in *Illumina, Inc. v. FTC* inexplicably ignores this crucial caveat in *Withrow*'s reasoning and, for that reason, is not persuasive.  *See* 2023 WL 8664628, at *4 (5th Cir. Dec. 15, 2023).

circumstances present in the case before it," that "the risk of unfairness [was] intolerably high." *Id.* at 1196.

Nor is the "case before" the Court limited to the specific adjudication at issue.  As the Supreme Court emphasized in *Withrow*, "[t]he incredible variety of administrative mechanisms in this country will not yield to any single organizing principle."  *Withrow*, 421 U.S. at 52.  The Supreme Court then looked at the "processes" of the administrative mechanism before it.  *Id.* at 54.

## 1.    The Commission's Long History of Structurally Biased Adjudication

In administrative adjudications by the Commission, "more" includes "a long history of systematically biased adjudication" (Mem. 18) and, for example, the materialization of the "unacceptable risk of actual bias" in the FTC Proceeding against Meta (Mem. 18–20).  The Commission itself cites an article by a former Commissioner who emphasizes a long-standing perception of biased adjudication by the FTC.  (Opp. 37 (citing Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?* (2016)) (hereinafter "Ohlhausen").)

As to its documented history of bias, the Commission again "does not appear to dispute . . . that [it] has not lost a single [administrative] case in the past quarter-century."  *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S. 175 (2023).  (*See* Dkt. 1 at 13 (Compl. ¶¶ 43, 45).)  While the Commission now seeks to dismiss its concession in *Axon* as "dictum" (Opp. 36), before Judge Kelly the United States (on behalf of the Commission) conceded that Meta's citation to the Ninth Circuit's observation in *Axon* "point[ed] to the FTC's historical enforcement record over the past twenty-five years."  )Gov't Opp. to Mot. to Enforce

Stipulated Order, Dkt. 49 at 42, *United States v. Facebook, Inc.*, No. 19-cv-02184-TJK, 2023 WL 8888802 (D.D.C. Aug. 16, 2023) (hereinafter, "Gov't Br.").)[6]

In an attempt to defend that record, the Commission argues that the "statistical one-sidedness" of its decisions is not evidence of bias.  (Opp. 37.)  But the Commission relies on cases involving "other agency adjudicators" who, unlike the Commissioners, have no prosecutorial role[7] and on cases involving independent Article III judges protected by life tenure.  (Opp. 36–37.)  There is no reason that precedent involving adjudicators who act only as adjudicators should protect the Commission, which does not.

Indeed, while the Commission is quick to dismiss all evidence of "the way particular procedures actually work in practice," *Withrow*, 421 U.S. at 54, two Supreme Court justices and the Ninth Circuit have all suggested that the Commission's "one-side[d]" historical record is probative of structural bias.  *See Axon*, 598 U.S. at 197 n.1 (Thomas, J., concurring) ("Deferential review of the SEC's and FTC's decisions is particularly concerning given their tendency to overwhelmingly agree with their respective agency's decisions."); *id.* at 215–16

---

[6] The United States then avoided that record by arguing that it "is not specific to current members of the Commission, the longest tenured of whom, Commissioner Slaughter, has been a commissioner only since 2018."  (Gov't Br. 42.)

[7] The Commission's cases involve federal immigration judges ("IJs"), Social Security Administrative Law Judges ("ALJs") and the California parole board.  (*See* Opp. 36-37.)  In immigration proceedings, due process requires the IJ to serve as a "neutral arbiter" and not a "prosecutor."  *Wang v. Holder*, 569 F.3d 531, 540 (5th Cir. 2009).  Similarly, Social Security ALJs "serve in a quasi-judicial capacity" and, therefore, "they are required to be neutral arbiters throughout the administrative process."  *James R. v. Kijakazi*, 2023 WL 6389097, at *4 (D.N.J. Sept. 30, 2023).  And lastly, "parole board officials perform tasks that are functionally comparable to those performed by the judiciary [and thus] they owe the same duty: to render impartial decisions in cases and controversies."  *O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir. 1990); *see also Darden v. U.S. Parole Comm'n*, 61 F. Supp. 3d 68, 72–73 (D.D.C. 2014) ("The minimum requirements of due process in a parole matter include . . . a neutral and detached hearing body such as a traditional parole board.") (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

(Gorsuch, J., concurring in judgment) ("Agencies like the SEC and FTC combine the functions of investigator, prosecutor, and judge under one roof. [] The numbers reveal just how tilted this game is.  [S]ome say the FTC has not lost an in-house proceeding in 25 years.  *See* Brief for Petitioner in No. 21–86, p. 47.  *But see* Brief for American Antitrust Institute as Amicus Curiae in No. 21–86, p. 18 (suggesting the FTC has won more like 90% of the time)."); *Axon*, 986 F.3d at 1187 ("Axon raises legitimate questions about whether the FTC has stacked the deck in its favor in its administrative proceedings.  Axon claims—and FTC does not appear to dispute—that FTC has not lost a single case in the past quarter-century.  Even the 1972 Miami Dolphins would envy that type of record.  Indeed, a former FTC commissioner acknowledged that the FTC adjudication process might unfairly favor the FTC given the agency's stunning win rate.  Axon essentially argues that the FTC administrative proceeding amounts to a legal version of the Thunderdome in which the FTC has rigged the rules to emerge as the victor every time.").[8]

The Commission's success in administrative adjudications also contrasts markedly with its lackluster record when litigating in court.  Indeed, in 2023 alone, the Commission has been handed substantially more defeats in federal court than in the last *three decades* of administrative adjudication.  *See, e.g.*, *FTC v. Microsoft Corp.*, 2023 WL 4443412, at *1 (N.D. Cal. July 10, 2023) (denying preliminary injunction because "FTC has not shown it is likely to succeed");

---

[8] And in the few years since, the Commission has discovered even more ways to emerge victorious regardless of the circumstances.  When a federal court denied its motion for preliminary injunction, the Commission nonetheless proceeded with its administrative complaint and prevailed.  *Compare FTC v. Intuit, Inc.*, 2022 WL 1601403, at *1 (N.D. Cal. Apr. 22, 2022), *with* Initial Decision, *In re Intuit, Inc.*, No. 9408 (F.T.C. Sept. 8, 2023) (ALJ initial decision finding against respondent).  When the Commission's ALJ ruled against the Commission and the respondents abandoned their deal anyway, the Commission vacated the ALJ's decision to ensure it had no precedential effect and explained why its now-mooted complaint was, contrary to the ALJ's decision, right all along.  *In re Altria Grp., Inc. & Juul Labs, Inc.*, 2023 WL 4349336, at *2–3 (F.T.C. June 30, 2023).

*FTC v. Kochava Inc.*, 2023 WL 3249809, at *13 (D. Idaho May 4, 2023) (dismissing FTC complaint for failure to state a claim); *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 941 (N.D. Cal. 2023) (denying preliminary injunction "[b]ecause the FTC has not demonstrated a likelihood of ultimate success on the merits").

Further, the Commission relies on cases for the proposition that statistical one-sidedness *alone* cannot establish an adjudicator's unconstitutional bias.  *See*, *e.g.*, *Singh v. Garland*, 20 F.4th 1049, 1054–55 (5th Cir. 2021) ("[D]enial rate *alone* is insufficient to show bias."); *James R. v. Kijakazi*, 2023 WL 6389097, at *5 (D.N.J. Sept. 30, 2023) ("[P]oor statistics in other cases are not *sufficient* for the Court to find bias."); *Hall v. Kane*, 2008 WL 5391196, at *4 (N.D. Cal. Dec. 23, 2008) ("[E]ven statistical data as to the rate of denial in other prisoners' cases will not *suffice* to establish" alleged policy of systemic bias).  Here, in contrast, Meta relies on the Commission's inherently conflicted dual role; a long historical record of bias; egregious prejudgment in the Proceeding against Meta—compelled in part by the Commission's regulations; and an enduring appearance of bias in FTC administrative adjudications.

