**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

META PLATFORMS, INC.,

                      Plaintiff,

         v.

FEDERAL TRADE COMMISSION, *et al.*,

                  Defendants.

Case No. 1:23-cv-03562-RDM

Judge Randolph D. Moss

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT...............................................................................................................1

I.      Meta's Article II removal claim fails. .............................................................1

        A.      *Humphrey's Executor* forecloses Meta's claim. ..................................1

        B.      Meta is not entitled to relief without a showing of prejudicial harm......................2

II.     The modification proceedings involve public rights. ........................................4

III.    The Seventh Amendment does not apply to the modification proceedings......................6

IV.     Meta fails to establish any violation of the nondelegation doctrine...............................10

V.      Meta's due process claim fails. .......................................................................13

VI.     Meta waived its constitutional claims.............................................................19

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Johns-Manville Corp.*,
    876 F.2d 702 (9th Cir. 1989) ...........................................................................7

*AMG Cap. Mgmt., LLC v. FTC*,
    593 U.S. 67 (2021) ..........................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................18

*\*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
    430 U.S. 442 (1977) ..........................................................................................5

*Axon Enter., Inc., Inc. v. FTC*,
    598 U.S. 175 (2023) ....................................................................................3, 19

*Axon Enter., Inc. v. FTC*,
    986 F.3d 1173 (9th Cir. 2021) .......................................................................18

*Burgess v. FDIC*,
    639 F. Supp. 3d 732 (N.D. Tex. 2022),
    *appeal filed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022)..................2, 3

*Burlington N. R.R. Co. v. Neb. Pub. Power Dist.*,
    931 F. Supp. 1470 (D. Neb. 1996) ...................................................................8

*\*CFPB v. Law Offs. of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) ..............................................................................2

*Citigroup Inc. v. VDN Sys., Inc.*,
    No. 08-Civ-7527 (SHS), 2008 WL 5274091 (S.D.N.Y. Dec. 16, 2008) ............6, 7

*\*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) ..............................................................................2, 3, 4

*Crowell v. Benson*,
    285 U.S. 22 (1932)............................................................................................4

*ECM BioFilms, Inc. v. FTC*,
    851 F.3d 599 (6th Cir. 2017) .........................................................................17

*\*Elmo Co. v. FTC*,
    389 F.2d 550 (D.C. Cir. 1967)......................................................................8, 9

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    537 F.3d 667 (D.C. Cir. 2008) ............................................................................3

*\*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ..................................................................................2, 4

*FTC v. Cement Inst.*,
    333 U.S. 683 (1948) .......................................................................................15

*\*FTC v. Freecom Commc'ns, Inc.*,
    401 F.3d 1192 (10th Cir. 2005) ........................................................................5

*FTC v. Kochava Inc.*,
    No. 2:22-cv-00377-BLW, 2023 WL 3249809 (D. Idaho May 4, 2023) ....................................1

*FTC v. Lanier L., LLC*,
    No. 3:14-CV-786-J-34PDB, 2015 WL 9598794 (M.D. Fla. Dec. 8, 2015) ............................7

*FTC v. Quincy Bioscience Holding Co.*,
    No. 17 Civ. 124 (LLS), 2021 WL 1608953 (S.D.N.Y. Apr. 26, 2021) ................................6, 7

*FTC v. Roomster Corp.*,
    654 F. Supp. 3d 244 (S.D.N.Y. 2023) .................................................................1

*FTC v. Walmart Inc.*,
    No. 22 CV 3372, 2023 WL 2646741 (N.D. Ill. Mar. 27, 2023) ......................................2, 3, 4

*\*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ........................................................................................6

*Hall v. Kane*,
    No. C 05-4426 MMC (PR), 2008 WL 5391196 (N.D. Cal. Dec. 23, 2008) ...........................18

*Illumina, Inc. v. FTC*,
    No. 23-60167, 2023 WL 8664628 (5th Cir. Dec. 15, 2023) .........................................1, 12, 13

*Impax Lab'ys, Inc. v. FTC*,
    994 F.3d 484 (5th Cir. 2021) .............................................................................18

*In re Altria Grp., Inc.*,
    No. 9393, 2023 WL 4349336 (F.T.C. June 30, 2023) .................................................17

*In re McWane, Inc.*,
    2014 WL 556261 (F.T.C. Jan. 30, 2014) ...............................................................17

*In re Polypore Int'l, Inc.*,
   No. 9327, 2010 WL 9933413 (F.T.C. Dec. 13, 2010) ..........................................................17

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ......................................................................................................4

*Jarkesy v. SEC*,
   51 F.4th 644 (5th Cir. 2022),
   *cert. granted*, 143 S. Ct. 2688 (2023)................................................................................4, 5

*Kim v. FINRA*,
   No. 1:23-cv-02420 (ACR), 2023 WL 6538544 (D.D.C. Oct. 6, 2023) ....................................3

*Lichter v. United States*,
   334 U.S. 742 (1948) ................................................................................................................11

*Marshall v. Jerrico, Inc.*,
   446 U.S. 238 (1980) ................................................................................................................17

*McWane, Inc. v. FTC*,
   783 F.3d 814 (11th Cir. 2015) ................................................................................................18

*Mich. Gambling Opposition v. Kempthorne*,
   525 F.3d 23 (D.C. Cir. 2008)..................................................................................................10

*\*Mohr v. FTC*,
   272 F.2d 401 (9th Cir. 1959) ....................................................................................................9

*Nat'l Broad. Co. v. United States*,
   319 U.S. 190 (1943) ..........................................................................................................11, 13

