UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| META PLATFORMS, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>FEDERAL TRADE COMMISSION, *et al.*,<br><br>       Defendants. | Case No. 1:23-cv-03562-RDM<br><br>Judge Randolph D. Moss |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUR-REPLY**

Meta's claim that the FTC Commissioners' removal protections are unconstitutional is foreclosed by the Supreme Court's decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Should the Court agree with Defendants on this primary point, it need not address the severability argument in Meta's sur-reply. But if the Court reaches severability, it should sever the Commissioners' removal protections rather than certain enforcement powers given by Congress to the FTC, consistent with what the Supreme Court has done in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), and consistent with longstanding severability principles that courts should limit the solution to the problem and do the least damage possible to Congress's enactments.

**ARGUMENT**

  I.  ***Humphrey's Executor* is still controlling and requires dismissal of Meta's claim.**

Courts have repeatedly rejected arguments that *Humphrey's Executor* no longer applies to the FTC or similar agencies. *See* Dkt. 18 at 20 (listing cases); Dkt. 22 at 8 (same). The Fifth Circuit has done so twice in the last two months. In *Illumina, Inc. v. FTC*, it rejected an argument like Meta's that the FTC's post-1935 enforcement powers rendered the Commissioners' removal protections unconstitutional. 88 F.4th 1036, 1047 (5th Cir. 2023). In *Consumers' Research v.*

1

*Consumer Product Safety Commission* (CPSC), it rejected a similar argument related to the CPSC. No. 22-40328, 2024 WL 177326 (5th Cir. Jan. 17, 2024). It described the CPSC as "wield[ing] what we would today regard as substantial executive power," but held that this characteristic alone did not move the CPSC outside the ambit of *Humphrey's Executor*. *Id.* at *2, 8. In both cases, the Fifth Circuit held that any question whether *Humphrey's Executor* needed to be revisited should be left to the Supreme Court. *Id.* at *9; *Illumina*, 88 F.4th at 1047. These decisions are consistent with *Seila Law*, which not only expressly declined to revisit *Humphrey's Executor* but also suggested that Congress could remedy the constitutional defect in the CFPB—an agency with "potent" enforcement powers similar to, or possibly greater than, the FTC's—by "converting the CFPB into a multimember agency." 140 S. Ct. at 2192-93, 2211. This suggests the Court intended for Congress and the lower courts to continue treating *Humphrey's Executor* as good law for multimember agencies exercising enforcement powers, like the FTC. *Cf. Consumers' Rsch.*, 2024 WL 177326, at *1 (declining to read *Seila Law* as making "for-cause removal *always* [] a separation-of-powers violation" whenever "the agency at issue exercises substantial executive power (which nearly all agencies do)"). Based on these authorities, this Court should dismiss Meta's removal claim, rendering it unnecessary to reach severability.

    **II.**    **Should the Court hold the Commissioners' removal protections unconstitutional, it should sever the removal protections, not the FTC's enforcement authority.**

Should the Court reach severability, the Court should sever the Commissioners' removal protections and not the FTC's enforcement powers. Like its removal claim generally, Meta's approach to severability goes against Supreme Court precedent. The most analogous severability cases are *Free Enterprise Fund* and *Seila Law*. In both, the Court severed the officers' removal protections, but left intact the officers' authority to act. *Free Enter. Fund*, 561 U.S. at 508-10, 513; *Seila Law*, 140 S. Ct. at 2207-11. Relying on these cases, lower courts have concluded that, should

2

there be a problem with the Commissioners' removal protections (although no lower court has found any), severing that provision would be the appropriate remedy, not stripping the FTC of its ability to bring enforcement cases. *See FTC v. Kochava Inc.*, No. 2:22-cv-00377-BLW, 2023 WL 3249809, at *12 (D. Idaho May 4, 2023); *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 845 (N.D. Ill. 2023). Meta offers no persuasive reason why this Court should deviate from this case law.

Severing the removal provision is more consistent with the general principles of severability: courts should "limit the solution to the problem," and "refrain from invalidating more of the statute than is necessary." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2349-50 (2020) (first quoting *Free Enter. Fund*, 561 U.S. at 508; and then quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality)); *Walmart*, 664 F. Supp. 3d at 845. Here, the agency's exercise of enforcement power is not the problem; "[t]he real problem" would be "a potentially unconstitutional limit on the President's removal power." *Walmart*, 664 F. Supp. 3d at 845; *see also Free Enter. Fund*, 561 U.S. at 508-09; *Collins v. Yellen*, 141 S. Ct. 1761, 1788 n.23 (2021) ("[T]he unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office.").