As to its historical record, the Commission touts that it dismissed some counts of a complaint in 2014 (Opp. 37 (citing *McWane, Inc. v. FTC*, 783 F.3d 814, 822–23 & n.7 (11th Cir. 2015) (citing *In re McWane, Inc.*, 2014 WL 556261 (F.T.C. Jan. 30, 2014))), and dismissed a complaint in 1995 (*id.* (citing *In re R.R. Donnelley & Sons Co.*, 120 F.T.C. 36, 136 (1995)).  But even an aggressive advocate will prune its case for strategic reasons, and in *McWane* the Commission's narrowing of the complaint was inconsequential in practice.[9]  There, the Commission imposed liability and issued a broad cease-and-desist order on the remaining count

---

[9] Under these circumstances, the Commission's reliance on its narrowing of its complaint in *McWane* as affirmative evidence of an absence of systemic bias cannot be credited until Meta has had an opportunity to test that assertion through discovery.

(upheld by the Eleventh Circuit under a "deferential standard of review").  783 F.3d at 819.

Considering that the *R.R. Donnelly* dismissal was nearly 30 years ago—and did not come until

four years *after* Judge Easterbrook rebuked the Commission and cast serious doubt on the vitality

of its claims, *see R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431 (7th Cir. 1991)—the

Commission's examples do nothing to detract from, and instead reinforce, the Commission's

long history of biased adjudication.

### 2.    The Commission's Prejudgment

As *Withrow* instructs, courts must evaluate the "processes" of the "administrative

mechanisms" before it to assess the "possibilities of bias that may lurk in the way particular

procedures actually work in practice."  *Withrow*, 421 U.S. at 52–54.  Thus, an equally, if not

more, probative example of the "risk of bias or prejudgment," *id.* at 54, inherent in the

Commission's dual role as prosecutor and judge is the egregious materialization of that risk in

the Commission's Proceeding against Meta, which differs sharply from *Withrow* and the cases

cited by the Commission.

The Commission improperly asks the Court to look away from any "circumstances

specific to Meta," over which the Court supposedly (according to the Commission) lacks subject-

matter jurisdiction.  (Opp. 34–35.)  But pointing to, among other evidence, the Commission's

actions in the Proceeding against Meta to demonstrate the risk of bias inherent in the

Commission's structure does not somehow collapse Meta's constitutional "object[ion] to the

Commission's power generally" into an objection *solely* to "how that power was wielded" in a

particular case.  *Axon*, 598 U.S. at 180.  Indeed, it makes no sense that in assessing whether the

Commission "is wielding authority unconstitutionally in all or a broad swath of its work," *Loma

Linda-Inland Consortium for Healthcare Educ. v. NLRB*, 2023 WL 7294839, at *11 (D.C. Cir.

May 25, 2023) (quoting *Axon*, 598 U.S. at 190), the Court can consider the Commission's

actions in *McWane* and *R.R. Donnelly* (as unhelpful as they are to the Commission's position) but not the Commission's Proceeding against Meta.

In its moving brief, Meta showed the Commission has factually and legally prejudged the Proceeding against Meta.  (Mem. 18–20.)  That prejudgment—which entails the *simultaneous* exercise of the Commission's prosecutorial and adjudicative powers—could not have arisen absent the Commission's dual role as prosecutor and judge.  If the Commission did not, as prosecutor, issue the OTSC, then it would have not had the opportunity to prejudge the case against Meta, legally and factually, in the OTSC and accompanying documents.  Significantly, the Commission's finding in its OTSC—in advance of Meta having any opportunity to be heard—that modification of the 2020 Order is "needed" (Dkt. 18-9 at 13) was *required* by the Commission's regulations.  *See* 16 C.F.R. § 3.72(b)(1) (requiring an OTSC to "stat[e] the changes it proposes to make in the decision and the reasons they are deemed necessary").  And nothing in the FTC Act, the Commission's regulations, or the OTSC provides that the legal finding is anything other than final.

Significantly, the Commission's brief is entirely *silent* about its legal finding that modification of the 2020 Order is "needed."  (Dkt. 18-9 at 13.)  (Nonetheless, the Commission accuses Meta of "distort[ing] the nature and role of the [OTSC]."  (Opp. 35.))  The Commission's brief further disregards its assertion in the OTSC that its legal "finding" that modification is "needed" is "support[ed]" by a "full record" comprising the Commission's "Preliminary Finding of Facts."[10]  (Dkt. 18-9 at 2 n.1.)  The Supreme Court's rejection in *Withrow* of the argument that "agency members who participate in an investigation are

---

[10] In this context, the "full record" of 1,164 paragraphs of factual findings "supporting" the Commission's legal finding is "preliminary" only in the narrow sense that the factual findings were made in advance of any opportunity for Meta to be heard.  (Dkt. 18-9 at 2 n.1.)

disqualified from adjudicating," 421 U.S. at 52, offers no protection to the Commission's prejudgment in the Proceeding against Meta by simultaneously finding facts and, based on that "full record," making a legal finding that relief is "needed" before providing Meta any opportunity to be heard.  In *Withrow*, in sharp contrast, "[w]hen the Board instituted its investigative procedures, it stated only that it would investigate whether proscribed conduct had occurred.  Later in noticing the adversary hearing, it asserted only that it would determine if violations had been committed which would warrant suspension of [the plaintiff's] license." *Id.* at 54.  Likewise, in proceeding by complaint, as opposed to OTSC, the Commission's issuance of the complaint is final only "on the question whether the Commission avers reason to believe that the respondent to the complaint is violating the Act." *FTC v. Standard Oil Co. of Ca*., 449 U.S. 232, 241 (1980).

The Commission's attempt to dismiss the factual findings supporting its legal finding as "[m]ere familiarity with the facts" is unavailing.  (Opp. 35 (quoting *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976).)  Familiarity with sources of evidence is a basis to make allegations, which is what a prosecutor does.  "[F]inding facts," which the Commission has done here, is an adjudicative function.  *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.).  Further, the Commission's "preliminary" factual findings cannot be dismissed as "[m]ere familiarity with the facts" because the factual findings are the basis for the Commission's legal finding that modification of the 2020 Order is "needed."  (Dkt. 18-9 at 2 n.1.)

Before Judge Kelly, the United States (on behalf of the Commission) argued that "Meta must show that 'a disinterested observer may conclude that [the adjudicator] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.'"

(Gov't Br. 44 (quoting *Cinderella Career & Finishing Schs., Inc. v. FTC*, 425 F.2d 583, 591

(D.C. Cir. 1970)).)  That is exactly what the Commission did in the OTSC and accompanying

"Preliminary Finding of Facts."  And the Commission does not even attempt to rebut Meta's

showing that this prejudgment exceeds the prejudgment in the leading precedents—including

*Withrow*, *Zdravkovich*, *Cement Institute*, *Williams* and *Murchison*.  (Mem. 19–20.)  This

prejudgment confirms, as a matter of law, the Commission's unconstitutional bias.  The

possibility of further process before the same biased adjudicators can do nothing to fix it.  *See*

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602,

617 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance.'")

(quoting *Ward v. Vill. Of Monroeville*, 409 U.S. 57, 61–62 (1972)).

### 3.        The Persistent Public Perception of Bias

One need look no further than the opinions of two Supreme Court justices and the Ninth

Circuit in *Axon* to see that there is a public perception that the Commission is not an impartial

adjudicator.  *See supra* at Point I.A.1.

And the Commission relies on an article that confirms that this appearance of bias has

endured for decades.  (Opp. 37 (citing Ohlhausen).)  The article, written by a former

Commissioner, quotes a 1989 American Bar Association (ABA) report that concluded: "No

thoughtful observer is entirely comfortable with the FTC's . . . combining of prosecutory and

adjudicatory functions.  Whenever the same people who issued a complaint later decide whether

it should be dismissed, concern about at least the appearance of fairness is inevitable."

Ohlhausen at 22 (quoting *Report of the American Bar Association Section of Antitrust Law*

*Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43, 119

(1989–1990)).[11]  And in the article that quotes the ABA report—which was published 27 years

after the report—the former Commissioner admits that "[t]he perception is that the FTC decides

the case when it authorizes staff to file a Part 3 complaint and hence is not impartial in later

reviewing the ALJ's decision."  *Id*. at 19; *see also* Richard A. Posner, "*The Federal Trade

Commission*," 37 U. Chi. L. Rev. 47, 53 (1969) ("It is too much to expect men of ordinary

character and competence to be able to judge impartially in cases that they are responsible for

having instituted in the first place.").