*N.C. State Bd. of Dental Exam'rs v. FTC*,
   135 S. Ct. 1101 (2015) ............................................................................................................18

*\*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................................................................20

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018) ........................................................................................................4, 6

*Owens v. Republic of Sudan*,
   531 F.3d 884 (D.C. Cir. 2008).....................................................................................10, 11, 13

*POM Wonderful, LLC v. FTC*,
   777 F.3d 478 (D.C. Cir. 2015).................................................................................................18

*SEC v. Commonwealth Chem. Sec., Inc.*,
  574 F.2d 90 (2d Cir. 1978) ................................................................................7

*Space Expl. Techs., Corp. v. Bell*,
  No. 1:23-cv-00137, 2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ...........................4

*Stern v. Marshall*,
  564 U.S. 462 (2011) ........................................................................................4

*Tull v. United States*,
  481 U.S. 412 (1987) ........................................................................................7

*United States v. Anthem, Inc.*,
  855 F.3d 345 (D.C. Cir. 2017) ...........................................................................5

*United States v. Benitez-Villafuerte*,
  186 F.3d 651 (5th Cir. 1999) ............................................................................13

*United States v. Facebook, Inc.*,
  No. 19-2184 (TJK), 2023 WL 8190858 (D.D.C. Nov. 27, 2023) .......................9, 19

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ........................................................................................13

*Wildberger v. Am. Fed'n of Gov't Emps.*,
  86 F.3d 1188 (D.C. Cir. 1996) ...........................................................................17

*Withrow v. Larkin*,
  421 U.S. 35 (1975) .....................................................................................*passim*

## STATUTES

15 U.S.C. § 45(a) ............................................................................................11, 12

15 U.S.C. § 45(b) ........................................................................................*passim*

15 U.S.C. § 45(l) ...........................................................................................11, 12

15 U.S.C. § 53(b) .................................................................................................11

15 U.S.C. § 57b(b) ..............................................................................................12

## REGULATIONS

16 C.F.R. § 3.72(b)(1) .........................................................................................14

## RULES

Fed. R. Civ. P. 8(a)(2) ...............................................................................................18

**OTHER AUTHORITIES**

*Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission,*
58 Antitrust L.J. 43 (1989) ....................................................................................19

## INTRODUCTION

Unhappy with the FTC's scrutiny of its privacy practices, Meta alleges various theories why the entire FTC is unconstitutional. But its latest arguments show that its claims have no support.  Under binding precedent, the Court should dismiss Meta's claims.

## ARGUMENT

### I.      Meta's Article II removal claim fails.

#### A.      *Humphrey's Executor* forecloses Meta's claim.

Meta is far from the first litigant to challenge the constitutionality of the Commissioners' removal protections based on post-1935 changes to the FTC Act. *See, e.g.*, *Illumina, Inc. v. FTC*, No. 23-60167, 2023 WL 8664628, at *3 (5th Cir. Dec. 15, 2023); *FTC v. Kochava Inc.*, No. 2:22-cv-00377-BLW, 2023 WL 3249809, at *12 (D. Idaho May 4, 2023); *FTC v. Roomster Corp.*, 654 F. Supp. 3d 244, 259-60 (S.D.N.Y. 2023). All courts to have considered that argument have rejected it and affirmed the FTC's constitutionality. Indeed, less than a month ago, the Fifth Circuit added to the weight of authority against Meta, holding that, even if "the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." *Illumina*, 2023 WL 8664628, at *3. This Court should hold the same.

In its latest brief, Meta continues to argue that the Commission's current composition—three Commissioners from the same party—renders it unconstitutional. Dkt. 20 at 27-28. That argument continues to be baseless. As discussed in Defendants' earlier brief, since its enactment, the FTC Act has authorized the Commission to operate even when some seats are vacant, and nothing in *Humphrey's Executor* suggests that that feature of the statute renders the Commission unconstitutional. Dkt. 18 at 22-23. Further, Article II removal cases are ultimately about ensuring that Executive Branch officers are accountable to the President so that the President is "accountable

to the people for executing the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010). Meta has not explained how having three Commissioners from the same party as the current President somehow renders them unaccountable to the President or the President unaccountable to voters. Meta's claim should be dismissed.

**B.    Meta is not entitled to relief without a showing of prejudicial harm.**

The Court should also dismiss Meta's Article II claim because Meta has not alleged that the President's restricted ability to remove the Commissioners is causing any harm to Meta. The Supreme Court held in *Collins v. Yellen* that the Federal Housing Finance Agency Directors' actions were not void *ab initio* because, when each action occurred, the Director was properly appointed, even though his removal protections were unconstitutional. 141 S. Ct. 1761, 1788 n.23 (2021) ("Settled [Supreme Court] precedent [] confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ."). Since properly appointed officers' actions are valid regardless of the constitutionality of their removal protections, there is no basis to prevent them from continuing to act, at least not without some showing—absent here—that the restrictions on the President's ability to remove the officer has some harmful impact on the challenger. *See CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180-81 (2d Cir. 2023) ("[T]he Supreme Court's reasoning that an officer's actions are valid so long as she was validly appointed applies with equal force regardless of the relief sought by the party challenging the officer's actions."). Other courts have followed this reasoning to deny relief, including in cases involving ongoing agency actions, and this Court should too. *See id.* (ongoing investigation); *Burgess v. FDIC*, 639 F. Supp. 3d 732, 739, 746 (N.D. Tex. 2022) (court could not grant prospective declaratory relief sought by plaintiff subject to ongoing adjudicatory proceedings absent showing of harm under *Collins*), *appeal filed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022); *FTC v. Walmart Inc.*, No. 22 CV 3372,

2023 WL 2646741, at *26 (N.D. Ill. Mar. 27, 2023) (allowing FTC to continue prosecuting ongoing enforcement action because "[t]he Commissioners were constitutionally appointed, and an unconstitutional removal restriction isn't a reason to void the FTC's action in this case").