Further, severing the removal provision—nine words in 15 U.S.C. § 41 ("Any Commissioner may be removed by the President *for inefficiency, neglect of duty, or malfeasance in office*." (emphasis added)—would be the more precise, surgical solution to any separation-of-powers violation. Meta's preference for severing the FTC's post-1935 powers, scattered in various provisions of the FTC Act, 15 U.S.C. §§ 45(b), 53(b), is infeasible because it is unclear which of them should be cut. The *Humphrey's Executor* Court was well aware of the FTC's authority to issue cease-and-desist orders when it upheld the Commissioners' removal protections. *See Humphrey's Executor*, 295 U.S. at 620 (noting cease-and-desist authority); An Act to Create a

Federal Trade Commission, ch. 311, § 1, 38 Stat. 717, 720 (1914) (codified as amended at 15 U.S.C. § 45(b)). Here, the Commission is exercising the closely related authority to modify cease-and-desist orders, added in 1938. An Act to Amend the Act Creating the Federal Trade Commission, ch. 49, § 3, 52 Stat. 111, 112 (1938) (codified as amended at 15 U.S.C. § 45(b)). The power to seek relief in court under § 13(b) of the FTC Act, 15 U.S.C § 53(b)—not at issue in this case, but also built on the framework of the FTC's cease-and-desist order authority—was added in the 1970s. *See AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 72-73, 77-78 (2021).

Meta's theory is that, at some point, the accumulation of enforcement powers crossed a constitutional line. But even if quantity of executive power is the right framework, it is unclear where the line is or which powers should be pruned to make the statute constitutional. *See Consumers' Rsch.*, 2024 WL 177326, at *7 (under *Seila Law*, "it is hard to tell *how much* [executive] power is required before an agency loses protection under the *Humphrey's* exception"); *Walmart*, 664 F. Supp. 3d at 845 ("Striking the FTC's ability to sue for injunctive and monetary relief, then, might not be enough. The sure solution, as in *Seila Law*, would be to target the offending removal provision."); *cf. FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1513-14 (9th Cir. 1987) ("FTC's current power to seek injunctive relief pursuant to section 13(b) does not so materially differ from the power to seek cease and desist orders as to render *Humphrey's Executor* inapposite.").

Meta argues that Congress intended for the FTC to be independent, Dkt. 24 at 2, but the Supreme Court rejected a similar argument in *Seila Law*. The Court recognized "Congress preferred an independent CFPB to a dependent one," but "the critical question [was] whether Congress would have preferred a dependent CFPB to *no agency at all*." 140 S. Ct. at 2210. And it "seem[ed] clear" to the Court that the Congress would prefer a dependent CFPB, as the elimination

4

of the CFPB would cause "major regulatory disruption" and "leave appreciable damage to Congress's work in the consumer-finance arena." *Id.* Here, similarly, eliminating the FTC's enforcement authorities would cause major regulatory disruption and undermine the work that Congress has done over decades to ensure that consumers and competition are protected. "Given these consequences, it is far from evident that Congress would have preferred no [FTC] to [an FTC] led by [Commissioners] removable at will by the President." *Id.*

Meta's argument that "subsequent amendment[s] must be severed," Dkt. 24 at 2, is also unpersuasive. There is no rule that amendments must be severed just because they came later in time. *Barr* relied primarily on the traditional principles of severability, which emphasize the Judiciary's "confined role" and "respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional." 140 S. Ct. at 2351. It only cited other cases severing amendments as further support for its conclusion under those principles. *Id.* at 2353. Given that the Supreme Court has spoken directly on severability in the removal context in *Free Enterprise Fund* and *Seila Law*, there is no need for this Court to go in search of different, more invasive solutions, as Meta argues.

## CONCLUSION

For these reasons, the Court should simply dismiss Meta's removal claim. Alternatively, the Court should hold that Meta is not entitled to permanent or preliminary injunctive relief because the appropriate remedy would be to sever the Commissioners' removal protections.[1]

---

[1] As for the relevance of the FTC Act's provision allowing the Commission to modify "any" FTC administrative order, consent order or not (Dkt. 24 at 4 n.5), Defendants raised this point in both its opposition and reply briefs to show that Meta's breach of contract analogy—invoked as part of Meta's Article III and Seventh Amendment arguments—is faulty: there does not need to be a "contract" or a "breach" in order for the Commission to modify a prior administrative order. *Compare* Dkt. 18 at 28-29, *and* Dkt. 22 at 13-15, *with* Dkt. 4 at 27-29, *and* Dkt. 20 at 34, 37-38.

Dated: February 1, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Cynthia Liao*
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. N.W.
Washington, DC 20005
Tel: (202) 531-1325
Fax: (202) 616-8470
cynthia.f.liao@usdoj.gov

*Counsel for Defendants*