        For the foregoing reasons, and the reasons set forth in its opening brief, Meta has not only

stated a Fifth Amendment Due Process claim upon which relief can be granted, it is likely to

succeed on its claim.  The Commission's Motion to Dismiss should therefore be denied, and the

likelihood of success factor should weigh in Meta's favor.

### B.      Meta Has Stated a Claim Under Article II of the U.S. Constitution and Is Likely to Succeed on this Claim

        The Commission erroneously argues that Meta "invites this Court to overrule" the

Supreme Court's 1935 decision in *Humphrey's Executor*.  (Opp. 20 (citing *Humphrey's Ex'r v.

United States*, 295 U.S. 602 (1935)).)  Meta asks this Court to apply that decision—as elaborated

on by the Supreme Court in *Seila Law*—to the Commission as it exists today.  *See Seila Law

LLC v. CFPB*, 140 S. Ct. 2183, 2201 (2020) ("The question … is whether to extend those

precedents to the 'new situation' before us.").

---

[11] Indeed, the ABA report is included in a historical retrospective on the Commission's website,
which boasts that that committee that authored the report "was chaired by . . . a former FTC
Chairman" and "[i]ts eighteen members included four past and future FTC Chairs."  *See
FTC@100 Bibliography*: 1969-1977, Federal Trade Commission, *available at*
https://web.archive.org/web/20231015025139/https://www.ftc.gov/reports/ftc100-
bibliography/1969-1977.

The Commission appears to argue that in *Humphrey's Executor* the Supreme Court approved the FTC Act's removal protection in perpetuity—regardless of how the Commission's structure or statutory authority changes over time.  (*See* Opp. 20.)  That is obviously untenable.  A judicial decision only relates "to a detailed set of facts."  *UC Health v. NLRB*, 803 F.3d 669, 682 (D.C. Cir. 2015) (Edwards, J., concurring) (citing cases).  Thus, as with any decision, *Humphrey's Executor* dealt with a particular set of facts—namely, the "1935 FTC."  *See, e.g.*, *Seila Law*, 140 S. Ct. at 2200 (reasoning that *Humphrey's Executor* applied to the "New Deal-era FTC" or the "1935 FTC"); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1805–06 (2021) (Sotomayor, J., concurring) (contrasting Federal Housing Finance Agency with the "1935 FTC" at issue in *Humphrey's Executor*).  The Commission's argument runs afoul of the Supreme Court's admonition that the "words of our opinions are to be read in the light of the facts of the case under discussion" because "[g]eneral expressions transposed to other facts are often misleading."  *Armour & Co. v. Wantock*, 323 U.S. 126, 132–33 (1944).  Indeed, the Supreme Court made sure to include the same caution—which the Commission now ignores—in *Humphrey's Executor* itself: that its words must "be taken in connection with the case in which those expressions are used."  295 U.S. at 627 (quoting *Cohens v. Va.*, 19 U.S. 264, 399 (1821)).

No one—not even the Commission—disputes that those facts have changed, and that the 2023 FTC is not the 1935 FTC.[12]  Those new facts—including significant intervening amendments to the FTC Act—raise the same question whether *Humphrey's Executor*, whose continuing vitality is not before this Court, tolerates the Commissioners' protections from removal.  *Humphrey's Executor* would not, for example, preclude this Court from considering

---

[12] In fact, the Commission promotes its historical transformation on its website.  *See About the FTC: History of the FTC*, Federal Trade Commission, *available at* https://www.ftc.gov/about-ftc ("Over the years, Congress passed additional laws giving the agency greater authority.").

whether Congress could lawfully amend the FTC Act to convert the five-member Commission to a single director whose insulation from removal was struck down in *Seila Law*. Nor does it preclude this Court from considering the question before it: whether post-1935 changes to the FTC Act and the FTC itself render the present-day agency entirely distinguishable from the one described in *Humphrey's Executor*. (Opp. 22–23.) A decision, even one from the Supreme Court, is only controlling if it involves "identical or similar material facts." *United States v. Holyfield*, 703 F.3d 1173, 1177 n.7 (10th Cir. 2013). It is the role of this Court—like any court—to assess those facts. *See Whitacre v. Davey*, 890 F.2d 1168, 1172 (D.C. Cir. 1989) ("We cannot count as controlling a decision that never touched upon the issue we now confront."). And the D.C. Circuit has more recently explained that even hornbook Supreme Court decisions from decades past must be applied as they have been interpreted and explained over time. *See Al Maqaleh v. Gates*, 605 F.3d 84, 94 (D.C. Cir. 2010) ("Our duty . . . is to determine the reach of the right to habeas corpus and therefore of the Suspension Clause to the factual context underlying the petitions we consider in the present appeal. In doing so, we are controlled by the Supreme Court's interpretation of the Constitution in *Eisentrager* as construed and explained in the Court's more recent opinion in *Boumediene*."). Tellingly, the Commission is silent in response to this argument—Meta's actual argument—choosing instead to pretend that Meta is challenging *Humphrey's Executor*.[13]

In the nearly 88 years since *Humphrey's Executor*, Congress repeatedly has amended the FTC Act to expand the FTC's executive powers dramatically. In 1935, the Supreme Court concluded that it was constitutionally permissible for Congress "to give for-cause removal

---

[13] For that reason, among others, the cases cited by the Commission as declining to overrule *Humphrey's Executor*—and the Fifth Circuit's recent decision in *Illumina, Inc. v. FTC*—are inapposite.

protections to a multimember body of experts, balanced along partisan lines, that performed

legislative and judicial functions and was said not to exercise any executive power." *Seila Law*,

140 S. Ct. at 2199.  No such conclusion is possible here; the present Commission lacks these

features.

First, the enforcement authority of the Commission now "includes the power to seek

daunting monetary penalties against private parties on behalf of the United States in federal

court—a quintessentially executive power not considered in *Humphrey's Executor*." *Id.* at 2200.

In 1935, the Commission lacked any authority to seek such relief.  Indeed, Section 5(l) of the

FTC Act—on which the Commission relied in seeking monetary penalties against Meta in

federal court in 2019—was enacted in 1938, three years after the Supreme Court's decision in

*Humphrey's Executor*.  *See* Wheeler-Lea Act of 1938, Pub. L. No. 75-447 52 Stat. 111 (1938).

Second, the Commission's authority was also expanded in 1938 when Congress amended

the FTC Act to authorize the Commission to pursue modification of previously issued, litigated

cease-and-desist orders.  *See id.*  This is the "enforcement" authority that the Commission

(erroneously) invokes in the OTSC to modify the 2020 Order (which is a consent order).  (Dkt.

18-9 at 14.)

Third, Congress in 1973 amended the FTC Act to add Section 13(b), which authorizes the

Commission to enforce Section 5 by seeking preliminary and permanent injunctions in federal

court.  *See* Trans-Alaska Pipeline Authorization Act, Pub. L. 93–153, 87 Stat. 576 (1973).

And, finally, the expansive executive authority assigned to the Commission since 1935 is

today exercised by a Commission composed of three members, all of whom are from the same

party, and none of whom have served a full seven-year term that Congress designed to enable the

"agency to accumulate technical expertise." *Seila Law*, 140 S. Ct. at 2198–99.  On these two

metrics alone, the present Commission is hardly the "body of experts, balanced along partisan lines" that existed in 1935. *Id*. at 2199. Indeed, only at one other time in history has the Commission been composed entirely of commissioners from a single party—April 30 and May 1, 2018, when the only commissioners were Republicans. During that two-day period, the Commission does not appear to have taken any enforcement action.[14] Here, by contrast, the Commission embarked on its OTSC Proceeding almost immediately after the last Republican commissioner resigned and did so to resurrect injunctive relief that a properly balanced, five-member Commission had rejected two years earlier.[15] In light of such sudden, partisan shifts in Commission enforcement policy, it can be no answer to Meta, as it might have been in 1935, that the Commission is "so arranged that the membership would not be subject to complete change at any one time." *Humphrey's Ex'r*, 295 U.S. at 624.[16]

In light of these considerable changes to the scope and nature of the Commission's executive authority since 1935, it can hardly be said that the current Commission is a mere

---

[14] *See Legal Library: Cases and Proceedings*, Federal Trade Commission, *available at* https://www.ftc.gov/legal-library/browse/cases-proceedings?sort_by=field_date&items_per_page=20&search=&field_competition_topics=All&field_consumer_protection_topics=All&field_federal_court=All&field_industry=All&field_case_status=All&field_enforcement_type=All&search_matter_number=&search_civil_action_number=&start_date=2018-04-30&end_date=2018-05-01.