Contrary to Meta's suggestion, *Axon* did not purport to overrule or limit *Collins*. *Axon* held that district courts have subject matter jurisdiction to hear structural challenges to FTC and SEC ALJs' removal protections; it did not address the merits or the showing necessary to obtain relief. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023) ("Our task today is not to resolve those challenges; rather, it is to decide where they may be heard."). Those questions are governed by *Collins* and other cases. Other courts have implicitly recognized this distinction and this Court should too. For example, in *Burgess*, the district court held that it had jurisdiction over the plaintiff's ALJ removal claim but nonetheless found that the plaintiff was unlikely to succeed on the merits because the plaintiff failed to allege harm under *Collins*. 639 F. Supp. 3d at 740-47. Likewise, in *Kim v. FINRA*, the district court held that, under *Axon*, it had jurisdiction over the plaintiff's Article II claims but found that the plaintiff was unlikely to succeed on the merits and failed to establish irreparable harm. No. 1:23-cv-02420 (ACR), 2023 WL 6538544, at *7-10, 13-14 & n.18 (D.D.C. Oct. 6, 2023).

At a minimum, the Court should hold that Meta is not entitled to the injunctive relief it seeks. *See* Dkt. 1 at 21 (Compl. Prayer for Relief ¶ a). Even without *Collins*, Meta would not be entitled to an injunction barring the FTC's proceedings; at most, the Commissioners' removal protections would simply be severed from the statute. *Free Enterprise Fund*, a pre-*Collins* case, involved an "ongoing" investigation by the Public Company Accounting Oversight Board ("PCAOB"). 537 F.3d 667, 670 (D.C. Cir. 2008). The plaintiffs sought broad injunctive relief to stop the PCAOB from operating because its members' removal protections were unconstitutional,

but the Supreme Court squarely denied such relief, instead granting only declaratory relief and severing the unconstitutional part of the statute. *Free Enter.*, 561 U.S. at 513.[1] Here, similarly, even if the FTC Commissioners' removal protections were unconstitutional, Meta could at most obtain declaratory relief invalidating the removal restrictions, not the sweeping injunction Meta seeks. *See Space Expl. Techs., Corp. v. Bell*, No. 1:23-cv-00137, 2023 WL 8885128, at *5 (S.D. Tex. Nov. 8, 2023) (declining to enjoin ALJ proceedings where severance would make ALJs accountable to the President); *Walmart*, 2023 WL 2646741, at *26.[2]

## II.     The modification proceedings involve public rights.

Meta's Article III claim should be dismissed because the modification proceeding involves public rights. Meta's conception of the public rights doctrine is contrary to binding Supreme Court precedent. The Supreme Court has repeatedly held that public rights include those "aris[ing] *between the Government and persons subject to its authority* in connection with the performance of the constitutional functions of the executive or legislative departments." *Crowell v. Benson*, 285 U.S. 22, 50 (1932) (emphasis added) (quoted in, *e.g.*, *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018); *Stern v. Marshall*, 564 U.S. 462, 489 (2011)). To the extent the Fifth Circuit's decision in *Jarkesy v. Securities & Exchange Commission*, 34 F.4th 446 (5th Cir. 2022), departs from that framework, *Jarkesy* is contrary to Supreme Court precedent. *See id.* at 470 (Davis, J., dissenting); *Jarkesy v. SEC*, 51 F.4th 644, 645 (5th Cir. 2022)

---

[1] The Supreme Court's refusal to enjoin ongoing agency activities in *Free Enterprise Fund*, notwithstanding the PCAOB's unconstitutional removal protections, strongly suggests that, contrary to Meta's argument, Dkt. 20 at 41-42, the immunity doctrine analogy *Axon* used in determining that district courts can exercise jurisdiction over structural removal challenges does not extend to questions about the merits and remedies associated with those claims.

[2] For purposes of this alternative argument, the Court need not decide now precisely how it would sever the statute or how broad a declaratory judgment would be, only that Meta is not entitled to its requested injunction.

(Haynes, J., dissenting from denial of rehearing en banc). And, in any event, an out-of-circuit decision is not binding on this Court. Although *Jarkesy* is being reviewed by the Supreme Court, 143 S. Ct. 2688 (2023) (granting certiorari), it "is not a lower court's role to ignore on-point precedent so as to adhere to what might someday become Supreme Court precedent," *United States v. Anthem, Inc.*, 855 F.3d 345, 354 (D.C. Cir. 2017).