[15] *See, e.g.*, Statement of Chairman Joe Simons and Commissioners Noah Joshua Phillips and Christine S. Wilson Regarding the Matter of Facebook, Inc. at 6 (July 24, 2019), available at www.ftc.gov/system/files/documents/public_statements/1536946/092_3184_facebook_majority_statement_7-24-19.pdf ("The extent to which Facebook, or any other company, should be able to collect, use, aggregate, and monetize data, is something Congress should evaluate in its consideration of federal privacy legislation. Our 100-year-old statute does not give us free rein to impose these restrictions.").

[16] That Congress contemplated "times when seats would be vacant," as the Commission argues (Opp. at 22), merely shows that Congress has assigned to the Commission authority inconsistent with the Supreme Court's reasoning in *Humphrey's Executor*.

"legislative or judicial aid."  *Id*. at 628; *see also Seila Law*, 140 S. Ct. at 2200.  Under the rule of *Humphrey's Executor*, the structure of the Commission no longer satisfies the command of Article II that "[t]he executive Power shall be vested in a President," who must "take Care that the Laws be faithfully executed."  Art. II, §§ 1, 3.  The Commission has identified no binding precedent to the contrary.[17]

The Commission further argues that Meta is not entitled to the injunctive relief it seeks, because "there is no basis for concluding that [the Commissioners] lacked the authority to carry out the functions of the office," and because Meta has not shown that the removal protections here "cause[d] harm."  (Opp. 23 (quoting *Collins*, 141 S. Ct. at 1788–89).)  But in *Collins*, the Supreme Court engaged in "retrospective" review of specific actions previously taken by unaccountable agency directors, which the plaintiffs sought to "void."  *Collins*, 141 S. Ct. at 1787– 89.  Similarly, the out-of-circuit cases cited by the government involved claims seeking retrospectively to "invalidate" specific past agency actions (including to obtain prospective relief from those completed, allegedly invalid actions).  *See CFPB v. L. Offs. Of Crystal Moroney*, P.C., 63 F.4th 174, 180 (2d Cir. 2023) (challenge to issuance of a civil investigative demand); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023), *and cert. denied sub nom. Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 143 S. Ct. 981 (2023) (challenge to existing agency rulemaking); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *cert. granted and judgment rev'd*, 598 U.S. 623 (2023) (challenge to an existing removal and prohibition order).  Indeed, the cases cited by the Commission exclusively involve efforts to enjoin the effect of final agency orders, where—as their own cases make clear—there

---

[17] In *Seila Law*, the Supreme Court did not opine on the constitutionality of the FTC's structure, and was careful to distinguish the Commission as it existed then as the "New Deal-era FTC" or the "1935 FTC."  *See* 140 S. Ct. at 2200.

is no relevant "distinction between prospective and retrospective relief." *Cmty. Fin. Servs. Ass'n of Am.*, 51 F.4th at 631.

With respect to ongoing unconstitutional proceedings—like the Proceeding here— the Supreme Court's decision in *Axon* governs, and makes clear that a challenge to an agency's "power to proceed at all" is different from a challenge to "action[ s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. The *Collins* injury analysis has no place in an *Axon* challenge because, as the Supreme Court held in *Axon*, continued or ongoing "subjection to an unconstitutionally structured decisionmaking process" itself causes a "here and now injury." *Id.* at 192.  Under *Axon*, Meta need not show—as the Commission suggests—prejudice to "the President's control over the Commissioners in a way that harms Meta being," nor that "the Commissioners were not properly nominated for and appointed to their positions." (Opp. 23– 24.)  All that Meta must show is that it is being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191; *see also Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *1–2 (D.C. Cir. July 5, 2023) (enjoining administrative adjudication challenged under *Axon*, including with a removal claim, pending appeal).  Under *Axon*, Meta has alleged such a harm, and should be granted the injunctive relief it seeks.

## C.   Meta Has Stated a Claim Under Article I of the U.S. Constitution and Is Likely to Succeed on this Claim

In response to Meta's showing that the Commission's (purported) power to assign this dispute to administrative adjudication is an unconstitutionally delegated legislative power (Mem. 23–26), the Commission argues that the power is merely an exercise of prosecutorial discretion, which is executive (Opp. 29–31).  But that argument erroneously conflates (i) the legislative choice to assign a dispute to administrative adjudication rather than seek judicial relief, which is at issue here, with (ii) the "'discretionary power to seek judicial relief' by filing a lawsuit,

[which] is an exercise of executive authority."  (Opp. 29 (quoting *Buckley v. Valeo*, 424 U.S. 1,

138 (1976)).)  The Commission cites no case holding that the power to assign a dispute to

administrative adjudication is executive.  Instead, the Commission relies on analogies—such as

to an agency's decision whether or "not to prosecute or enforce" a matter in the first instance

(Opp. 29–30 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)))—that merely assume their

conclusion, including by assuming that the power is prosecutorial rather than legislative.

      The Commission's assumptions are inconsistent with Supreme Court precedent reasoning

that Congress has the power "to assign adjudication of public rights to entities other than Article

III courts," *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373

(2018),[18] and that "the mode of determining matters [involving public rights other than by

Article III courts] is completely within congressional control," *Crowell v. Benson*, 285 U.S. 22,

50 (1932).  To the extent that Congress "may delegate that power to executive officers," *id.*, it

"must 'lay down by legislative act an intelligible principle to which the [delegatee] is directed to

conform'" in exercising the power, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001)

(quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

      In addition, the Commission's argument is contradicted by the Fifth Circuit's decision in

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).  In *Jarkesy*,

the court held that "the power to assign disputes to agency adjudication is 'peculiarly within the

authority of the legislative department.'"  *Id.* (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214

U.S. 320, 339 (1909)).  The Commission argues, without elaboration, that *Jarkesy* "is

inconsistent with Supreme Court precedent."  (Opp. 30.)  Presumably, the Commission is

---

[18] The rights at issue in the FTC Proceeding against Meta are private rights, not public rights.
*See infra* Point I.D.  That independent structural constitutional obstacle to the FTC Proceeding is
placed to the side solely for purposes of this claim.

referring back to its cited Supreme Court cases about prosecutorial discretion, which could be analogous if the power were prosecutorial, but not if—as the Supreme Court and the Fifth Circuit have said—the power is legislative.[19]

      As a fallback, the Commission argues that Congress supplied the requisite "intelligible principle" governing the power to assign disputes to administrative adjudication by prohibiting "unfair or deceptive acts or practices in or affecting commerce" and by requiring the Commission to act in "the public interest."  (Opp. 31–33 (citing 15 U.S.C. §§ 45(a)(1)–(2), 45(b), 45(n).)  But the specific statutory language on which the Commission relies here authorizes reopening where "conditions of fact or of law have so changed as to require such action *or* if the public interest shall so require."  (Dkt. 18-9 at 2 (quoting 15 U.S.C. § 45(b)).)  Thus, the "public interest" and the prohibition against "unfair or deceptive" acts play no role— and supply no intelligible principle—when (including in the OTSC[20]) the Commission invokes changed conditions.  Nor can the Commission "cure [this] unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute."  *Whitman*, 531 U.S. at 472.

      In any event, by attributing the asserted intelligible principle to "isolated" statutory phrases, the government also commits a fundamental error against which the D.C. Circuit has expressly warned.  *See Owens v. Republic of Sudan*, 531 F.3d 884, 889–90 (D.C. Cir. 2008).  In *Owens*, the D.C. Circuit analyzed the "public interest" cases—namely, *Nat'l Broad. Co. v.*

---

[19] The Commission also argues, erroneously, that *Jarkesy* is distinguishable because a jury right "is not at issue here."  (Opp. 30–31.)  To the contrary, the Commission's assignment of its allegations against Meta to administrative adjudication deprives Meta of its right to a trial by jury under the Seventh Amendment to the U.S. Constitution.  *See infra* Point I.E.