Meta's other arguments are also unpersuasive. Meta fails to meaningfully distinguish *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977), which confirms that statutory regimes like the FTC Act involve public rights, even where common-law actions with different requirements or remedies may have addressed similar misconduct. In *Atlas Roofing*, the Supreme Court observed that "state common-law actions for negligence and wrongful death" existed before the Occupational Safety and Health (OSH) Act, but Congress found them "to be inadequate to protect the employee population from death and injury due to unsafe working conditions." *Id.* at 445. The remedies created by the OSH Act "exist[] whether or not an employee is actually injured or killed as a result of the condition." *Id.* The OSH Act also left in place "existing state statutory and common-law remedies for actual injury and death." *Id.* The FTC Act similarly created remedies that exist regardless of a company's scienter or whether a consumer is actually damaged by a deceptive practice, to more effectively prevent harm before it occurs. *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 & n.7 (10th Cir. 2005). In contrast, as Meta itself notes, common law fraud required the defendant to act "with intent to defraud" and the plaintiff to "receive[] damage." Dkt. 20 at 35 (quoting *Pasley v. Freeman* (1789) 100 Eng. Rep. 450); *see also Freecom Commc'ns*, 401 F.3d at 1203 & n.7 (contrasting elements of FTC Act deception with elements of common law fraud); Dkt. 18 at 26. The difference between the OSH Act and common law negligence or wrongful death actions is no greater than the difference between the FTC Act

and common law fraud actions. And, in any event, "Congress may fashion causes of action that are closely *analogous* to common-law claims" and assign them to non-Article III tribunals. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989) (listing cases).

Meta contends that, because the Commission "seeks to adjudicate an allegedly breached contract, under which Meta has contractual rights," this adjudication must be done by an Article III court. Dkt. 20 at 34. But, as discussed further below, Meta's breach of contract analogy is fundamentally flawed. The key issue in statutory modification proceedings is whether a prior administrative order issued by the Commission should be modified to protect consumers. The Commission may modify orders regardless of whether they are consent orders. *See* 15 U.S.C. § 45(b). Finding a violation of the order (consent order or not) is also unnecessary. *See* Dkt. 18 at 28-29; *see also infra* Part III.

### III.     The Seventh Amendment does not apply to the modification proceedings.

Under Supreme Court precedent, if the Court rules in Defendants' favor on the Article III public rights doctrine issue, then Meta's Seventh Amendment claim fails as well. *Oil States*, 138 S. Ct. at 1379; *Granfinanciera*, 492 U.S. at 53-54. Meta's speculation about what the Supreme Court may do in *Jarkesy*, *see* Dkt. 20 at 36, is not the law.

In any event, even setting aside the public rights doctrine and assuming that the two-factor analysis that determines whether the Seventh Amendment requires a jury trial when Congress assigns a claim to an Article III court applies here, Meta's claim still fails. The two factors in that context are the nature of the action and the nature of the relief sought. The second factor is the more important one. *Granfinanciera*, 492 U.S. at 42. Where, as here, the only relief sought is injunctive, it is dispositive: there is no right to a jury trial. *Citigroup Inc. v. VDN Sys., Inc.*, No. 08-Civ-7527 (SHS), 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008) ("[W]here a party asserts an arguably legal cause of action but seeks only non-compensatory, equitable remedies, the right

to a jury does not inhere."); *FTC v. Quincy Bioscience Holding Co.*, No. 17 Civ. 124 (LLS), 2021 WL 1608953, at *1 (S.D.N.Y. Apr. 26, 2021) (holding, where FTC could "only seek injunctive relief," that "[t]hat relief is purely equitable and does not confer a Seventh Amendment right to a jury");[3] *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) ("In 1791, when the Seventh Amendment became effective, injunctions, both in England and in this country, were the business of courts of equity, not of courts of common law."). This is so even if the relief sought is based on breach of contract, although this case does not involve breach of contract. *E.g.*, *Citigroup*, 2008 WL 5274091, at *2 ("[W]here . . . a party alleging breach of contract seeks only equitable relief, there is no right to a jury under the Seventh Amendment."); *see also Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) ("An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court.") (citation omitted).

Meta focuses primarily on the less important factor, whether a statutory action is "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty," *Tull v. United States*, 481 U.S. 412, 417 (1987), but its analogies are inadequate. As discussed above, the FTC Act covers conduct beyond common law fraud, *supra* Part II, "so there is no precise analogue common-law cause of action"; thus, the nature-of-relief factor controls. *See Quincy Bioscience*, 2021 WL 1608953, at *2.

Meta's contract analogy also fails. The Commission's authority to modify the 2020 Order is not predicated on the 2020 Order being a contract. *See* 15 U.S.C. § 45(b) (authorizing the

---

[3] *Accord FTC v. Lanier L., LLC*, No. 3:14-CV-786-J-34PDB, 2015 WL 9598794, at *4 (M.D. Fla. Dec. 8, 2015) (listing numerous examples of cases holding the same).

Commission to modify "any" FTC administrative order).[4] Even if it were, "since historically neither courts of law or equity recognized suits to amend contracts, there is no specific historical precedent upon which [Meta] can predicate its jury trial claim." *Burlington N. R.R. Co. v. Neb. Pub. Power Dist.*, 931 F. Supp. 1470, 1482 (D. Neb. 1996).

Also, the dispositive issue in the modification proceedings is not whether Meta has breached an agreement, but whether a prior Commission order (consent order or not) needs to be changed to protect consumers. The Commission may modify or set aside "any" administrative order when "conditions of fact or of law have so changed as to require such action or if the public interest shall so require," regardless of whether the order is a consent order or whether it was violated. 15 U.S.C. § 45(b). Non-compliance with a Commission order can constitute changed conditions warranting modification to protect consumers. Here, for example, the 2020 Order may need to be modified if the privacy program Meta developed under the Order has not been effective or if Meta is making misrepresentations about the extent to which it maintains the privacy of users' data, despite the Order prohibiting such conduct. *See* Dkt. 18-7 at 7, 13-14; Dkt. 18-9 at 13 (changes may be "needed to clarify and strengthen" a past order's "requirements, and thus provide enhanced protections for consumers"). But even if Meta's actions did not actually violate the terms of the 2020 Order, the Commission can modify the order if Meta's conduct is nonetheless misleading consumers and a modified order would prevent that. In *Elmo Co. v. FTC*, for example, the D.C. Circuit upheld a modification order setting aside part of a prior consent order that had allowed a company to claim that its products had beneficial health effects. 389 F.2d 550 (D.C. Cir. 1967). Since the prior order permitted such claims, the company's claims did not violate the prior