[20] Dkt. 18-9 at 13 ("Respondent's non-compliance constitutes changed conditions demonstrating that additional modifications to the Order are needed . . ..").)

*United States*, 319 U.S. 190, 225–26 (1943), which itself cites to *N.Y. Cent. Sec. Corp. v. United States*, 287 U.S. 12, 24 (1932)—and concluded that, in identifying an "intelligible principle," "we do not confine ourselves to the isolated phrase in question but utilize all the tools of statutory construction." *Owens*, 531 F.3d at 889–90.[21]

Before Judge Kelly, the United States (on behalf of the Commission), invoked the isolated phrase "in the public interest." (Gov't Br. 50–51.) Confronted with *Owens*, the Commission has now tried to dress up its reliance on the same phrase by adding "unfair or deceptive acts or practices in commerce," as partially defined in the FTC Act, and presenting them as "both a general policy and boundaries of the Commission's authority." (Opp. 31.) But the Commission fails to explain how the phrases "cabin the agency's discretion," *Owens*, 531 F.3d at 889, to proceed by administrative adjudication rather than before an Article III court.

Thus, at bottom, the Commission's argument comes down to those "isolated phrases," which are facially deficient (and, in any event, do not govern the Commission's attempt to enforce the 2012 Order and the 2020 Order through the OTSC, as shown above).

This is highlighted by the Commission's failure to explain how those phrases guided the Commission's decision to proceed through administrative adjudication rather than before an Article III court.

---

[21] In its recent *Illumina* decision, the Fifth Circuit found an "intelligible principle" solely in the statutory phrase "in the interest of the public." 2023 WL 8664628, at *3 (citing *Whitman*, 531 U.S. at 474). But reliance on that "isolated phrase" is contrary to the D.C. Circuit's holding in *Owens*. *Illumina*'s citation to *Whitman* does not remove the inconsistency because, as explained in text above, the D.C. Circuit's holding in *Owens*—a post-*Whitman* decision—was based on analyzing the "public interest" cases cited in *Whitman*. *Illumina* is further distinguishable because, as also explained above, the Commission's reliance on "changed circumstances" in the OTSC made the Commission's invocation of "the public interest" unnecessary.

For the foregoing reasons, and the reasons discussed in its opening brief, Meta has not only stated a claim under Article I upon which relief can be granted, but it is likely to succeed on its claim.  The Commission's Motion to Dismiss should therefore be denied as to this claim, and the Court should weigh the likelihood of success factor in Meta's favor.

### D.    Meta Has Stated a Claim Under Article III of the U.S. Constitution and Is Likely to Succeed on this Claim

The Commission argues that issues in the FTC Proceeding need not be adjudicated in an Article III court because the Proceeding involves public rights, not Meta's private rights.  (Opp. 25.)  In support of its position, the Commission proclaims that the Proceeding is between the government and Meta, but "the government's involvement alone does not convert a suit about private rights into one about public rights."  *Jarkesy*, 34 F.4th at 458.

In this case, the Commission issued the OTSC because Meta allegedly "failed to establish and implement an effective privacy program as required under the 2020 order and also violated the 2012 order."  (Opp. 11.)  Thus, the OTSC is premised on alleged breaches of prior agreed-upon orders and seeks to "enforce" those agreed-upon orders.  In this posture, the Commission seeks to adjudicate an allegedly breached contract, under which Meta has contractual rights. (Mem. 27 (citing cases).)  The Commission does not dispute that Meta's contract rights under the orders are private rights that must be adjudicated by an Article III court.  *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment)) (describing private rights as "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.").

Notwithstanding its acknowledgement that it issued the OTSC to enforce agreed-upon orders, the Commission contends that the Proceeding against Meta would adjudicate only public rights.  (Opp. 25–26.)  The Commission relies heavily on the Supreme Court's decision in *Atlas*

24

*Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977).  But *Atlas Roofing* is unavailing to the Commission—and, indeed, illustrates why even if the FTC Proceeding involved only the enforcement of the FTC Act (which it does not), the Proceeding would not involve public rights.  In *Atlas Roofing*, the Supreme Court considered the Occupational Safety and Health Act (OSHA)'s creation of "a new statutory duty" for employers "to avoid maintaining unsafe or unhealthy working conditions," remedies for those violations, and mechanisms for speedy enforcement and adjudication of cases by expert administrative agencies.  430 U.S. at 445, 461.  Confronting this statutory scheme, the Court explained that Congress could "creat[e] a new cause of action, and remedies therefor, unknown to the common law" and assign enforcement of those laws to an administrative body.  *Id.* at 461.

But instead of showing that this case involves public rights, the Commission's attempted analogy highlights the differences between public rights codified in OSHA in 1970 and the private rights that the Commission enforces.  The common law offered no "traditional actions" to enforce workplace health and safety protections in 1789 of the kind contemplated in the OSHA statute.  *See, e.g.*, *Priestley v. Fowler* (1837), 150 Eng. Rep. 1030, 1032 (CE) ("[T]he mere relation of the master and the servant never can imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do so himself.").

In contrast, the prohibitions set forth in the FTC Act are closely akin to common law actions for deceit.  *See, e.g.*, *Pasley v. Freeman* (1789) 100 Eng. Rep. 450 ("A false affirmation, made by the defendant with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action upon the case in the nature of deceit."); *see also Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855) (noting that a matter must be "from its nature . . . the subject of a suit at the common law" to constitute a private right for these

purposes).  The Commission's reference to its statutory duties to prevent fraud and deception do not change this result.  *See Jarkesy*, 34 F.4th at 456–57 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989)) ("Congress cannot convert any sort of action into a 'public right' simply by finding a public purpose for it and codifying it in federal statutory law.").

For the foregoing reasons, and the reasons discussed in its opening brief, Meta has clearly stated an Article III claim upon which relief can be granted and is likely to succeed on its claim. The Commission's Motion to Dismiss should therefore be denied as to this claim, and the Court should weigh the likelihood of success factor in Meta's favor in issuing a preliminary injunction.

### E.  Meta Has Stated a Claim Under the Seventh Amendment to the U.S. Constitution and Is Likely to Succeed on this Claim

The Commission argues that if Meta does not succeed on its Article III argument, Meta has no Seventh Amendment claim.  (Opp. 28.)  But that argument rests on an atextual reading of the Seventh Amendment, which provides in relevant part:  "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . .." U.S. Const. amend. VII.  Justice Gorsuch quoted a "pretty contemporaneous" dictionary definition of "suit" as "any action or process for the recovery of a right or a claim *before any tribunal*."  Tr. of Oral Arg. at 63, *SEC v. Jarkesy*, No. 22-859 (Nov. 29, 2023);[22] *see also* Noah Webster, *Webster's Condensed Dictionary* at 582 (1909) (defining "suit" as "[a]n action or process for the recovery of a right or claim; prosecution of right *before any tribunal*").  Thus, the Seventh Amendment, by its plain terms, is not limited to suits before Article III courts.

Further, a Seventh Amendment inquiry must be undertaken as to administrative adjudication of claims because, otherwise, Congress could evade the Seventh Amendment

---

[22] *Available at* www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-859_n758.pdf.

"merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency." *Granfinanciera*, 492 U.S. at 61.  Therefore, contrary to the Commission's argument, Meta's Seventh Amendment claim does not depend on its Article III claim.

In any event, the Commission's attempt to declare Meta in breach of the 2012 Order and the 2020 Order and to enforce those orders belongs before an Article III court *and* triggers Meta's right to a jury trial.  The Commission contends that the analogy to a breach of contract is inapt given that, according to the Commission, its authority to reopen the Proceeding does not depend on whether the 2020 Order was violated.  (Opp. 28–29.)  But the Seventh Amendment analysis hinges on the "nature of the issue to be tried rather than the character of the overall action."  *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).  And, as the Commission acknowledges in the opening paragraph of its brief, it issued the OTSC because Meta allegedly "failed to establish and implement an effective privacy program as required under the 2020 order and also violated the 2012 order."  (Opp. 11.)  The "dispositive issue" in the Proceeding would therefore be "whether [Meta] breached the [2020 Order and the 2012 Order]," making breach of contract the most apt analogy.  *Stewart v. KHD Deutz of Am. Corp.*, 75 F.3d 1522, 1526 (11th Cir. 1996) (finding right to jury trial).