---

[4] Meta has no support for its assertion that the Commission can only "pursue modification of previously issued, litigated cease-and-desist orders." Dkt. 20 at 27.

order, but the court nevertheless affirmed the Commission's finding that the public interest would be served by modifying the order because there were serious questions whether the products had any beneficial health effects at all. *Id.* at 552. Similarly, in *Mohr v. FTC*, a company sold "skip-trace" forms sent by debt collectors to debtors to try to collect information about their whereabouts. 272 F.2d 401 (9th Cir. 1959). The FTC's original administrative order required the company to stop "represent[ing], directly or by implication, that the purpose for which the information is requested is other than that of obtaining information concerning delinquent debtors"—i.e., the order took one approach to protecting consumers from deceptive tactics. *Id.* at 403. Several years later, following concerns that consumers were still being misled and the original order had led to confusion "as to the compliance required," the Commission modified the order to require affirmative disclosures that the forms were used to obtain information about delinquent debtors—i.e., another way of protecting consumers. *Id.* at 404-05. The Commission and the company disputed whether the original order required affirmative disclosures in the first place, but in the end whether the company had actually violated the order was irrelevant because where "[e]xperience under [a] cease and desist order" shows that it "was not enough to stop the deception," the Commission was "entitled to change its mind . . . as to the kind of a cease and desist order which was necessary to protect the public interest." *Id.* at 405-06.[5] Here, similarly, the

---

[5] Thus, it is unpersuasive for Meta to argue that the Commission has already found that the public interest would be served by maintaining the 2020 Order for 20 years even if Meta violated it, Dkt. 20 at 45-46; Dkt. 18-6 at 29-30. The Commission is permitted to change its mind about what would best serve the public interest, particularly after the FTC has had a chance to see how the 2020 Order works in practice. *Mohr*, 272 F.2d at 405-06. Further, as Judge Kelly found, "nothing in [the 2020 Order] . . . expressly limits the FTC's statutory authority to modify its own administrative orders." *United States v. Facebook, Inc.*, No. 19-2184 (TJK), 2023 WL 8190858, at *5 (D.D.C. Nov. 27, 2023).

Commission can modify its prior order whether or not the prior order was violated. Thus, Meta's breach of contract analogy fails.[6]

Because the modification proceedings simply are not analogous to any suit at common law, Meta's Seventh Amendment claim should be dismissed.

**IV.     Meta fails to establish any violation of the nondelegation doctrine.**

As Defendants have already explained, the nondelegation doctrine is concerned with delegations of legislative power and is not implicated here because FTC exercises executive power, not legislative power, when it decides in a particular case whether to proceed administratively or in court.  Dkt. 18 at 29-31.

Even if the nondelegation doctrine was implicated, Meta's claim would fail because Congress provided an intelligible principle to guide the FTC's discretion. Meta accuses Defendants of "attributing [an] intelligible principle to 'isolated' statutory phrases," in violation of *Owens v. Republic of Sudan*, 531 F.3d 884, 889-90 (D.C. Cir. 2008). Dkt. 20 at 32. Not so. Defendants agree with *Owens* and its core teaching that, in ascertaining an intelligible principle, courts "do not confine [them]selves to the isolated phrase in question, but utilize all the tools of statutory construction, including the statutory context and, when appropriate, the factual background of the statute to determine whether the statute provides the bounded discretion that the Constitution requires." 531 F.3d at 890. Indeed, Defendants cited another D.C. Circuit case, *Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 30 (D.C. Cir. 2008), for the same legal standard described in *Owens*. Dkt. 18 at 31.

---

[6] Because modification does not depend on any "breach" by Meta, the Court should disregard Meta's argument that the modification proceeding seeks something more "akin to a declaration[] that Meta breached its obligations under the 2020 Order so that it can then impose the Proposed Order" than to specific performance. Dkt. 20 at 38.

As *Owens* emphasized, "[t]he intelligible principle that limits the Executive Branch's authority pursuant to a delegation can be open to many interpretations yet pass constitutional muster." 531 F.3d at 889. *Owens* gave examples of courts upholding broad delegations to the Executive Branch such as a delegation to determine "excessive profits" during wartime or to regulate broadcast licensing "as public interest, convenience, or necessity requires" where those otherwise-broad phrases were informed by the statutory context and the purpose and factual background of those statutes. *Id.* (first quoting *Lichter v. United States*, 334 U.S. 742, 785 (1948); and then quoting *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943)).