The Commission does not offer the Court a more appropriate analogy.  The Commission underscores that the Proceeding relates to the Commission's regulation of misleading and deceptive practices.  (Opp. 25–26.)  But that too signals that the crux of the action is legal: "fraud, deceit, [and] misrepresentation" were actions at law, not equity.  *Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 676 (1st Cir. 2017).

The Commission finally argues that, to the extent the Proceeding is akin to a breach of contract case, the potential relief involved would be the equitable remedy of "specific performance." (Opp. 29.) But, as described in Meta's opening brief and Complaint, the Commission is seeking to *replace* the 2020 Order with the Proposed Order that adds new and additional restrictions and obligations on Meta. (Dkt. 1 at 9–10 (Compl. ¶¶ 32–34); Mem. 14–15.) That is the opposite of specific performance. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 2020 WL 1361145, at *22 (D.D.C. Nov. 6, 2020) (specific performance "is a form of injunctive relief that compels the defendant to perform a contract with the plaintiff."); *see also* 81A C.J.S. Specific Performance § 1 (2023) ("Specific performance is an equitable remedy which compels the performance of a contract on the terms agreed upon . . .. It is a means of compelling a party to do precisely what he or she ought to have done without being coerced by a court.").

Instead, the Commission is seeking an adjudication in the FTC Proceeding, akin to a declaration, that Meta breached its obligations under the 2020 Order so that it can then impose the Proposed Order. That relief is "legal in nature." *NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*, 927 F.3d 1, 8 (1st Cir. 2019) ("An order of declaratory relief on a claim for breach of contract is essentially legal in nature. Thus, by entering the declaratory judgment on the breach of contract claim without a jury trial, the District Court violated [the plaintiff's] Seventh Amendment rights."). As a result, and for all the foregoing reasons, allowing the Proceeding to proceed administratively violates Meta's Seventh Amendment right to a jury trial.

## F.   Meta Has Not Waived Its Structural Constitutional Challenges

The Commission argues that by agreeing to settle prior enforcement actions, Meta somehow waived its right to challenge future enforcement proceedings irrevocably and in perpetuity, including any constitutional claim. (Opp. 38–40.) That argument is baseless.

Under controlling authority, "[a]n effective waiver of a constitutional right is the *intentional* relinquishment or abandonment of a known right," and "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). When construing a waiver of constitutional rights in a consent decree, "the conditions upon which [a party] has given that waiver must be respected, and the instrument must be construed as it is written." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

Meta nowhere waived any challenge it makes in this action. The Commission cites only provisions in the 2012 Order and the 2020 Order. (Opp. 38–39.) In 2012, Meta's waiver was limited to challenges to "the order," (Dkt. 18-3 at 2), and in 2020, Meta (like the Commission) waived "all rights to appeal or otherwise challenge or contest the validity of the *Stipulated Order*" (Dkt. 18-6 at 3 (Stipulated Order Finding 7), and "the [*2020*] *Order*" (*Id.* at 10 (Attachment A, Finding 4).) Meta agreed to those waivers in exchange for certain other terms, consideration, or concessions contained in carefully negotiated agreements. By their express terms, the waivers are limited to specific prior orders—namely, the 2012 Order and the 2020 Order. The Commission does not—and cannot—explain how such limited waivers apply so as to waive the right to challenge as structurally unconstitutional the reopening of the Proceeding by the OTSC. Indeed, it is ironic (to say the least) that the Commission points to *Meta's* agreement not "to challenge or contest the validity" of the 2020 Order where the Commission, bound by that same waiver, now seeks to rewrite it. *Id.*

The Commission's "judicial estoppel" argument fares no better. The Commission contends that having "'succeeded in persuading' the Court in 2020 to enter the Stipulated Order, . . . Meta is judicially estopped from embracing a 'clearly inconsistent' position by

claiming that the administrative proceedings . . . were unconstitutional in the first place."  (Opp. 39.)  But there is no inconsistency.  In 2019, Meta waived its challenges to the entry of the 2020 administrative order, in the interest of compromise, to settle a particular set of claims.  Under settled law, that is not "assum[ing] a certain position" on the constitutionality of the FTC and its administrative procedures, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)—let alone one that would bind Meta in every potential future regulatory matter, related or unrelated, for the rest of time.  Such a compromise is entirely consistent with retaining the ability to raise constitutional challenges.[23]

Meta agreed to settle two prior actions with the Commission, agreeing to forgo its defenses—both on the merits of the Commission's claims and the Commission's authority to assert them—as part of larger compromises.  Now that the agency, for the first time, is no longer acting on an agreed basis, Meta is properly and lawfully exercising its right to assert a going-forward structural challenge.  The Commission's contrary argument—whether styled as waiver or recycled as "estoppel" or "laches"—lacks merit.  (Opp. 40 n.3.)

## II.        Meta Will Suffer Irreparable Harm Without a Preliminary Injunction[24]

The Commission's only argument in response to Meta's showing of irreparable harm— that Meta points only to its "here-and-now" injury (Opp. 30)—is both wrong and beside the

---

[23] When Judge Kelly discussed the Commission's so-called waiver theory at the Court's hearing on Meta's Motion to Enforce the Stipulated Order, he observed, "I don't think that's an uphill climb for [Meta]."  (Dkt. 4-2 at 38 (Tr. 32:7).)  If anything, the Commission's arguments are even weaker now that, at the Commission's urging, Meta has raised these challenges in a separate action which, by the Commission's own acknowledgement, is not "related" to the action in which the Stipulated Order was entered and the 2020 Order approved.

[24] Meta's current deadline to respond to the OTSC is January 31, 2024.  (Order Further Extending Time for Respondent's Answer, *In the Matter of Facebook, Inc.*, FTC Dkt. No. C-4365 (Dec. 6, 2023).)

point.  As *Axon* itself makes clear, and the weight of authority construing it confirms, the injury stemming from constitutional defects in the FTC's structure *is* sufficient to establish irreparable harm.  But, in any case, Meta has shown much more.

First, the Commission gets *Axon* wrong. The Opposition ignores the Supreme Court's actual language and fails to grapple with the clear import of its holding.  The Supreme Court made clear that the harm of "being subjected to unconstitutional agency authority … is impossible to remedy once the proceeding is over" because that injury will, *ipso facto*, have already occurred.  *Axon*, 598 U.S. at 191.  This is, quite literally, the definition of irreparable: while "the expense and disruption of protracted adjudicatory proceedings on a claim" do not alone justify immediate review, "the nature of the claims and accompanying harms" here is "differen[t]," as any remedy will be "effectively lost if review is deferred."[25]  *Id.* at 192.

While the Supreme Court reached this conclusion in the context of jurisdiction, its reasoning leaves no doubt that it applies with no less force in the context of injunctive relief. *Axon* rightly equates the here-and-now injury of being subjected to an unconstitutional process with established immunity doctrines.  *Id.*  In those cases, the immunity from suit is "effectively lost" if review is deferred until the suit has concluded.  *Id.*  And so, as the D.C. Circuit has explained, "a showing of irreparable injury will generally be automatic from invocation of the immunity doctrine" if the proceeding will commence during the pendency of an appeal. *McSurely v. McClellan*, 697 F.2d 309, 317 (D.C. Cir. 1982); *see also* Mem. 29–30 (citing cases). The same reasoning applies here.  Meta expects to prevail in the FTC Proceeding if subjected to

---

[25] The Commission's attempted distraction—that Meta merely invokes as irreparable harm the expense and disruption of agency adjudication (Opp. 41)—is meritless.

it, but its rights under the Constitution *not* to be subjected to it will forever be lost.[26]  *Axon*, 598 U.S. at 192 (describing harm regardless of outcome of proceeding).  The reasoning of *Axon* is clear.  And the Opposition's failure to address it in any way is telling.