Consistent with *Owens*, Defendants have shown that the FTC Act, including not just the sentence in 15 U.S.C. § 45(b) regarding modifications but also the other parts of the statute, provides an intelligible principle to guide the FTC's discretion. As relevant here, Congress's central directive in the FTC Act is for the FTC to prevent unfair or deceptive practices. 15 U.S.C. § 45(a). The FTC Act also lays out specific administrative and judicial mechanisms the FTC is permitted to use to accomplish that mission, and guides the FTC's actions by limiting the circumstances in which the FTC may proceed one way or the other, and making different types of relief available depending on the particular pathway. Dkt. 18 at 32. For example, once an administrative order becomes final, a district court can grant "mandatory injunctions and such other and further equitable relief as [it] deem[s] appropriate in the enforcement of such final orders," but such relief is available only if a company "violates an order of the Commission." 15 U.S.C. § 45(l). In contrast, as discussed, modification under § 45(b) does not require violation of the prior order. Similarly, when the FTC files a new district court case against a company under 15 U.S.C. § 53(b), the court can grant injunctive relief, but would not be able to award civil penalties or other monetary relief because those remedies are available only when a company has

11

violated an administrative order, "*i.e.*, where the Commission has engaged in administrative proceedings." *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 77 (2021). In contrast, if a modification proceeding results in a modified administrative order and if the company were to violate that modified order at some point, then the FTC could potentially pursue civil penalties or other monetary relief in district court. *See* 15 U.S.C. §§ 45(l), 57b(b). The Fifth Circuit recently rejected a nondelegation challenge similar to Meta's in *Illumina* based on these types of statutory limitations. 2023 WL 8664628, at *3 (emphasizing that different relief is available in FTC federal court actions than in administrative proceedings and holding that "Congress's directive for the FTC to commence an enforcement action when such a proceeding would be 'in the interest of the public'" is an "intelligible principle"). This Court should do the same.

As Defendants also explained, the statute does not allow the Commission to modify a prior order whenever it wants. It can do so only if "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." 15 U.S.C. § 45(b). Both the changed conditions and the public interest prongs in § 45(b) are informed by the statute's direction to prevent unfair or deceptive practices that harm consumers. *Id.* § 45(a); Dkt. 18 at 32. Meta argues that the rest of the statute provides no intelligible principle when the Commission relies on the changed conditions prong. *See* Dkt. 20 at 32.[7] But isolating the changed conditions prong from the rest of the statute is exactly the "fundamental error" that Meta wrongly accused Defendants of making. *Id.* As discussed, in determining whether a statute provides an intelligible principle, courts "do not confine [them]selves to the isolated phrase in question," but also consider the statutory

---

[7] If Meta is suggesting that the modification proceeding is based solely on the changed conditions prong, Dkt. 20 at 32, that is belied by the OTSC, which states that "the Commission has good cause to believe *the public interest* and changed conditions require it to reopen the proceeding in Docket No. C-4365," Dkt. 18-9 at 13 (emphasis added).

context and factual background of the statute. *Owens*, 531 F.3d at 890. The main statutory directive here, as noted, is for the Commission to prevent unfair or deceptive practices. 15 U.S.C. § 45(a). Thus, as discussed, whether "conditions of fact or of law have so changed as to require" modification requires inquiry into whether facts or law have changed in a way that modification is required to protect consumers. Dkt. 18 at 32 (quoting 15 U.S.C. § 45(b)). For example, the 2020 Order contemplated that modification may be needed to address "technological changes and changes in methods of obtaining affirmative express consent" before Meta shares a user's private information with third parties. *See* Dkt. 18-7 at 8. Because the FTC Act, like the statutes at issue in *Nat'l Broad. Co.* and the Supreme Court's other nondelegation cases, sufficiently articulates an intelligible principle, Meta's nondelegation claim should be dismissed. 319 U.S. at 216; *see Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (listing examples).

## V.    Meta's due process claim fails.

Like its other claims, Meta's due process claim is contrary to Supreme Court precedent. As the Fifth Circuit observed in rejecting a similar claim against the FTC in *Illumina*, "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process." 2023 WL 8664628, at *4 (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). "[C]ourts cannot 'presume bias' merely from the institutional structure of an agency." *Id.* (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999)). Rather, there is a "presumption of honesty and integrity in those serving as adjudicators," including when there is a "combination of investigative and adjudicative functions" in an agency. *Withrow*, 421 U.S. at 47. To overcome that presumption, a plaintiff must show that, "under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately

implemented." *Id.* Meta's claim fails because it does not adequately allege how, beyond the mere fact of a combination of functions, the FTC's structure affects the Commissioners in a way that creates an unacceptable risk of bias or prejudgment.

In its latest brief, Meta continues to mischaracterize the modification process and the Order to Show Cause (OTSC) to manufacture a claim of prejudgment. But as previously explained, the statute, consistent with due process, requires notice and an opportunity to be heard before the Commission can modify an order. 15 U.S.C. § 45(b). To implement this requirement, the FTC's regulations require the Commission to serve an order to show cause "stating the changes it proposes to make in the decision and the reasons they are deemed necessary." 16 C.F.R. § 3.72(b)(1). Consistent with these constitutional, statutory, and regulatory requirements, the OTSC thus "detail[ed] the basis for modification and the changes it proposes to make in response." Dkt. 18-9 at 2. It summarized the procedural history of the case and the facts as understood from the "Commission staff's investigation of Respondent's compliance with the 2020 Order." *Id.* at 4-13. It then stated that:

> Based on the foregoing, the Commission has good cause to believe the public interest and changed conditions require it to reopen the proceeding in Docket No. C-4365 pursuant to Section 3.72(b) of the Commission's Rules of Practice, 16 C.F.R. § 3.72(b), and modify the 2020 Order. *See* 15 U.S.C. § 45(b) and 16 C.F.R. § 3.72(b).

> Based on the foregoing, the Commission has good cause to believe Respondent violated the Commission's Orders, Section 5, COPPA, and the COPPA Rule, and will likely continue to commit privacy violations in the future absent further enforcement action by the Commission. Respondent's non-compliance constitutes changed conditions demonstrating that additional modifications to the Order are needed to clarify and strengthen its requirements, and thus provide enhanced protections for consumers. Therefore, given these circumstances, the Commission proposes modifying the Order as follows, to better achieve its objectives.