Second, the weight of post-*Axon* authority confirms that being subjected to structurally unconstitutional agency authority amounts to irreparable harm.  The Commission cites two cases—Judge Reyes's decision in *Kim* and a decision from the Eastern District of Oklahoma finding no irreparable harm in challenges to other agencies (FINRA and the CPSC, respectively).[27]  (Opp. 40.)  But both decisions rested on characterizations of *Axon* as a jurisdiction case; neither addressed *Axon*'s actual reasoning.  *Kim*, 2023 WL 6538544, at *13 n.9; *Leachco*, 2023 WL 4934989, at *2.  By contrast, other courts have done so and rejected the Commission's cramped view.  Although the court denied the injunction on other grounds (which the D.C. Circuit subsequently reversed in granting injunctive relief pending appeal), Judge Howell has made clear that "under the Supreme Court's explicit language, the nature of the constitutional claims, . . . no matter their unlikelihood of success, suffice to show irreparable harm."  *Scottsdale Cap. Advisors Corp.*, 2023 WL 3864557, at *13.  Likewise, in granting an injunction pending appeal from Judge Howell's ruling, the D.C. Circuit, too, found irreparable

---

[26] The Commission tries to reframe Meta's position to say that "the mere allegation of a structural injury is sufficient to warrant *a preliminary injunction*."  (Opp. 40.)  But this is *not* Meta's position.  While a here-and-now injury stemming from a defect in an agency's structure is sufficient to show irreparable harm, the other factors of a preliminary injunction still apply. *Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017).  The Commission's parade-of-horribles concerning the potential effect this might have on agency adjudication (*see* Opp. 40–41) is unfounded.  *Scottsdale Cap. Advisors Corp. v. FINRA*, 2023 WL 3864557, at *13 n.12 (D.D.C. June 7, 2023).

[27] *Kim v. FINRA*, 2023 WL 6538544 (D.D.C. Oct. 6, 2023); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023).

harm.  *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023), *mot. for*

*en banc reconsideration denied* (D.C. Cir. Aug. 22, 2023).  While the Commission points to

facts showing that the company also demonstrated *other* forms of irreparable harm, Judge

Walker explained that being subjected to FINRA's allegedly structural unconstitutional authority

was sufficient, because "the resolution of claims by an unconstitutionally structured adjudicator

is a 'here-and-now injury' that cannot later be remedied."  *Id.* at *2 (Walker, J., concurring)

(quoting *Axon*, 598 U.S. at 191).

 Even more recently, a court in the Southern District of Texas reached the same

conclusion.  *See Space Exploration Techs., Corp. v. Bell*, 2023 WL 8885128, at *1 (S.D. Tex.

Nov. 8, 2023) (Olvera, J.).  There, SpaceX alleged that the structure of the Immigrant and

Employee Rights Section of the Department of Justice was unconstitutional, and sought an

injunction to stop the underlying administrative proceeding.  *Id.* at *2.  The court held that

SpaceX "has shown it is likely to suffer irreparable harm absent an injunction" because, under

*Axon*, the plaintiff was "being subjected to unconstitutional agency authority which is impossible

to remedy once the proceeding is over."  *Id.* at *4 (quoting *Axon*, 598 U.S. at 191).  Judge

Howell, Judge Walker, and Judge Olvera interpreted and applied *Axon* correctly, and the

Commission's Opposition offers no basis for this Court to hold otherwise.

 In any event, while the Commission's Opposition starts and ends with *Axon*, Meta has

demonstrated irreparable harm even if *Axon* had never been decided.  It is settled law in this

Circuit that "a prospective violation of a constitutional right constitutes irreparable injury . . . for

purposes of seeking equitable relief."  *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020)

(quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).  "Thus, although a plaintiff

seeking equitable relief must show a threat of substantial and immediate irreparable injury, a

prospective violation of a constitutional right constitutes irreparable injury for these purposes." *Gordon*, 721 F.3d at 653 (quoting *Davis v. Dist. of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998)).  In this case, the prospective violation of Meta's constitutional rights "is of such imminence"—indeed, Meta's deadline to respond to the OTSC is just weeks away—"that there is a clear and present need for equitable relief."  *Shaw v. Austin*, 539 F. Supp. 3d 169, 182 (D.D.C. 2021) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

   And while this is true as a general matter, the D.C. Circuit has found—in a case cited by the Commission (Opp. 41)—irreparable harm in the specific context of a due process challenge to a biased adjudicator.  *See In re Al-Nashiri*, 921 F.3d 224, 238 (D.C. Cir. 2019).  In *Al-Nashiri*, the petitioner sought a writ of mandamus to vacate orders issued by a presiding military judge on the basis of his apparent bias.  *Id.* at 226.  The court held that where a party claims that it is being forced to litigate before a biased adjudicator, "the injury suffered . . . is by its nature irreparable." *Id.* at 238 (quoting *Cobell v. Norton*, 334 F.3d 1128, 1139 (D.C. Cir. 2003)).  "[N]o amount of appellate review can remove completely the stain" of that bias, both "because it is too difficult to detect all of the ways that bias can influence a proceeding" and because public confidence "is irreparably dampened."  *Id.*

   Other courts, including the Supreme Court, have agreed.  "Submission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) (citing *Gibson v. Berryhill*, 411 U.S. 564, 571-72 (1973)).  That the decisions of a biased adjudicator may be reviewed on appeal, "even if on a de novo basis, does not obviate the need for injunctive relief," *id.* at 701; *see also Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972)

("Petitioner is entitled to a neutral and detached judge *in the first instance*."), because "[e]ven appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator," *Concrete Pipe*, 508 U.S. at 618.

The same is true for Meta's other constitutional challenges. "Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others.  Yet the dynamic between and among the branches is not the only object of the Constitution's concern.  The structural principles secured by the separation of powers *protect the individual as well*."  *Bond v. United States*, 564 U.S. 211, 222 (2011); *see also Stern*, 564 U.S. at 483 ("Article III protects liberty.").

As a result, Meta's separation-of-powers challenges are entitled to the same considerations regarding irreparable harm as its due process claim.  *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010) ("If the Government's point is that an Appointments Clause or separation-of-powers claim should be treated differently than every other constitutional claim, it offers no reason and cites no authority why that might be so.").

For each of these separate and independent reasons, Meta has more than demonstrated that it would suffer irreparable harm under controlling law.

## III.        The Public Interest and Balance of the Equities Weigh in Meta's Favor

The Commission cites no legal authority—not a single case—to argue that the balance of equities and public interest weigh against an injunction.  That is not a surprise.  Multiple, substantial public interests strongly support Meta's requested relief.  The Commission points to nothing on the other side of the ledger.  In fact, the Commission has *already* determined that maintaining the existing terms of the 2020 Order would serve the public interest even if Meta were to violate those terms, as the Commission asserts in the OTSC.  (*See* Dkt. 18-6 at 29–30 (Attachment A Part XVI) (providing that "[t]his Order will terminate 20 years from the date of

its issuance, or 20 years from the most recent date that the United States or the Commission files

a complaint . . . in federal court alleging any violation of this Order, whichever comes later").)

As an initial matter, the law is clear that the public interest always favors the vindication

of constitutional protections.  That must be the case, as "the Constitution is the ultimate

expression of the public interest."  *Gordon*, 721 F.3d at 653 (quoting *Llewelyn v. Oakland Cnty.*

*Prosecutor's Off.*, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975)).  As a result, it is "obvious" that

"enforcement of an unconstitutional law is always contrary to the public interest."  *Id.* at 653; *see*

*also Karem*, 960 F.3d at 668 (same); *Minney v. U.S. Off. Of Pers. Mgmt.*, 130 F. Supp. 3d 225,

236 (D.D.C. 2015) (emphasis in original) ("Applying the law in a way that violates the

Constitution is *never* in the public's interest.").  And there is, therefore, a "presumed availability

of federal equitable relief against threatened invasions of constitutional interests."  *Davis*, 158

F.3d at 1346.[28]

The strong public interest in promoting the protection of constitutional rights and

preventing their violation is profoundly important where, as here, Meta asserts claims under the

Due Process Clause.  *See Gordon*, 721 F.3d at 653.  But it is no less true for Meta's other claims.