*Id.* at 13. Finally, it summarized the proposed modifications and gave Meta the opportunity to respond. *Id.* at 14.

14

Meta objects to the OTSC making what Meta terms a "legal finding" that modification was "needed" before Meta had an opportunity to be heard. Dkt. 20 at 22. But this misunderstands the nature of the OTSC, which was to initiate a process by which the Commission would determine what (if any) actual changes to make. The OTSC repeatedly describes the proposed modifications as exactly that—proposed. *See* Dkt. 18-9 at 2 ("the proposed order modifications"), 13 ("Proposed Order Modifications"), 13 ("the Commission proposes modifying the Order as follows . . ."). The first page of the order alone describes the changes as "proposed" no fewer than six times, clearly stating that once the Commission "concludes" the OTSC process, it "will determine whether to make the attached Proposed Decision and Order final or modify it in any way." *Id.* at 2. The OTSC used the word "needed" to explain why the Commission was "propos[ing] modifying the Order," precisely to give Meta notice and an opportunity to be heard before the Commission makes any final decision.[8]

Further, the Commission's formation of a preliminary view that modification is warranted does not violate due process. Nor do its preliminary "findings." In *Withrow*, a board "*issue[d] formal findings of fact and conclusions of law* asserting that there was probable cause to believe that [a doctor] had engaged in various acts prohibited by the Wisconsin statutes," yet the Court held that it would not violate due process for the board to preside over a subsequent proceeding to determine whether the doctor's license would be temporarily suspended. 421 U.S. at 55-58

---

[8] Meta also takes the phrase "full record" out of context. Dkt. 20 at 21-22. The OTSC states that "[t]his Show Cause Order details the basis for modification and the changes it proposes to make in response," with a footnote that "[t]he full record supporting the Commission's findings is contained in the attached Preliminary Finding of Facts ('PFF')." Dkt. 18-9 at 2 & n.1. "Full record" in this context simply indicates that the fact section in the OTSC document is a summary while the full preliminary findings of fact are in an attachment, not that the Commissioners' minds are "irrevocably closed" to whatever evidence Meta might present. *FTC v. Cement Inst.*, 333 U.S. 683, 701 (1948).

(emphasis added). The analogies that *Withrow* made to reach that conclusion are apt here. Judges routinely issue arrest warrants based on finding probable cause that a person has committed a crime and, at preliminary hearings, judges decide whether there is sufficient evidence for trial, but this does not "raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence." *Id.* at 56. Judges also routinely "presid[e] over injunction proceedings" even after they have "initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction." *Id.* "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings," and "[t]his mode of procedure does not violate the Administrative Procedure Act" or the "due process of law." *Id.* Nor is it "contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around." *Id.* at 57. Just as in these situations, there is no reason to believe that, by making preliminary factual findings and issuing the OTSC, the Commissioners "would be so psychologically wedded to [the OTSC] that they would consciously or unconsciously avoid the appearance of having erred or changed position" and not be able to preside impartially over the modification proceeding. *Id.*

Meta also continues to argue that, based on the Commission's past rulings, there must be a due process violation. Dkt. 20 at 16-20. But Meta again ignores that the Commission has decided issues adverse to FTC staff in recent years. *See* Dkt. 18 at 37. For example, in *McWane*, the Commission reversed the ALJ's finding of liability on an antitrust count. *In re McWane, Inc.*, No. 9351, 2014 WL 556261, at *1 (F.T.C. Jan. 30, 2014). In *Polypore*, the Commission found no antitrust violation in one of the markets at issue. *In re Polypore Int'l, Inc.*, No. 9327, 2010

WL 9933413, at *1 (F.T.C. Dec. 13, 2010). Moreover, in *Altria-Juul*, the ALJ ruled against FTC staff, the FTC staff appealed, and the Commission "dismiss[ed] the Complaint on the ground that pursuit of the case no longer serves the public interest." *In re Altria Grp., Inc.*, No. 9393, 2023 WL 4349336, at *2 (F.T.C. June 30, 2023).

In any event, as Defendants explained, numerous courts have held that statistics on past rulings are not enough to establish a due process violation. Dkt. 18 at 36-37 (citing cases). Meta tries to distinguish the Commission from other adjudicators on the ground that the Commission acts as both prosecutor and adjudicator. Dkt. 20 at 17 & n.7. But this argument only emphasizes that Meta's claim is based on the erroneous premise that a combination of functions in an agency "inherently" violates due process. Dkt. 20 at 19; *see also* Dkt. 1 at 13 (Compl. ¶ 43). That claim fails as a matter of law. Under *Withrow*, adjudicators are presumed to act with good faith, even when there is a "combination of investigative and adjudicative functions" in an agency. 421 U.S. at 47. To plead a cognizable due process claim, Meta must identify some plausible reason to believe that the past rulings resulted from bias aside from the mere fact of an agency's combination of functions (which it has not done).[9] Otherwise, the presumption is that, in each of the past cases before the Commission, the Commission considered the facts and the law impartially and ruled against the company because the company violated the law, not because the Commission was

---

[9] Courts have entertained claims of systemic bias where the agency was alleged to have a pecuniary interest in the outcome of its adjudication or where adjudicator was "the target of personal abuse or criticism from the party before him," for instance, but Meta has not made such allegations here. *Wildberger v. Am. Fed'n of Gov't Emps.*, 86 F.3d 1188, 1196 (D.C. Cir. 1996) (quoting *Withrow*, 421 U.S. at 47); *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980).