The Supreme Court has made clear that its remedies in cases raising structural separation of

powers issues "are designed not only to advance those purposes [preventing such violations]

directly, but also to create incentives to raise" these types of challenges in the first place.  *Lucia*

*v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018); *see also John Doe Co. v. CFPB*, 849 F.3d 1129, 1137

(D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("The public interest is not served by letting an

---

[28] Similarly, in such cases, a party's likelihood of success on the merits "is a strong indicator that
a preliminary injunction would serve the public interest because there is generally no public
interest in the perpetuation of unlawful agency action."  *Shawnee Tribe v. Mnuchin*, 984 F.3d 94,
102 (D.C. Cir. 2021) (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir.
2016)).

unconstitutionally structured agency continue to operate until the constitutional flaw is fixed. And in this circumstance, the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency.").  It is for that reason that the D.C. Circuit determined that the public interest favored Alpine Securities—not FINRA.  *See Alpine*, 2023 WL 4703307, at *2 (Walker, J., concurring) ("The public interest favors preventing the deprivation of individual rights and abuses of government power.").

In sharp contrast, the Commission points only—and generically—to its "concerns that the 2020 Administrative Order is insufficient to protect the public" from allegedly "unfair and deceptive conduct."  (Opp. 42–43.)  For one thing, the OTSC says no such thing—it says nothing about any possible future "unfair" or "deceptive" conduct.[29]  But, more fundamentally, even that assertion is insufficient for a host of reasons.

First, the Constitution "does not permit agencies to act unlawfully even in pursuit of desirable ends."  *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs,*, 141 S. Ct. 2485, 2490 (2021).  And no "policy goal" can be prioritized "over the Due Process Clause."  *Gordon*, 721 F.3d at 653.

Second, the FTC's *ipse dixit* assertion of order violations carries little weight.  As Judge Walker noted in explaining the D.C. Circuit's injunction in *Alpine Securities*, "the only evidence that Alpine has violated the law is FINRA's say so.  And if Alpine is correct on the merits, then FINRA is an illegitimate decisionmaker."  *Alpine*, 2023 WL 4703307, at *2 (Walker, J., concurring).  That is doubly true in this case.  Even setting aside the FTC's constitutional issues, Congress has not "vested the FTC with power not only to make orders but to determine whether

---

[29] Rather, as the Opposition makes plain, the OTSC is premised on the Commission's "good cause to believe that Meta failed to establish and implement an effective privacy program as required under the 2020 order and also violated the 2012 order."  (Opp. 11; Dkt. 18-9 at 13.)

they have been violated." *United States v. J.B. Williams Co., Inc.*, 498 F.2d 414, 422 (2d Cir. 1974).  Indeed, when compliance with its orders is at issue, the Commission cannot be "judge as well as prosecutor," *id*. at 429, rendering its mere assertion that Meta has violated such orders of little weight before this Court.

Third, the Commission cannot rely on its argument that Meta's alleged violations of the 2020 Order show that the 2020 Order "is insufficient to protect the public."  (Opp. 42.)  Part XVI of the 2020 Order specifies that in the event that Meta violates that order, its term would be extended, but its substantive terms continue unmodified.  (Dkt. 18-6 at 29–30 (Attachment A Part XVI).)  In other words, the Commission *already determined*—with Judge Kelly's approval—that if Meta were to violate the 2020 Order, the public interest would be served not by changing any of its provisions, but by extending the time in which Meta is obligated to follow them.[30]   Under these circumstances, there is no basis for the Commission to argue that the public interest would be impaired by maintaining those terms in place while this Court adjudicates the merits of Meta's Complaint.

Finally, the Commission acknowledges its lengthy delay in bringing the OTSC based on years-old facts, which further undermines any argument that the public interest would be impaired by maintaining that status quo marginally longer.  (Opp. 43 n.6.)  The Commission's attempted explanation—pointing to the "complexity and volume of the information"—is makeweight.  (*Id*.)   By the Commission's own admission, Meta voluntarily "notified the FTC" of the conduct it claims violated the 2012 Order on July 15, 2019 (Dkt. 18-11 at 163–64 (PFOF

---

[30] Similarly, the FTC has argued elsewhere that the remedy for violation of an FTC order is order *enforcement*, not order *modification*, further undermining any argument that the public interest would suffer by maintaining the existing terms while this action proceeds.  (Gov't Opp. to X Corp.'s Mot. for Protective Order, Dkt. 41 at 27, *United States v. Twitter, Inc.*, No. 3:22-cv-3070-TSH, 2022 U.S. DIST. CT. MOTIONS LEXIS 604708 (N.D. Cal. Sept. 11, 2023).)

¶¶ 1153, 1164)), *before* the FTC finalized its settlement with Meta, nearly a year before the 2020 Order was entered, and nearly *four years* before the FTC issued the OTSC.  Similarly, Meta remediated and disclosed the conduct the Commission alleges violated Part I of the 2020 Order by June 29, 2020 (*Id.* at 156 (PFOF ¶ 1095)), nearly three years before issuing the OTSC.  Even as to the most recent conduct—the initial Assessment of Meta's Privacy Program *between October 2020 and April 2021*—the Commission waited nearly two years from its receipt of the report to bring the OTSC in May 2023.  (*Id*. at 5 (PFOF ¶ 19).)  During that time, there was an entirely new Assessment—the first full biennial Assessment—of Meta's Privacy Program.  By this point, the *newest* facts are nearly three years old.  And the "complexity and volume of the information" is no explanation.  For context, Commission rules require ALJs to issue full *decisions* between 70 and 115 days after the close of evidentiary hearings, which feature much larger and complete records adduced through an adversarial process.  16 C.F.R. § 3.51(a)(1).  That the Commission took multiples of that time to issue the OTSC confirms that there is no urgency here.  Likewise, the Opposition does not answer why, if the Commission was willing to agree to a sine die extension of Meta's OTSC response deadline, including to give Judge Kelly "time to thoughtfully decide the issue," it is unwilling to do the same for this Court. (Opp. 43 n.6.)  Put simply, the Commission's entire course of conduct belies any argument that the public interest would suffer from maintaining the status quo while this Court resolves the claims in the Complaint.

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court grant its Motion for Preliminary Injunction, prohibiting Defendants from taking further action in the FTC Proceeding pending resolution of the constitutional challenges asserted by Meta in this action and deny Defendants' Motion to dismiss.

At the parties' December 8 hearing, the Commission indicated that it would consider a modest extension of Meta's January 31 deadline to accommodate the hearing now scheduled on the afternoon of January 29.  The Commission has yet to indicate whether it is amenable to such an extension.  As a result, Meta requests that, to the extent the Court may not grant Meta's PI Motion, it issue an administrative stay of the Commission's January 31 deadline to allow Meta to seek injunctive relief pending appeal.

DATED: December 27, 2023                Respectfully submitted,

                                        /s/ James P. Rouhandeh

                                        James P. Rouhandeh (DDC Bar No. NY0390)
                                        Michael Scheinkman (DDC Bar No. NY0381)
                                        David B. Toscano (*pro hac vice* forthcoming)
                                        John A. Atchley III (*pro hac vice* forthcoming)
                                        DAVIS POLK & WARDWELL LLP
                                        450 Lexington Avenue
                                        New York, New York, 10017
                                        Tel: (212) 450-4000
                                        Email: rouhandeh@davispolk.com

                                        Paul J. Nathanson (DDC Bar No. 982269)
                                        DAVIS POLK & WARDWELL LLP
                                        901 15th St., NW
                                        Washington, DC 20005
                                        Tel: (202) 962-7000
                                        Email: paul.nathanson@davispolk.com

                                        *Attorneys for Plaintiff Meta Platforms, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2023, I electronically filed the foregoing Reply in Further Support of Meta Platforms, Inc.'s Motion for Preliminary Injunction and Memorandum in Opposition to Defendants' Motion to Dismiss and the accompanying proposed order with the United States District Court for the District of Columbia by using the CM/ECF system.


By: _/s/ James P. Rouhandeh_
James P. Rouhandeh