biased. *See Hall v. Kane*, No. C 05-4426 MMC (PR), 2008 WL 5391196, at *4 (N.D. Cal. Dec. 23, 2008).[10]

Meta's remaining arguments are unavailing. Meta objects to Defendants' citation to the Ohlhausen study. Dkt. 20 at 16. But even without it, Defendants should still prevail. Where a complaint's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Meta's only alleged "fact" regarding systemic bias is its allegation that the FTC "has not lost a single case in decades," Dkt. 1 at 13 (Compl. ¶ 45), which is insufficient as a matter of law to establish a due process violation.[11]

Meta also contends (citing the Ohlhausen study) that, because there is a public perception that a combination of functions creates bias, the combination of functions violates due process. Dkt. 20 at 23-24. But that argument is just a variation on Meta's primary argument that the combination of functions in an agency in and of itself violates due process, a premise the Supreme Court has already rejected. At the end of the day, Meta cites no cases agreeing with its position that an agency's combination of functions violates due process. Instead, Meta continues to rely on dictum from the Ninth Circuit in *Axon*, even though the Ninth Circuit was not considering the merits of Axon's due process claim. 986 F.3d 1173, 1176 (9th Cir. 2021), *rev'd and remanded*,

---

[10] This presumption is supported by abundant case law upholding Commission decisions on the merits. *See, e.g.*, *N.C. State Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101 (2015); *Impax Lab'ys, Inc. v. FTC*, 994 F.3d 484, 499 (5th Cir. 2021); *ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 604 (6th Cir. 2017); *POM Wonderful, LLC v. FTC*, 777 F.3d 478 (D.C. Cir. 2015); *McWane, Inc. v. FTC*, 783 F.3d 814 (11th Cir. 2015).

[11] Meta's suggestion that discovery is needed on systemic bias should thus be rejected. Dkt. 20 at 14.

598 U.S. 175 (2023). Meta also cites two concurrences from the Supreme Court stage of the case, but those concurrences did not command a majority, and the merits of the due process issue were not before the Supreme Court either. 598 U.S. at 180. That commentators have debated the pros and cons of a combination of functions within an agency also does not establish a due process violation.[12] *Withrow* itself observed that the issue of whether those who have investigated should adjudicate "is not new" and that "legislators and others concerned with the operations of administrative agencies have given much attention to whether and to what extent distinctive administrative functions should be performed by the same persons." 421 U.S. at 51. Nevertheless, the Court held that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Id.* at 58.

For these reasons, the Court should dismiss Meta's due process claim.

**VI.     Meta waived its constitutional claims.**

Meta knowingly and intentionally waived its constitutional challenges. Meta consented to the entry of the 2020 Order and waived its rights to challenge its validity. Dkt. 18-7 at 2-3. In doing so, Meta "contemplate[d] that at least under some circumstances, the FTC could modify its administrative order," as the 2020 Order included terms allowing Meta to request modification of the Order under 15 U.S.C. § 45(b) in the future—the same statutory power that Meta now claims the FTC cannot constitutionally exercise. *See id.* at 8; *Facebook*, 2023 WL 8190858, at *5.[13]

Meta contends it did not waive its current challenge to the Commission's constitutionality

---

[12] A majority of the committee that conducted the ABA study cited by Meta ultimately supported the FTC retaining its "unity of functions." Miles W. Kirkpatrick, *Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43, 118-25 (1989).

[13] In contrast, the FTC did not waive its authority to initiate modification proceedings. *Facebook*, 2023 WL 8190858, at *5.

and instead only made more "limited waivers." Dkt. 20 at 39. But Meta does not dispute that it could have raised the same constitutional claims in 2012 or 2020, but instead chose to settle—twice. *See id.* at 38-40. Indeed, Meta candidly concedes that in those instances, it agreed "to forgo its defenses"—including as to "the Commission's authority to assert [its claims]—as part of larger compromises." *Id.* at 40. Under Meta's view, the company was permitted to induce settlement by not asserting constitutional attacks on the FTC's structure in 2012 and 2020 (so long as that served Meta's interests in resolving those matters), but then could later reverse course and claim, in a later phase of the same proceedings, that the agency was unconstitutional all along. This Court should not allow such a fundamental change in position—whether under waiver, estoppel, laches, or other equitable principles. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase") (citation omitted); *id.* at 751 (emphasizing that the Court does "not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts"). In any event, Meta's willingness to go along with Commission actions for years undermines its claim that participating in further Commission proceedings now would work irreparable harm on the company.[14]

## CONCLUSION

For these reasons, the Court should dismiss Meta's Complaint.[15]

---

[14] Meta has no substantive response to the FTC's laches argument, Dkt. 20 at 40, and does not deny that the FTC has suffered prejudice as a result of Meta's twelve-year delay in asserting its constitutional claims, Dkt. 18 at 40 n.3.

[15] Meta asks for an administrative stay in the event that its preliminary injunction motion is denied, noting that the hearing on the motion is scheduled for January 29, 2024 while Meta's

Dated: January 10, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Cynthia Liao*
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. N.W.
Washington, DC 20005
Tel: (202) 531-1325
Fax: (202) 616-8470
cynthia.f.liao@usdoj.gov

*Counsel for Defendants*

---

deadline to respond to the OTSC is January 31, 2024. Dkt. 20 at 50. The Commission recently extended the deadline to March 15, 2024, to accommodate this Court's schedule. Ex. K.